JOHN D. VAN LOBEN SELS (SBN: 201354)
jvanlobensels@fishiplaw.com
Fish and Tsang, LLP
333 Twin Dolphin Drive, Suite 220
Redwood City, CA 94065
Telephone:  (650) 517-9800
Facsimile:   (650) 517-9898

Attorney for Plaintiff
WESTLAKE SERVICES, LLC D/B/A
WESTLAKE FINANCIAL SERVICES;
NOWCOM CORPORATION;

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| WESTLAKE SERVICES, LLC D/B/A WESTLAKE FINANCIAL SERVICES; and NOWCOM CORPORATION;<br><br>  Plaintiff,<br><br>  v.<br><br>CREDIT ACCEPTANCE CORPORATION; and DOES 1 through 10, inclusive,<br><br>  Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>  1) **Violation of Section 2 of the Sherman Act (15 U.S.C. § 2);**<br><br>  2) **Sham Litigation: Monopolization and Attempted Monopolization (15 U.S.C. § 2);**<br><br>  3) *Walker Process*; **and**<br><br>  4) **Unfair Competition Under Cal. Bus. And Prof. Code § 17200**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Westlake Services, LLC d/b/a Westlake Financial Services ("Westlake"), and Nowcom Corporation ("Nowcom"), by and through their counsel, brings this Complaint against Credit Acceptance Corporation ("CAC"), for violation of Section 2 of the Sherman Act, sham litigation (monopolization and attempted monopolization), *Walker Process*, and Unfair Competition under California Business and Professions Code § 17200 arising out of CAC's anticompetitive conduct in connection with U.S. Patent No. 6,950,807 ("the '807 Patent"). Westlake seeks actual and enhanced damages.

## PARTIES

1. Westlake Services, LLC d/b/a Westlake Financial Services, is a limited liability company organized under the laws of the State of California. Westlake specializes in the acquisition and servicing of sub-prime automotive retail loans. Westlake Financial Services is an internet-based, privately held finance company that provides sub-prime lending and auto financing for independent and franchise dealers.

2. Nowcom Corporation is a corporation organized under the laws of the State of California. Nowcom Corporation provides technology such as Dealer Desktop software for independent and franchise car dealerships that runs credit reports, manages auto inventory, prints contracts and forms, and adds insurance binders.

3. Upon information and belief, CAC is a corporation organized under the laws of the state of Michigan.

4. Upon information and belief, CAC represents that it is the owner by assignment of the '807 Patent.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 2 and 15 (federal antitrust), 35 U.S.C. § 1 *et seq.* (patents), and 28 U.S.C. §§ 1331 (federal question) and 1338(a) (patents).

6. This Court has supplemental jurisdiction of state law claims alleged herein under 28 U.S.C. § 1367.

7. Venue is proper in this District under 28 U.S.C. §§ 1391(c) and 1395(a) because, at least in part, CAC's products, the subject matter of this cause of action, are offered for sale and sold in this District and CAC's anticompetitive conduct was directed to businesses residing in this District.

## FACTUAL BACKGROUND

8. This is an action that concerns the market for subprime auto loans and CAC's wrongful enforcement of the '807 Patent to dominate the market. A true and correct copy of the '807 Patent is attached to the Complaint as **Exhibit A**.

9. As further alleged below, CAC obtained the '807 Patent by fraud on the United States Patent and Trademark Office ("USPTO") and by fraudulent concealment of prior sales and prior art.

10. Through its enforcement of the fraudulently procured patent against Westlake, Nowcom, and other competitors, CAC hindered and delayed Westlake and Nowcom and their fellow competitors from competing in the market for sub-prime auto loans.

11. CAC's wrongful enforcement efforts include bringing an action on March 4, 2013 for infringement of the '807 Patent against Westlake, Nowcom and others in the United States District Court for the Central District of California, Case No. 13-cv-01523 (the "Westlake action").

12. CAC's wrongful enforcement efforts also include bringing an action on March 4, 2013 for infringement of the '807 Patent against Drivetime Automotive Group in the United States District for the Central District of California, Case No. 13-cv-01531 (the "Drivetime action").

13. On October 11, 2013, Westlake filed a first Covered Business Method petition at the Patent Trials and Appeals Board ("PTAB" or "the Board"). CBM2014-00008

("CBM-1"). On March 31, 2014, the Board instituted review of claims 1-9, 13, 33-42 and declined to institute review of claims 10-12, 14-33. On March 24, 2015, the Board issued its Final Written Decision in CBM-1 ordering that under 35 U.S.C. § 101, claims 1-9, 13, 34-42 of the '807 Patent are invalid because they cover unpatentable subject matter. CAC did not seek rehearing of the Final Written Decision and did not appeal the final decision to the Federal Circuit.

14. Westlake filed a second CBM petition on August 15, 2014, CBM2014-00176 ("CBM-2"), with the Patent Trials and Appeal Board covering the remaining claims of CAC's '807 Patent. CAC filed its Preliminary Response in CBM-2 on November 20, 2014. In its Preliminary Response, CAC raised an estoppel argument and sought to terminate the proceedings.

15. The Board concluded that CAC's argument regarding 35 U.S.C. § 325(e) was not yet ripe, but expressly rejected CAC's arguments for discretionary termination under § 325(d).

16. The Board instituted review of claims 10-12 and 14-33 on § 101 grounds stating that "[i]n light of [the] recent guidance from the Supreme Court and the Federal Circuit, we are persuaded that Petitioner's evidence, if not rebutted, would demonstrate that it is more likely than not that claims 10-12 and 14-33 are directed to non-statutory subject matter." CAC did not request rehearing on the institution decision.

17. On May 14, 2015, the Board denied CAC's request to terminate the CBM proceedings. In its Order, the Board stated that estoppel does not apply to claims 10-12, 14-33 and that institution of CBM-2 was proper.

18. Westlake filed its Reply in CBM-2 on July 7, 2015 and the hearing before the PTAB took place on CBM-2 on September 10, 2015. The Final Written Decision from the Board is due, by statute, no later than February 6, 2016.

19. Westlake's prosecution of both CBM-1 and CBM-2, and Westlake's defense (with Nowcom) of CAC's claims in the Westlake action revealed that CAC failed to

disclose to the USPTO during prosecution sales and offers for sale CAC made on its patented invention, the Credit Approval Processing System ("CAPS®"). These sales and offers for sale were made more than one year prior to the filing of the application for the '807 Patent in violation of 35 U.S.C. § 102. Publically available evidence reveals that CAPS was offered for sale as early as August 2000. **Exhibit B**. The filing date of the application for the '807 Patent is December 31, 2001.

20. Although Mr. Brock (the named inventor of the '807 Patent) held various positions at CAC, including project management in the Information Technology department and VP of Sales and VP of Loan Servicing, and CAC employed Mr. Brock at the time of filing of the application which led to issuance of the '807 Patent, neither Mr. Brock nor anyone else at CAC disclosed these sales of CAPS to the USPTO during the prosecution of the patent application. Because these CAPS® sales would have been material to the patentability of the claims of the '807 Patent, Mr. Brock, CAC and their counsel were all under an affirmative obligation to disclose these materials to the USPTO during prosecution of the '807 Patent. Nevertheless, Mr. Brock, CAC and their counsel violate their duty of candor to the USPTO by withholding evidence of the CAPS® sales to the USPTO.

21. Early sales of CAPS® are material to at least claims 1, 14, 25, 34, and 41 of the '807 Patent. Furthermore, CAC has admitted that CAPS® is the embodiment of the '807 Patent:

> Recognizing the market-changing potential and economic value of CAPS, CAC obtained a patent to protect the core components of the CAPS method and systems. On September 27, 2005, the U.S. Patent and Trademark Office duly and legally issued United States Patent No. 6,950,807 ("'807 patent"), entitled "System and Method for Providing Financing."

*See* Westlake action, Docket No. 1, ¶ 16.

4

**COMPLAINT**

22. Westlake is informed and believes that but for Mr. Brock's, CAC's and their counsel's non-disclosure of the CAPS® sales information to the USPTO, claims of the '807 Patent would not have issued.

23. Westlake also learned during the prosecution of CBM-1 and CBM-2, and with Nowcom in the defense of the Westlake action that CAC intentionally failed to disclose material prior art, including third party public use of a competing software product by ZoomLot. **Exhibit C**. CAC's Competitor National Auto Credit acquired ZoomLot in 2000. **Exhibit D.**

24. Prior to issuance of the '807 Patent, CAC filed a copyright infringement suit against National Auto Credit Inc. asserting that CAC had valid copyrights over its financing program materials. In 1995 CAC and National Auto Credit Inc. ("NAC") resolved the case with NAC acknowledging that CAC has valid copyrights over its financing program materials. **Exhibit E.** NAC published details regarding ZoomLot via the Internet as early as 2000. **Exhibit C.**

25. Mr. Brock, CAC, and their counsel failed to disclose Zoomlot to the USPTO during the prosecution of the '807 Patent. Zoomlot would be considered material prior art to the '807 Patent, because there is a substantial likelihood that a reasonable examiner would consider Zoomlot important in deciding whether to allow the application to issue as a patent. Mr. Brock, CAC and their counsel were all under an affirmative obligation to disclose these materials to the USPTO during prosecution of the '807 Patent. Nevertheless, Mr. Brock, CAC and their counsel violated their duty of candor to the USPTO by withholding evidence of Zoomlot to the USPTO.

26. Zoomlot is material to at least claims 14, 17, 18, and 19 of the '807 Patent.

27. Westlake is informed and believes that but for Mr. Brock's, CAC's and their counsel's non-disclosure of the Zoomlot to the USPTO, claims of the '807 Patent would not have issued.

28. Westlake also learned during the prosecution of CBM-1 and CBM-2 and with Nowcom during their defense of CAC's claims in the Westlake action that CAC has been advertizing that CAPS is "patented." **Exhibit F**. The '807 Patent is the only patent currently assigned to CAC. **Exhibit G**. Because the '807 Patent was fraudulently obtained, CAC has also been falsely marking its CAPS product.

29. Despite the discovery of facts demonstrating inequitable conduct before the USPTOand CAC's motion to dismiss the Westlake action, CAC continued its attempt to enforce the fraudulently procured '807 Patent. Specifically, CAC continued to threaten Westlake, Nowcom, their competitors and customers from offering to sell, selling or purchasing competitive software products and competing in the market for those products. Moreover, CAC refused to seek an adverse judgment from the PTAB notwithstanding the motion to dismiss filed in the Westlake action.

30. By its anticompetitive conduct, CAC attempted to, and did, monopolize a rapidly expanding market for e-commerce software that facilitates subprime auto loans.

31. As a consequence of CAC's anticompetitive conduct, Westlake and Nowcom have sustained loss of profits and other damages, and consumers in the Relevant Market were injured as further described herein.

### Relevant Market

32. CAC's activities in this case relate to one or more relevant markets. These markets include the following product markets, in the conjunctive or in the alternative: (a) a product market for e-commerce software that facilitates subprime auto loans; (b) a product market for e-commerce software that facilitates auto loans.

33. The relevant geographic market for each of the product markets described above is the United States ("the Relevant Geographic Market").

34. CAC's anticompetitive conduct has adversely impacted competition and consumers in the Relevant Market.

### Market Power

35. At all times, CAC has marketed and sold in commerce in the United States software products including CAPS®.

36. Westlake and Nowcom allege upon information and belief that CAC maintains the predominant market share of and market power in the Relevant Market.

37. By its conduct of enforcing (and continuing to enforce) the fraudulently procured the '807 Patent, CAC attempted to, and did, monopolize the Relevant Market.

### CAC's Fraudulent Procurement of the '807 Patent

38. On December 31, 2001, the application that resulted in the '807 Patent was filed as U.S. Application No. 10/037,055, naming Jeffrey Brock as the inventor. The Patent issued on September 27, 2005.

39. Mr. Brock signed the inventor declaration of the '807 Patent, indicating he was aware of his duty to disclose prior sales of the claimed invention. See **Exhibit H**, attached hereto.

40. Westlake and Nowcom are informed and believe and on that basis allege that Mr. Brock has been employed by CAC since 1995 and currently holds the position Vice President of Sales Operations. See **Exhibit I**, attached hereto.

41. Westlake and Nowcom are informed and believe and on that basis allege prior to filing the patent application which led to the '807 Patent, CAC made available to the public, offered for sale, or advertized its software products, CAPS. See **Exhibit J**, attached hereto.

42. These offers for sale, sales, publication, or public use of CAPS on or before December 30, 2000 are a bar to patentability under § 102.

43. During the application process for the '807 Patent, CAC, Mr. Brock and their counsel intentionally failed to disclose to the Patent Office material prior CAPS® sales of which they were aware. In doing so, they violated their statutory duties of candor and good faith to the Patent Office.

### Prior Art Intentionally Withheld From The Patent Office

44. CAC filed a copyright infringement suit against competitor National Auto Credit Inc. asserting that CAC has valid copyrights over its financing program materials. In 1995 CAC and National Auto Credit Inc. ("NAC") resolved the case with NAC acknowledging that CAC has valid copyrights over its financing program materials. See **Exhibit E**, attached hereto.

45. Around and before the date that CAC filed the application for the '807 Patent, NAC owned a finance software identified as Zoomlot. NAC published details regarding Zoomlot via the Internet at least from 2000 until the filing of the '807 Patent application. See **Exhibit C**, attached hereto.

46. Prior to and during the prosecution of the '807 Patent application, CAC was aware of Zoomlot due to the nature of the copyright infringement suit and furthermore, because the companies were competitors in the field of sub-prime automobile lending.

47. The withheld information related to Zoomlot would have been material to the Patent Office in determining whether to grant the patent under 35 U.S.C. §§ 102, 103 because, among other things, it showed that the claimed invention was sold in the United States and described in printed publications more than one year prior to the application for a patent.

48. CAC, Mr. Brock and their counsel withheld references to Zoomlot or provided affirmative misstatements about Zoomlot with specific intent to deceive the USPTO.

49. As a result of the intentional and fraudulent conduct by CAC, Mr. Brock and their counsel, the '807 Patent was issued and assigned to CAC.

50. At all relevant times, CAC (by and through, without limitation, the knowledge of Mr. Brock and its counsel) was aware for the fraudulent procurement of the '807 Patent but has nonetheless continued its efforts to enforce the fraudulently procured '807 Patent to monopolize the Relevant Market.

**CAC's Wrongful Enforcement of the '807 Patent to Obtain Monopoly**

51. On March 4, 2013 CAC brought an action for infringement of the '807 Patent against Westlake in the United States District Court for the Central District of California, Case No. 13-cv-01523.

52. Westlake and Nowcom are informed and believe and on that basis allege that CAC made similar threats to other competitors in the Relevant Market.

53. Westlake and Nowcom are informed and believe and on that basis allege that CAC continues to assert the '807 Patent and demand royalties from other market participants, including at least Drivetime.

54. CAC's threats of litigation were objectively baseless and made in bad faith because the '807 Patent was procured fraudulently through intentional misrepresentations and omissions to the patent examiner during prosecution of the application which led to the '807 Patent.

55. As a result of CAC's anticompetitive conduct in enforcing the fraudulently procured '807 Patent, Westlake and Nowcom lost, and continue to lose, sales through their competing software and has been hindered and delayed in competing in the Relevant Market.

56. CAC's anticompetitive activities have caused adverse impacts on the Relevant Market, including but not limited to less competition and higher prices in the Relevant Market.

## FIRST CLAIM FOR RELIEF

**Violation of Section 2 of the Sherman Act**

**15 U.S.C. § 2**

57. Westlake and Nowcom incorporate by reference every allegation set forth above.

58. CAC intentionally and fraudulently failed to disclose and concealed prior sales and prior art from the Patent Office that was material to the '807 Patent application, as set forth more fully above.

59. As described above, CAC has been, and is currently engaged in, enforcing the fraudulently procured '807 Patent against Westlake, Nowcom, their competitors, and others in the Relevant Market. The information withheld from the Patent Office was material to the patentability of the invention claimed in the '807 Patent.

60. But for the information withheld from the USPTO, the '807 Patent would not have issued.

61. CAC's scheme to fraudulently induce the USPTO into issuing the '807 Patent was specifically intended to support CAC's attempt to monopolize the Relevant Market.

62. CAC obtained market power in the Relevant Market by obtaining and by wrongful enforcement of the fraudulently procured '807 Patent.

63. CAC's anticompetitive acts violate the Sherman Act (15 U.S.C. § 2). As a result of CAC's improper attempts to maintain and enlarge its market power through enforcement of the fraudulently procured '807 Patent, Westlake's and Nowcom's attempts to compete in the market were hindered and delayed, resulting in damages including but not limited to lost profits.

64. Westlake and Nowcom are entitled to recovery of damages, treble damages as well as costs of this suit and attorneys' fees, according to the Clayton Act (15 U.S.C. §§ 15, 26).

## SECOND CLAIM FOR RELIEF

### Sham Litigation: Monopolization and Attempted Monopolization Under 15 U.S.C. § 2

65. Westlake and Nowcom incorporate by reference every allegation set forth above.

66. CAC's patent lawsuit, and in particular, the claims asserted under the '807 Patent, were objectively and subjectively baseless. These meritless claims were brought by CAC in bad faith as an anticompetitive weapon to attempt to force Westlake and Nowcom from the Relevant Product Market and to attempt to interfere directly with Westlake's and Nowcom's business relationships.

67. Further, CAC pursued its claims under the '807 Patent with full knowledge that those claims were invalid, for improper and anticompetitive reasons, including to put financial pressure on Westlake and Nowcom and thereby force them to accede to CAC's demands, and to cease utilizing its Dealer Center® program and related products and services, and to prevent it from asserting the claims asserted herein.

68. By virtue of the foregoing, CAC has sought to maintain its monopoly power in the Relevant Market(s), and/or has attempted to monopolize such Market(s) and there is a dangerous probability that, but for the acts of Westlake and Nowcom in fighting the baseless litigation in the Westlake action, CAC would have succeeded in its scheme.

69. Westlake and Nowcom have been damaged in their business and property by virtue of these acts by CAC, in an amount to be proven at trial, but believed to be in excess of $2 million. Under 15 U.S.C. § 15, Westlake and Nowcom are entitled to treble the amount of their antitrust damages. In addition, by virtue of this same section, Westlake is entitled to their attorneys' fees and costs incurred in bringing and pursuing this antitrust action.

### THIRD CLAIM FOR RELIEF
*Walker Process*

70. Westlake and Nowcom incorporate by reference every allegation set forth above.

71. CAC fraudulently obtained the '807 Patent by failing to disclose prior sales of its CAPS® product and failing to disclose prior art to the patent examiner.

72. CAC has willfully sought and maintained monopolization of the Relevant Product Market, in violation of Section 2 of the Sherman Act through predatory conduct, with the intent to monopolize, and with the dangerous probability of gaining monopoly power in the Relevant Product Market.

73. As a direct and proximate result of the foregoing, Westlake and Nowcom have been injured in their business and property in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

### Unfair Competition Under Cal. Bus. And Prof. Code § 17200

74. Westlake and Nowcom incorporate by reference every allegation set forth above.

75. The acts of CAC, as herein alleged, constitute unlawful, unfair, and deceptive business practices in violation of California Business and Professions Code § 17200 et seq. Such acts include, without limitation, CAC's initiation and prosecution of groundless litigation, CAC's unlawful distribution and sale of CAPS® with a false patent designation, CAC's unfair competition and false advertising in connection with the marketing and sale of CAPS® in violation of California Business and Professions Code § 17500 *et seq.*, and CAC's deceptive statements regarding the patented nature of CAPS® as alleged above.

76. As a result of CAC's conduct, Westlake and Nowcom have suffered and will continue to suffer damage to their business, reputation, and goodwill.

CAC's conduct has caused, and will continue to cause, immediate and irreparable harm to Westlake and Nowcom for which there is no adequate remedy at law, and for which Westlake and Nowcom are entitled to injunctive relief.

## PRAYER FOR RELIEF

Wherefore, for its prayer for relief, Westlake and Nowcom pray for judgment as follows:

1. On Westlake's and Nowcom's First claim for relief, that Westlake and Nowcom be awarded profits on their lost sales, as well as other damages, treble damages and costs and attorneys' fees incurred in connection with this case with this action against CAC, according to 15 U.S.C. §15;

2. On Westlake's and Nowcom's First claim for relief, a permanent injunction enjoining CAC and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from conducting future predatory acts of monopolization;

3. On Westlake's and Nowcom's Second claim for relief, that Westlake and Nowcom be awarded profits on their lost sales, as well as other damages, treble damages and costs and attorneys' fees incurred in connection with this case with this action against CAC, according to 15 U.S.C. §15;

4. On Westlake's and Nowcom's Second claim for relief, that Westlake and Nowcom be awarded profits on their lost sales, as well as other damages, treble damages and costs and attorneys' fees incurred in connection with this case with this action against CAC, according to 15 U.S.C. §15;

5. On the Third claim for relief, that the Court find that CAC has falsely marked and continues to falsely mark its products with a notice that the products are covered by the '807 Patent, that CAC be found liable for a fine of up to $500 per offense, that Westlake and Nowcom be awarded one-half of the total amount of the fine to be paid by CAC, and that this case be declared exceptional under 35 U.S.C. § 285;

6. On the Fourth claim for relief, for a determination that CAC be adjudged to have violated California Business and Professions Code § 1700 *et seq*. by unlawfully and unfairly competing against Westlake and Nowcom and be enjoined from further such violations;

1     7.    On all claims, for prejudgment interest;

2     8.    On all claims, for attorneys' fees and costs;

3     9.    For such other relief as the court deems just and proper.

**Dated:** 09/24/2015                            **Respectfully submitted,**

By: /s/ John D. van Loben Sels
John D. van Loben Sels

*Counsel for Westlake Services, LLC d/b/a Westlake Financial Services and Nowcom Corporation*

1   7.   On all claims, for prejudgment interest;

2   8.   On all claims, for attorneys' fees and costs;

3   9.   For such other relief as the court deems just and proper.

**Dated:** 09/24/2015                       **Respectfully submitted,**

By: /s/ John D. van Loben Sels
John D. van Loben Sels

*Counsel for Westlake Services, LLC d/b/a Westlake Financial Services and Nowcom Corporation*

# DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Westlake Services, LLC d/b/a Westlake Financial Services, and Nowcom Corporation hereby demand a jury trial.

**Dated:** 09/24/2015          **Respectfully submitted,**

By: /s/ John D. van Loben Sels
John D. van Loben Sels

*Counsel for Westlake Services, LLC d/b/a Westlake Financial Services, and Nowcom Corporation*