P. ANTHONY SAMMI (pro hac forthcoming)
Anthony.Sammi@skadden.com
JAMES Y. PAK (SBN 304563)
james.pak@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

STEVEN C. SUNSHINE (pro hac vice)
steven.sunshine@skadden.com
JULIA K. YORK (pro hac vice)
julia.york@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C.  20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760

Attorneys for Defendant
CREDIT ACCEPTANCE CORPORATION

(*additional counsel listed on next page*)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| WESTLAKE SERVICES, LLC D/B/A WESTLAKE FINANCIAL SERVICES and NOWCOM CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> CREDIT ACCEPTANCE CORPORATION, <br><br> Defendant. | CASE NO.: 15-cv-07490-SJO-MRNx <br><br> (1) DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; <br><br> (2) DECLARATION OF KEVIN J. MINNICK IS SUPPORT THEREOF (Filed under separate cover); and <br><br> (3) [PROPOSED] ORDER (Lodged under separate cover). <br><br> Date:        November 23, 2015 <br> Time:        10:00 a.m. <br> Courtroom: 1 <br> Judge:       Hon. S. James Otero |

1

## <u>ADDITIONAL COUNSEL</u>

2    KEVIN J. MINNICK (SBN 269620)
     kevin.minnick@skadden.com
3    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     300 South Grand Avenue
4    Los Angeles, California 90071-3144
     Telephone:   (213) 687-5000
5    Facsimile:    (213) 687-5600

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 23, 2015 at 10:00 a.m., or as soon thereafter as the matter may be heard by the Honorable S. James Otero in the above-referenced Court, located at 312 North Spring Street, Los Angeles, California 90012, Credit Acceptance Corporation will, and hereby does, move for an order dismissing Plaintiffs' Complaint (ECF No. 1) and all causes of action therein against Credit Acceptance Corporation with prejudice.

This Motion is made pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). This Motion is based on this Notice of Motion and Motion, all pleadings and files in this matter, all matters of which this Court may take judicial notice, and upon such other and further oral or documentary evidence as may be presented to the Court at or prior to the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on October 15, 2015. (*See* C.D. Cal. L.R. 7-3.) Counsel for Plaintiffs indicated during the conference of counsel that Plaintiffs will oppose this Motion.

DATED: October 23, 2015

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____ */s/ Kevin J. Minnick* _____
KEVIN J. MINNICK
Attorneys for Defendant
CREDIT ACCEPTANCE CORPORATION

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................. 1

SUMMARY OF ALLEGATIONS .......................................................... 1

ARGUMENT ......................................................................................... 3

    I.      Plaintiffs Have Failed To State A Sherman Act Claim ........................ 4

          A.     The Failure to Plead a Proper Relevant Market or the Requisite Degree of Market Power Dooms Plaintiffs' Sherman Act Claims ................................................................ 5

                1.     The Relevant Product Market Allegations Are Inadequate ............................................................... 6

                2.     The Geographic Market Allegations Are Inadequate ........ 8

                3.     Plaintiffs' Market Power Allegations Are Inadequate ........ 9

          B.     Plaintiffs Fail To Adequately Plead Exclusionary Conduct ........ 10

                1.     Plaintiffs Have Not Adequately Pled *Walker Process* Fraud .......................................................... 11

                        (a)    The *ZoomLot* Allegations Fail ................................ 12

                        (b)    The CAPS "Sales" Allegations Fail ........................ 15

                  2.     Plaintiffs Have Not Adequately Pled Sham Litigation ............................................................... 17

    II.     Plaintiffs Have Failed To Plead A Violation Of The UCL .................... 18

    III.    The Court Should Deny Leave To Amend ........................................ 20

CONCLUSION .................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                           **Page(s)**

*Abagninin v. AMVAC Chemical Corp.*,
    545 F.3d 733 (9th Cir. 2008)........................................................................20

*American Sales Co. Inc. v. AstraZeneca AB*,
    No. 10 Civ. 6062 (PKC)
    2011 WL 1465786 (S.D.N.Y. April 14, 2011).....................................8

*Analogix Semiconductor, Inc. v. Silcon Image, Inc.*,
    No. C 08-2917 JF (PVT),
    2008 WL 8096149  (N.D. Cal. Oct. 28, 2008)..................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................4, 10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .....................................................................4

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
    182 F.3d 1096 (9th Cir. 1999)........................................................8

*BlackBerry Ltd. v. Typo Products, LLC*,
    No. 14-00023 WHO,
    2014 WL 1867009 (N.D. Cal. May 8, 2014) ............................14, 16

*C.R. Bard, Inc. v. M3 Systems, Inc.*,
    157 F.3d 1340 (Fed. Cir. 1998)...........................11, 12, 14, 16

*Cargill Inc. v. Budine*,
    No. CV-F-07-349-LJO-SMS,
    2007 WL 2506451 (E.D. Cal. Aug. 30, 2007) ..............................10

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
    20 Cal. 4th 163 (1999)................................................................19

*Colonial Medical Group, Inc. v. Catholic Health Care West*,
    444 F. App'x 937 (9th Cir. July 22, 2011).................................6, 7, 8

*Delano Farms Co. v. California Table Grape Commission*,
    655 F.3d 1337 (Fed. Cir. 2011)...............................................5, 6

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009)..........................................12, 13, 15

*Golden Gate Pharmacy Services, Inc. v. Pfizer, Inc.*,
    433 F. App'x 598 (9th Cir. May 19, 2011) .................................6, 7, 8

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2008)......................................................18

*Maguca v. Aurora Loan Services*,
    No. SACV 09-1086 JVS (ANx),
    2009 WL 3467750 (C.D. Cal. Oct. 28, 2009) ................................................. 10

*Malaney v. UAL Corp.*,
    434 F. App'x 620 (9th Cir. May 10, 2011) ........................................................ 7

*McCabe Hamilton & Renny, Co., Ltd. v. Matson Terminals, Inc.*,
    No. 08-00080 JMS/BMK,
    2008 WL 2437739 (D. Haw. June 17, 2008) ........................................... 5, 8, 10

*MedImmune, Inc. v. Genentech, Inc.*,
    427 F.3d 958 (Fed. Cir. 2005), *overruled on other grounds by*
    *MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ....................................................................................... 12

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    269 F. Supp. 2d 1213 (C.D. Cal. 2003) ............................................................ 4

*Miranda v. Clark County, Neveda*,
    279 F.3d 1102 (9th Cir. 2002), *vacated*,
    295 F.3d 1380 (9th Cir. 2002) ....................................................................... 16

*Neupak, Inc. v. Ideal Manufacturing & Sales Corp.*,
    41 F. App'x 435 (Fed. Cir. 2002), *reh'g denied*,
    42 F. App'x 468 (Fed. Cir. 2002) .................................................................. 16

*Newcal Industries, Inc. v. Ikon Office Solutions*,
    513 F.3d 1038 (9th Cir. 2008) .................................................................. 5, 6, 7

*Patent Category Corp. v. Worldwide Creations*,
    No. CV 06-7560-RGK (FFMx),
    2007 WL 2667428 (C.D. Cal. May 7, 2007) ................................................... 5

*Pfaff v. Wells Electronics., Inc.*,
    525 U.S. 55 (1998) ........................................................................................ 15

*Polaris Industries v. Arctic Cat Inc.*,
    No. 14-3412 (JRT/FLN),
    2015 U.S. Dist. LEXIS 102529 (D. Minn. Aug. 4, 2015) ............................ 13

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
    508 U.S. 49 (1993) ............................................................................. 11, 17, 18

*Radiancy, Inc. v. Viatek Consumer Products Group, Inc.*,
    No. 13-cv-3767 (NSR),
    2014 WL 4772340 (S.D.N.Y. March 28, 2014)
    (to be published in F. Supp. 3d) .................................................................. 8, 17

*Rebel Oil Co. Inc., v. Atlantic Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) ..................................................................... 5, 10

*Renick v. Dun & Bradstreet Receivable Management Services*,
    290 F.3d 1055 (9th Cir. 2002) ...................................................................... 19

DEFENDANT'S MOTION TO DISMISS

*Rick-Mik Enterprises v. Equilon Enterprises, LLC*,
    532 F.3d 963 (9th Cir. 2008) ...................................................................... 9

*Rubenstein v. Neiman Marcus Group LLC*,
    No. CV 14–07155 SJO (JPRx),
    2015 WL 1841254 (C.D. Cal. Mar. 2, 2015) .................................................. 19

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013), *cert. denied*,
    134 S. Ct. 1322 (2014) ............................................................................ 13, 20

*Seirus Innovative Accessories, Inc. v. Cabela's, Inc.*,
    No. 09-CV-102 H (WMC),
    2010 WL 6675046 (S.D. Cal. April 20, 2010) .............................................. 8

*SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*,
    88 F.3d 780 (9th Cir. 1996) ...................................................................... 4

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) .................................................................... 4

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993) ................................................................................ 5

*Sun Microsystems, Inc. v. Versata Enterprises, Inc.*,
    630 F. Supp. 2d 395 (D. Del. 2009) ......................................................... 5, 8

*Super Chefs, Inc. v. Second Bite Foods, Inc.*,
    No. CV 15-00525 SJO (FFMx),
    2015 U.S. Dist. LEXIS 113468 (C.D. Cal. Aug. 25, 2015) ...................... 14, 15

*Surface Supplied, Inc. v. Kirby Morgan Dive Sys, Inc.*,
    No. C-13-0575 MMC,
    2013 WL 5496961  (N.D. Cal. Oct. 13, 2013) ............................................. 9

*Tanaka v. University of Southern California*,
    252 F.3d 1059 (9th Cir. 2001) ................................................................. 7, 8

*Tessenderlo Kerley, Inc. v. Or-Cal, Inc.*,
    No. 11-cv-04100 WHA,
    2012 WL 1094324 (N.D. Cal. Mar. 29, 2012) .......................................... 14, 16

*Therasense, Inc. v. Becton, Dickinson and Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) .................................................. 14, 16, 17, 18

*Tyco Healthcare Group LP v. Mutual Pharmaceutical Co.*,
    762 F.3d 1338 (Fed. Cir. 2014) .............................................................. 17

*Vargas v. JP Morgan Chase Bank, N.A.*,
    30 F. Supp. 3d 945 (C.D. Cal. 2014) ........................................................ 18

*Walker Process Equipment, Inc., v. Food Machinery & Chemical Corp.*,
    382 U.S. 172 (1965) ............................................................................ 5, 11

v

**PRELIMINARY STATEMENT**

The antitrust complaint filed by Plaintiff Westlake Services, LLC d/b/a Westlake Financial Services ("Westlake") and Nowcom Corporation ("Nowcom"; together with Westlake, "Plaintiffs") is the latest salvo in a long-running dispute between the Plaintiffs and Defendant Credit Acceptance Corporation ("Credit Acceptance"). Not dissuaded by this Court's refusal to permit the belated addition of antitrust counterclaims in a prior patent infringement suit that Credit Acceptance voluntarily dismissed, Plaintiffs now seek to prolong litigation by pursuing a separate, meritless antitrust lawsuit against Credit Acceptance.

The Court should dismiss the Complaint (ECF No. 1), for it fails to include adequate allegations of the basic elements of a Section 2 Sherman Act antitrust claim. Specifically, the Complaint fails to allege (1) that Credit Acceptance wielded monopoly power in any properly-defined relevant antitrust market, or was dangerously close to achieving it; or (2) that in enforcing U.S. Patent No. 6,950,807 (the "'807 Patent") in the prior patent litigation, Credit Acceptance's conduct was wrongful under the high standards set by Supreme Court precedent. The California Unfair Competition Law ("UCL") claims fail for the same reasons.

Although the Complaint is technically the first pleading in this case, it is actually Plaintiffs' second attempt to state antitrust and unfair competition claims against Credit Acceptance. Plaintiffs conducted extensive discovery in the underlying patent litigation, were on notice of the pleading deficiencies in their proposed allegations, and yet have still failed to state a claim upon which relief can be granted. Because Plaintiffs have not sufficiently pled any antitrust or unfair competition claims despite two opportunities to do so and extensive discovery in the prior litigation, the Court should dismiss the Complaint and deny leave to amend.

**SUMMARY OF ALLEGATIONS**

Plaintiff Westlake specializes in the acquisition and servicing of sub-prime automotive retail loans, and provides sub-prime lending and auto financing. (Compl.

1

¶ 1.)  Plaintiff Nowcom "provides technology such as Dealer Desktop software for independent and franchise car dealerships that runs credit reports, manages auto inventory, prints contracts and forms, and adds insurance binders." (*Id.* ¶ 2.)

Plaintiffs allege that Defendant Credit Acceptance markets and sells "software products." (Compl. ¶ 35.)  Credit Acceptance is the owner by assignment of the '807 Patent (*id.* ¶ 4), which describes a method and system for processing an application for financing a purchase. (Compl. Ex. A, ECF No. 1-1.)  The inventor is Jeffrey Brock, a Credit Acceptance employee. (*Id.* ¶¶ 38, 40.)  The application that resulted in the '807 Patent was filed on December 31, 2001. (*Id.* ¶¶ 19, 38.)  Plaintiffs allege that "Mr. Brock, [Credit Acceptance], and their counsel" failed to disclose prior art and prior sales to the U.S. Patent and Trademark Office ("PTO") while the patent application was pending. (*Id.* ¶¶ 9, 20.)

CAPS "<u>Sales</u>."  Plaintiffs allege that Credit Acceptance made "sales and offers for sale" of Credit Acceptance's "Credit Approval Processing System" ("CAPS"), more than one year before filing the application for the '807 Patent. (Compl. ¶¶ 19, 41.)  Plaintiffs contend that Mr. Brock, Credit Acceptance, and their counsel intentionally failed to disclose these "prior sales" to the PTO, the "prior sales" are allegedly material to "at least" five of the 42 claims, and "but for" this nondisclosure, "claims of the '807 Patent would not have issued." (*Id.* ¶¶ 20-22, 42-43, 60.)

*ZoomLot*.  Plaintiffs further allege that Credit Acceptance was supposedly aware of a *ZoomLot* prior art reference "[p]rior to and during the prosecution of the '807 Patent application." (*Id.* ¶ 46.)  Plaintiffs impute this knowledge to Credit Acceptance based on a copyright lawsuit Credit Acceptance and National Auto Credit, Inc. ("NAC") settled five years before NAC's acquisition of *ZoomLot* and "because the companies were competitors[.]" (*Id.*)  Plaintiffs assert that Mr. Brock, Credit Acceptance and their counsel intentionally "failed to disclose Zoomlot," which is supposedly material to at least four of the 42 claims, and that "but for" this nondisclosure, "claims of the '807 Patent would not have issued." (*Id.* ¶¶ 25-27, 47-

2

48, 60.)

The Underlying Patent Litigation.  In March 2013, Credit Acceptance sued Plaintiffs for infringement of the '807 Patent in this Court, Case No. 13-cv-01523. (Compl. ¶ 51.)  Westlake and Nowcom did not raise any defenses or counterclaims sounding in fraud or antitrust until Credit Acceptance sought to voluntarily dismiss the patent suit in July 2015.  (*See* ECF No. 104, Case No. 13-cv-01523.)

The Antitrust Claims.  Plaintiffs now bring antitrust claims pursuant to Section 2 of the Sherman Act.  (Compl., First, Second, and Third Claims for Relief.) Plaintiffs allege that the '807 Patent was "fraudulently procured," and contend that through its enforcement of the patent against them, Credit Acceptance monopolized and attempted to monopolize three different alleged markets: (i) "subprime auto loans," (ii) "e-commerce software that facilitates subprime auto loans," and (iii) "e-commerce software that facilitates auto loans."[1]  (*Id*. ¶¶ 8, 32, 50.)  Plaintiffs baldly assert that Credit Acceptance "maintains the predominant market share of and market power in the Relevant Market."  (*Id*. ¶ 36.)  Plaintiffs further contend that the underlying patent lawsuit was "objectively and subjectively baseless," brought "in bad faith as an anticompetitive weapon to force Westlake and Nowcom from the Relevant Product Market and to attempt to interfere directly with Westlake's and Nowcom's business relationships."  (*Id*. ¶ 66.)  Finally, Plaintiffs contend that Defendant's conduct violates the UCL, California Business and Professions Code §17200 *et seq*.  (*Id*. ¶ 75.)

## **ARGUMENT**

A complaint cannot survive a Rule 12(b)(6) motion to dismiss if it does not

---

[1]  Plaintiffs define "Relevant Market" as including at least "e-commerce software that facilitates subprime auto loans," and "e-commerce software that facilitates auto loans," but they also contend that this action "concerns the market for subprime auto loans." (Compl. ¶¶ 8, 32.)   The relevant geographic market for the two product markets asserted in Compl. ¶ 32 is alleged to be the United States; Plaintiffs do not allege a geographic market for the "subprime auto loans" product market.  (*Id*. ¶ 33.)

DEFENDANT'S MOTION TO DISMISS

1  contain factual allegations sufficient to "state a claim to relief that is plausible on its
2  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Somers v. Apple, Inc.*,
3  729 F.3d 953, 959 (9th Cir. 2013) (affirming dismissal of Sherman Act claims).
4  "Threadbare recitals of the elements of a cause of action, supported by mere
5  conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
6  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'
7  requires more than labels and conclusions, and a formulaic recitation of the elements
8  of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P.
9  8(a)). "'Where a complaint pleads facts that are merely consistent with a defendant's
10 liability, it stops short of the line between possibility and plausibility of entitlement
11 to relief.'" *Somers*, 729 F.3d at 960 (quoting *Iqbal*, 556 U.S. at 678).

12 **I.    Plaintiffs Have Failed To State A Sherman Act Claim**

13       Plaintiffs allege that by enforcing its '807 Patent against them, Credit
14 Acceptance engaged in unlawful monopolization and attempted monopolization
15 under Section 2 of the Sherman Act.  A Section 2 monopolization claim requires
16 Plaintiffs to prove both "possession of monopoly power in the relevant market," and
17 "willful acquisition or maintenance of that power" through wrongful conduct.
18 *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir.
19 1996).  A claim for attempted monopolization under Section 2 requires, among other
20 elements, proof of: (i) specific intent to control prices or destroy competition; (ii)
21 predatory or anticompetitive conduct directed at accomplishing that purpose; and
22 (iii) a dangerous probability of achieving monopoly power.[2] *Id.*

23 _____

24 [2]   Both monopolization and attempt also require Plaintiffs to make a showing of
causal antitrust injury. *SmileCare*, 88 F.3d at 783.  The dearth of factual allegations
25 here makes it difficult to ascertain any antitrust injury, including whether Plaintiffs
and Credit Acceptance even participate in each of the markets at issue (as is required
26 for such a showing). *See MGM Studios, Inc. v. Grokster, Ltd.*, 269 F. Supp. 2d 1213,
1219 (C.D. Cal. 2003) (to show antitrust injury, *i.e.*, injury of the type the antitrust
27 laws were intended to prevent and that flows from that which makes defendants' acts
unlawful, the purportedly injured party must be a participant in the same market as
28 the alleged malefactors); *Somers*, 729 F.3d at 963.

DEFENDANT'S MOTION TO DISMISS

1    Here, dismissal of Plaintiffs' Section 2 claims is warranted on two separate

2  grounds: (1) failure adequately to allege the requisite degree of market power in a

3  properly-defined relevant market (Section I.A.1, *infra*); and (2) failure adequately to

4  allege that Credit Acceptance engaged in wrongful conduct (Section I.A.2, *infra*).

5    **A.    The Failure to Plead a Proper Relevant Market or the Requisite
         Degree of Market Power Dooms Plaintiffs' Sherman Act Claims**

6    The purpose of the market analysis in an antitrust action is to ascertain

7  whether the antitrust defendant has market power, or "[t]he ability to control output

8  and prices."[3]   *Rebel Oil Co., v. Atl. Richfield Co.*, 51 F.3d 1421, 1441 (9th Cir.

9  1995).   Without a properly-defined relevant market, "there is no way to measure [a

10  defendant's] ability to lessen or destroy competition."  *Walker Process Equip., Inc.,*

11  *v. Food Mach. and Chem. Corp.*, 382 U.S. 172, 177 (1965); *see also Spectrum*

12  *Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993).  Market power can be proven

13  with either direct or circumstantial evidence; to prove market power with direct

14  evidence, a plaintiff can put forward evidence of restricted output and

15  supracompetitive prices.   *Rebel Oil*, 51 F.3d at 1434.   More commonly, market

16  power is proven circumstantially, requiring a plaintiff to "(1) define the relevant

17  market, (2) show that the defendant owns a dominant share of that market, and (3)

18  show that there are significant barriers to entry and show that existing competitors

19  lack the capacity to increase their output in the short run."  *Id*.  A relevant antitrust

20  market has both a product and geographic dimension.  *Newcal*, 513 F.3d at 1045 n.4.

21

22  _____

23  [3]   In an attempt to monopolize claim under Section 2, the "purpose of defining the
    relevant market … is to determine whether [the defendant] has sufficient market
24  power to pose a threat of monopoly."  *Rebel Oil*, 51 F.3d at 1437 n.6.  The market
    analysis is the same under both a monopolization and an attempted monopolization
25  theory.  *Delano Farms Co. v. Cal. Table Grapes*, 655 F.3d 1337, 1351 (Fed. Cir.
    2011) (citing *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044 n.3
26  (9th Cir. 2008)).  Failure adequately to allege a relevant market or market power is
    fatal to Plaintiffs' Section 2 claims without regard to whether the exclusionary
27  conduct element has been met.  *See McCabe Hamilton & Renny, Co., Ltd. v. Matson
    Terminals, Inc.*, No. 08-00080 JMS/BMK, 2008 WL 2437739, at *7 (D. Hawaii June
28  17, 2008); *see also Sun Microsystems, Inc. v. Versata Ents., Inc.*, 630 F. Supp. 2d
    395, 403 (D. Del. 2009).

1    Here, Plaintiffs' unsupported and contradictory allegations fail to plausibly
2    establish the contours of any proper antitrust market in which competition was
3    purportedly restrained by Credit Acceptance's conduct, nor do they establish Credit
4    Acceptance's supposed monopoly power (or a dangerous probability thereof) in such
5    a market.  Plaintiffs cannot satisfy their obligation to plead a relevant market and the
6    requisite degree of power by relying on mere labels and legal conclusions, and their
7    Section 2 claims should be dismissed on that basis.  *See Newcal*, 513 F.3d at 1045
8    ("[A] complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant
9    market' definition is facially unsustainable."); *Golden Gate Pharmacy Servs., Inc. v.*
10   *Pfizer, Inc.*, 433 F. App'x 598, 600 (9th Cir. 2011) (affirming dismissal of complaint
11   that "fail[ed] to state *any* facts" to support the legal adequacy of the alleged relevant
12   antitrust product market) (emphasis in original).

13                   1.    The Relevant Product Market Allegations Are Inadequate

14   Plaintiffs allege that Credit Acceptance's enforcement of its '807 Patent
15   adversely affected competition in "one or more relevant markets" (Compl. ¶ 32),
16   specifically identifying three.  Plaintiffs first allege that their antitrust action
17   concerns "the market for subprime auto loans." (*Id*. ¶ 8.)  Next, Plaintiffs allege that
18   through its enforcement action, Credit Acceptance "attempted to, and did,
19   monopolize" a "market for e-commerce software that facilitates subprime auto
20   loans." (*Id*. ¶ 30; *see also id.* ¶ 32.)  Plaintiffs further identify a third alleged relevant
21   market: "a product market for e-commerce software that facilitates auto loans," *i.e.*,
22   apparently not limited to subprime auto loans.  (*Id*. ¶ 32.)

23   Beyond baldly asserting the existence of these markets, however, the
24   Complaint offers <u>not a single fact</u> to demonstrate how or why these alleged markets
25   are in fact viable antitrust product markets.  An antitrust product market is "defined
26   by reference to the reasonable interchangeability in use among competing products
27   or by reference to the cross-elasticity of demand between a product and its
28   substitutes." *Delano Farms*, 655 F.3d at 1351 (applying Ninth Circuit law); *see also*

6

1  *Colonial Med. Grp., Inc. v. Catholic Health Care W.*, 444 F. App'x 937, 938 (9th
2  Cir. 2011); *Golden Gate*, 433 F. App'x at 599; *Malaney v. UAL Corp.*, 434 F. App'x
3  620, 621 (9th Cir. 2011); *Newcal*, 513 F.3d at 1045; *Tanaka v. Univ. of S. Cal.*, 252
4  F.3d 1059, 1063 (9th Cir. 2001).

5      As for the alleged market for "e-commerce software that facilitates auto
6  loans," the Complaint does not include facts sufficient to delineate the scope of "e-
7  commerce software," nor does it indicate what is meant by e-commerce software that
8  "facilitates" auto loans, whether subprime or otherwise.  On its face, this market
9  definition is potentially broad enough to encompass banking software used to
10 "facilitate" auto loan payments, or the software underlying websites such as
11 LendingTree.com, which allows users to compare auto finance packages, or
12 CarMax.com, which directs users to sources of auto financing and/or enables them to
13 make loan payments.  Whether such products are actually alleged to compete with
14 Plaintiffs' or Defendant's software products is unclear from the face of the
15 Complaint.  Moreover, material appended to the Complaint undermines any
16 suggestion that a relevant "e-commerce software" market here—however broadly
17 defined—is appropriately limited to software for use in automobile financing, for
18 the '807 Patent suggests that software that could "facilitate" an auto loan can be
19 adapted for different types of consumer lending.[4]

20     Similarly, Plaintiffs fail to support a purported market for "subprime auto
21 loans"; they allege no facts that might explain why there exists a distinct market for
22 "subprime auto loans" as opposed to, for example, a market for auto loans generally,
23 or a general "subprime lending" market.  Such vague and conclusory allegations

---

25 [4]  *See* Compl. Ex. A ('807 Patent), Col. 1, lines 5-12 ("the present invention relates
26 to a method for facilitating the purchase of products on credit and a system for
   implementing such a method," and "the invention is not limited to vehicle sales only,
   and may also be applied to the sale of any products for which a customer desires to
   finance the transaction.") (emphasis added); *see also id.* at Col. 5, lines 34-37 ("the
27 system and method of the present invention may also be applied toward the financing
28 of other products which are commonly purchased on credit").

require dismissal.  *See Colonial Med.*, 444 F. App'x at 938 (affirming dismissal where complaint lacked facts supporting reasonable interchangeability such that alleged product market "would, if accepted, distort the subsequent determination of [defendant's] market power"); *Golden Gate*, 433 F. App'x. at 599; *Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc.*, __ F. Supp. 3d __, 2014 WL 4772340, at \*12 (S.D.N.Y. Mar. 28, 2014) (dismissing complaint whose relevant market definition was "bare-bones" and omitted "any explanation for why the market should be defined as such"); *Am. Sales Co. v. AstraZeneca AB*, No. 10 Civ. 6062 (PKC), 2011 WL 1465786, at \*3 (S.D.N.Y. April 14, 2011) ("limited, vague and conclusory" relevant market allegations "left [court] to speculate" whether relevant product market could be defined more broadly or more narrowly); *Seirus Innovative Accessories, Inc. v. Cabela's, Inc.*, No. 09-CV-102 H (WMC), 2010 WL 6675046, \*3 (S.D. Cal. April 20, 2010); *Sun Microsystems, Inc. v. Versata Ents., Inc.*, 630 F. Supp. 2d 395, 403 (D. Del. 2009); *McCabe Hamilton & Renny, Co. v. Matson Terminals, Inc.*, No. 08-00080 JMS/BMK, 2008 WL 2437739, at \*7 (D. Haw. June 17, 2008).

### 2.   The Geographic Market Allegations Are Inadequate

Plaintiffs' relevant geographic market allegations suffer from the same defect: the bald assertion that the relevant geographic market is the United States (Compl. ¶ 33) is unsupported by any facts.  Plaintiffs fail to allege why U.S. customers wishing to purchase e-commerce software that facilitates auto loans could not turn to foreign software suppliers if prices for such e-commerce software within the U.S. were to increase.  Courts have not hesitated to dismiss such unsupported assertions as to the relevant geographic market.  *See*, *e.g.*, *Tanaka*, 252 F.3d at 1063 (dismissing complaint lacking facts to establish why Los Angeles was an "area of effective competition" for purposes of the antitrust analysis); *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999) (alleged geographic market of "Big Bear Valley" failed as a matter of law where plaintiffs did not allege that "Big

1  Bear Valley is the area of effective competition in which buyers of these products
2  can find alternative sources of supply").

3                    3.     Plaintiffs' Market Power Allegations Are Inadequate

4          Finally, beyond bare conclusory statements, the Complaint fails to adequately
5  allege market or monopoly power as is required for Plaintiffs' Section 2 claims.
6  First, Plaintiffs allege no facts that would constitute direct evidence of Credit
7  Acceptance's ability to control prices and output in any of the relevant markets
8  alleged in the Complaint.[5] Second, Plaintiffs' assertion of circumstantial evidence of
9  market power—*i.e.*, that Credit Acceptance "maintains the predominant share of and
10 market power in the Relevant Market" or was dangerously close to monopoly,
11 without specifying which alleged relevant market is meant (Compl. ¶¶ 36, 68)—fares
12 no better.  Plaintiffs have provided no factual predicate to support their conclusory
13 assertion of market dominance (or a dangerous probability thereof); they have made
14 no allegations as to the competitive structure of any of the alleged markets, such as
15 the size of the market, the number of companies that offer the relevant product(s),
16 why rivals could not enter the market and/or expand their output, or why customers
17 would be prevented from turning to other suppliers.  Nor have they made any
18 allegations regarding Credit Acceptance's share of the alleged relevant market(s).
19 Plaintiffs cannot satisfy their obligation to allege the requisite degree of market
20 power by simply parroting the legal standard without providing further factual
21 amplification.  *See Rick-Mik Enters., Inc. v. Equilon Enters., LLC*, 532 F.3d 963,
22 972-73 (9th Cir. 2008) (market power allegations insufficient in absence of facts
23 relating to "the amount of power or control" in the relevant market; assertion that
24 defendant was "number one" in the industry was not enough); *see also, e.g.*, *Surface
25 Supplied, Inc. v. Kirby Morgan Dive Sys., Inc.*, No. C-13-0575 MMC, 2013 WL

26  _____

27  [5] Plaintiffs offer only conclusory statements, for example that Credit Acceptance's
    conduct has "caused adverse impacts on the Relevant Market, including but not
28  limited to less competition and higher prices in the Relevant Market." (Compl. ¶ 56.)

5496961, at *6-7 (N.D. Cal. Oct. 13, 2013) (bare allegation of "market power" and "dangerous probability" of success insufficient); *McCabe Hamilton*, 2008 WL 2437739, at *8 (dismissal warranted in absence of "some factual predicate to support [Plaintiff's] assertion that Defendant enjoys market power in the relevant market"); *Cargill Inc. v. Budine*, No. CV-F-07-349-LJO-SMS, 2007 WL 2506451, at *8 (E.D. Cal. Aug. 30, 2007) (allegations that defendant controlled "all", "essentially all", or "much if not all" of the relevant market amounted to "labels and conclusions" and a "formulaic recitation of the elements of a cause of action"); *Analogix Semiconductor, Inc. v. Silicon Image, Inc.*, No. C 08–2917 JF (PVT), 2008 WL 8096149, at *6-7 (N.D. Cal. Oct. 28, 2008) (court unable to discern "sufficiency of [market power] allegations" given "vagueness of the market to which they apply").

Indeed, Plaintiffs' assertion of Credit Acceptance's dominance in the market for "e-commerce software that facilitates subprime auto loans"—the narrowest product market alleged—is undermined by their allegation of a "rapidly expanding" market (Compl. ¶ 30), for an "expanding" market signals precisely the <u>opposite</u> of market power. *See Rebel Oil*, 51 F.3d at 1442 ("[E]xpansion by competitors would suggest that the defendant during that expansion lacked the market power to control marketwide output in the first place."); *Maguca v. Aurora Loan Servs.*, No. SACV 09-1086 JVS (ANx), 2009 WL 3467750, at *2 (C.D. Cal. Oct. 28, 2009) ("self-contradictory" allegations are an "admission sufficient to dismiss this cause of action"). As for the "subprime auto loan" market, the common-sense notion that financing for automobile purchases is available from myriad sources—including banks, automotive companies, and finance companies—renders absurd any contention that Credit Acceptance wields the requisite degree of power in such a market. *See Iqbal*, 556 U.S. at 679 (the plausibility analysis is "context-specific" and "requires the reviewing court to draw on its judicial expertise and common sense.").

## B.   <u>Plaintiffs Fail To Adequately Plead Exclusionary Conduct</u>

Plaintiffs' Complaint must also be dismissed for the separate reason that it

10

1  fails to adequately plead that Credit Acceptance engaged in any exclusionary
2  conduct for Section 2 purposes.  Plaintiffs' allegations of wrongful conduct all flow
3  from Credit Acceptance's enforcement of its '807 Patent.  But patents are presumed
4  valid, 35 U.S.C. § 282(a), and "the law recognizes a presumption that the assertion of
5  a duly granted patent is made in good faith."  *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157
6  F.3d 1340, 1369 (Fed. Cir. 1998).  Moreover, the filing of a lawsuit is generally
7  protected by the First Amendment and immunized from antitrust liability under the
8  *Noerr-Pennington* doctrine.  *See Prof'l Real Estate Investors, Inc. v. Columbia*
9  *Pictures Indus., Inc*., 508 U.S. 49, 60-61 (1993) [hereinafter *PRE*].  In light of these
10 well-established principles, enforcement of patents through litigation can constitute
11 exclusionary conduct for Section 2 purposes only where: (i) the patentee seeks to
12 enforce a patent obtained through fraud on the PTO ("*Walker Process*" fraud), or (ii)
13 the antitrust plaintiff is able to demonstrate that the patent infringement suit comes
14 within *PRE*'s narrow "sham" litigation exception to *Noerr-Pennington* immunity.
15 *See Walker Process*, 382 U.S. at 177; *PRE*, 508 U.S. at 51, 60-61.  Here, Plaintiffs'
16 failure to adequately allege either *Walker Process* fraud or the sham litigation
17 exception is a separate basis for dismissal of their Section 2 claims.[6]

18        1.    Plaintiffs Have Not Adequately Pled *Walker Process* Fraud

19        For over two years, Westlake and Nowcom defended the underlying patent
20 suit without a hint of a fraud-based defense or counterclaim.  Indeed, Plaintiffs did
21 not seek to raise fraud claims in the underlying patent litigation until after Credit
22 Acceptance voluntarily moved to dismiss.  (*See* ECF No. 104, Case No. 13-cv-
23 01523.)  As with their first defective attempt, Plaintiffs again fail to plead the

_____

25 [6]  Even had Plaintiffs successfully pled exclusionary conduct—which they have
26 not—their failure to adequately plead other elements of a Section 2 claim (*see*
   Section I.A, *supra*) separately warrants dismissal.  *See Walker Process*, 382 U.S. at
27 174 (a *Walker Process* claim requires that all "elements necessary to a § 2 case" be
   present); *PRE*, 508 U.S. at 61 (proof of a sham merely deprives the defendant of
28 immunity; the plaintiff must still establish all other elements of his claim).

1    essential elements of *Walker Process* fraud.

2        A claim of *Walker Process* fraud requires that a plaintiff allege facts sufficient

3    to establish: (1) a false representation or deliberate omission of a fact material to

4    patentability, (2) made with the intent to deceive the patent examiner, (3) on which

5    the examiner justifiably relied in granting the patent, and (4) but for which

6    misrepresentation or deliberate omission the patent would not have been granted.

7    *C.R. Bard*, 157 F.3d at 1364.  *Walker Process* fraud must be pled with particularity

8    under Rule 9(b).  *MedImmune, Inc. v. Genentech, Inc.*, 427 F.3d 958, 967 (Fed. Cir.

9    2005), *overruled on other grounds by MedImmune*, *Inc. v. Genentech, Inc.*, 549 U.S.

10   118 (2007).   Rule 9(b)'s "heightened pleading standard" for fraud claims requires

11   "identification of the specific who, what, when, where, and how of the material

12   misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-*

13   *Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).   Here, Plaintiffs' *Walker*

14   *Process* fraud claim is premised on the purported withholding of information from

15   the patent examiner during prosecution and fails to satisfy the elements of *Walker*

16   *Process* fraud or the heightened pleading standard under Rule 9(b).

17               (a)    The *ZoomLot* Allegations Fail

18       Plaintiffs do not plausibly allege that Credit Acceptance engaged in *Walker*

19   *Process* fraud premised on the *ZoomLot* reference because (i) their allegations of

20   knowledge of the reference are implausible, (ii) the Complaint does not allege fraud

21   with the requisite degree of specificity, (iii) it fails to allege specific intent to deceive

22   the PTO, and (iv) it fails to establish the materiality of the *Zoomlot* reference.

23       First, Plaintiffs' allegations do not permit the inference that Credit Acceptance

24   had any actual knowledge of the *ZoomLot* reference.   Plaintiffs posit that Credit

25   Acceptance settled litigation with NAC in 1995, and, five years later, NAC published

26   the *ZoomLot* reference on the Internet.   (Compl. ¶¶ 24, 44-46.)   But actual

27   knowledge by Credit Acceptance of the *ZoomLot* reference cannot plausibly be

28   inferred, given that the *ZoomLot* reference is not alleged to have existed when Credit

Acceptance settled with NAC or even to have been relevant to the suit.  Plaintiffs' alternative allegation that Credit Acceptance had knowledge of the *ZoomLot* reference because "the companies were competitors" (Compl. ¶ 46) is also insufficient; <u>actual</u> knowledge of the *ZoomLot* reference cannot be inferred merely because a purported competitor published it.  Were it otherwise, every patent applicant would risk liability for *Walker Process* fraud and treble damages unless they sought out and disclosed every single publication by their competitors.

Second, allegations that Credit Acceptance as a company knew of the reference do not suffice to allege *Walker Process* fraud under Rule 9(b), for Plaintiffs must allege that a <u>specific person</u> actually <u>knew</u> of the *ZoomLot* reference, <u>knew</u> the reference was material to patentability, and yet intentionally withheld it.  *See Exergen*, 575 F.3d at 1329 (finding that the pleading must "name the specific individual associated with the filing or prosecution of the application . . . who both knew of the material information and deliberately withheld or misrepresented it")[7]; *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("Plaintiffs' complaint must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.").  The bare assertion that the inventor of the '807 Patent "withheld references to Zoomlot or provided affirmative misstatements about Zoomlot," (Compl.  ¶ 48), is not supported by any allegation that <u>Mr. Brock</u> had knowledge of the reference, or even how he may have learned of it.  Plaintiffs do not identify <u>any</u> specific individual as having actual knowledge of *ZoomLot* or knowledge of its purported materiality.

Third, Plaintiffs' bare allegations also do not support an inference that Credit

---

[7] If a party fails to show inequitable conduct, it cannot establish *Walker Process* fraud.  *See Polaris Indus., Inc. v. Arctic Cat Inc.*, No. 14-3412 (JRT/FLN), 2015 U.S. Dist. LEXIS 102529, at *7 (D. Minn. Aug. 4, 2015) (dismissing *Walker Process* fraud claim because of a dismissal of the inequitable conduct defense).

DEFENDANT'S MOTION TO DISMISS

1    Acceptance had a <u>specific intent to deceive</u> the PTO when it supposedly failed to
2    disclose the *ZoomLot* reference, as is required for a *Walker Process* fraud claim.  *See*
3    *C.R. Bard*, 157 F.3d at 1364.  Here, Plaintiffs allege only that Credit Acceptance
4    "withheld references to Zoomlot or provided affirmative misstatements about
5    Zoomlot with specific intent to deceive the USPTO."  (Compl. ¶ 48.)  But such a
6    conclusory allegation of specific intent will not defeat a motion to dismiss for failure
7    to state a claim.  *See also BlackBerry Ltd. v. Typo Prods. LLC*, No. 14-cv-00023-
8    WHO, 2014 WL 1867009, at *3 (N.D. Cal. May 8, 2014); *Tessenderlo Kerley, Inc.*
9    *v. Or-Cal, Inc.*, No. 11-cv-04100 WHA, 2012 WL 1094324, at *4 (N.D. Cal. Mar.
10   29, 2012) (allegation that inventor "'deliberately withheld this information with a
11   specific intent to deceive the PTO'" insufficient where factual allegations "[did] not
12   explain why this is a reasonable inference for the Court to make").  Moreover, a
13   mere failure to cite a reference to the PTO is insufficient to support a *Walker Process*
14   fraud claim, for intent cannot be inferred from the mere fact of nondisclosure, even if
15   the reference purportedly withheld or misrepresented was material.  *See C.R. Bard*,
16   157 F.3d at 1365; *BlackBerry*, 2014 WL 1867009, at *3; *Tessenderlo Kerley*, 2012
17   WL 1094324, at *4.

18        <u>Fourth</u>, Plaintiffs' *Walker Process* theory also fails on the basis that they have
19   not alleged facts sufficient to infer "materiality," meaning that the PTO would not
20   have issued the patent "but for" the misrepresentation or deliberate omission.  *C.R.*
21   *Bard*, 157 F.3d at 1364; *see also Therasense, Inc. v. Becton, Dickinson & Co*., 649
22   F.3d 1276, 1291 (Fed. Cir. 2011) (en banc).  Plaintiffs' two alternate theories that
23   Credit Acceptance (1) "provided affirmative misstatements about Zoomlot," and (2)
24   "withheld references to Zoomlot" (Compl. ¶ 48) both fail to allege the requisite "but
25   for" materiality.  As to the assertions of "affirmative misstatements," such general
26   allegations do not suffice, for Plaintiffs cannot adequately allege fraud without
27   identifying specific affirmative misstatements and the communication or document
28   that contains the purported misstatements.  *See Super Chefs, Inc. v. Second Bite*

DEFENDANT'S MOTION TO DISMISS

1    *Foods, Inc.*, No. CV 15-00525 SJO (FFMx), 2015 U.S. Dist. LEXIS 113468, at *9

2    (C.D. Cal. Aug. 25, 2015) (Otero, J.).  With respect to the "withheld references," it is

3    equally unclear what "references" were purportedly withheld.  Plaintiffs identify

4    only a single *ZoomLot* reference (Compl. Ex. C); if Credit Acceptance's purported

5    material omission is premised solely on this reference, it is not enough merely to

6    allege that the reference is material to "at least" certain claims of the '807 Patent.

7    (Compl. ¶ 26.)  Rule 9(b) requires identification of both the specific limitations in

8    each claim and the portions of the reference where the material information is found;

9    Plaintiffs have now twice failed to provide this.  *See Exergen*, 575 F.3d at 1329

10   ("[T]he pleading fails to identify … which limitations in [the] claims[] the withheld

11   references are relevant to, and where in those references the material information is

12   found – *i.e.*, the 'what' and 'where' of the material omissions.").

13                          (b)    The CAPS "Sales" Allegations Fail

14          Plaintiffs' allegations of undisclosed prior sales are equally insufficient to state

15   a claim for *Walker Process* fraud as Plaintiffs fail (i) to establish the materiality of

16   the "sales," and (ii) to allege specific intent to deceive the PTO.

17          First, the mere fact that Credit Acceptance sold CAPS more than a year before

18   the filing date of the '807 Patent, even if true, cannot suffice to establish but-for

19   materiality.  Whether the CAPS sales are "but-for" material necessarily depends on

20   whether they would trigger an on-sale bar, which would occur if, prior to the patent's

21   critical date: (a) the product was the subject of a commercial offer for sale, and (b)

22   the invention was ready for patenting.  *See Pfaff v. Wells Electronics, Inc.*, 525 U.S.

23   55, 65-66 (1998).  Plaintiffs fail to plead facts sufficient to support either element,

24   instead they generally cite to a purported Credit Acceptance document and conclude

25   that purported sales of CAPS "before December 30, 2000 are a bar to patentability

26   under § 102."  (Compl. ¶¶ 41-42.)  Plaintiffs make no effort to connect the CAPS

27   system as it existed prior to December 30, 2000 (if at all) to the elements in the '807

28   Patent claims.  *See Exergen*, 575 F.3d at 1329 ("[T]he pleading fails to identify

1  which claims, and which limitations in those claims, the withheld references are

2  relevant to, and where in those references the material information is found – *i.e.*, the

3  'what' and 'where' of the material omissions."); *Neupak, Inc. v. Ideal Mfg. & Sales*

4  *Corp.*, 41 F. App'x 435, 438 (Fed. Cir. 2002) (upholding district court finding that

5  there was no on-sale bar because party had "failed to prove that every element of the

6  [patent] is shown" in the prior art reference).

7      Second, Plaintiffs' bare allegations again fail to support an inference that

8  Credit Acceptance had a specific intent to deceive the PTO when Credit Acceptance

9  supposedly failed to disclose the CAPS "sales." *See C.R. Bard*, 157 F.3d at 1364.

10  Here, Plaintiffs allege only that Mr. Brock "had an affirmative obligation to

11  disclose" the sales and that Credit Acceptance, Mr. Brock, and their counsel

12  "intentionally failed to disclose" them. (Compl. ¶¶ 20, 43.)  Again, such a conclusory

13  allegation of specific intent will not defeat a motion to dismiss for failure to state a

14  claim.  *See BlackBerry*, 2014 WL 1867009, at *3; *Tessenderlo Kerley,* 2012 WL

15  1094324, at *4.  And, as noted above, a mere failure to cite a reference to the PTO is

16  insufficient for *Walker Process* purposes, for intent cannot be inferred from the mere

17  fact of nondisclosure, even if the reference purportedly withheld or misrepresented

18  was material.  *See C.R. Bard*, 157 F.3d at 1365; *BlackBerry*, 2014 WL 1867009, at

19  *3; *Tessenderlo Kerley*, 2012 WL 1094324, at *4.  Apart from their bare assertions,

20  Plaintiffs fail to include any independent allegation of deceptive intent.  Moreover,

21  even had Plaintiffs sufficiently alleged the materiality of any CAPS sales, deceptive

22  intent cannot be inferred from the materiality of the information alone.  *C.R. Bard*,

23  157 F.3d at 1365.  Deceptive intent requires both knowledge of the information and

24  knowledge of its materiality.  *See Therasense*, 649 F.3d at 1290.  Even assuming

25  such sales occurred as Plaintiffs allege, Plaintiffs fail to allege facts indicating that

26  Mr. Brock knew the materiality of the alleged sales during the patent's prosecution,

27  such that deceptive intent could be inferred from failing to disclose them.

28      In light of the foregoing, Plaintiffs' allegations of exclusionary conduct

16

DEFENDANT'S MOTION TO DISMISS

1   premised on *Walker Process* fraud must be dismissed.

2                    2.        Plaintiffs Have Not Adequately Pled Sham Litigation

3          In order to make out the narrow "sham litigation" exception to *Noerr-*

4   *Pennington* immunity, Plaintiffs must plead facts sufficient to show both (i) that the

5   litigation was "objectively baseless in the sense that no reasonable litigant could

6   realistically expect success on the merits," and, if so, (ii) that the party filing suit was

7   subjectively motivated by an intent to use the act of petitioning—as opposed to the

8   adjudicated outcome of the petitioning process—to "interfere *directly* with the

9   business relationships of a competitor." *PRE*, 508 U.S. at 60-61.  Here, Plaintiffs'

10  assertion of objective baselessness (Compl. ¶ 66) requires Credit Acceptance to

11  guess what "facts" in the Complaint support Plaintiffs' *ipse dixit* legal conclusion.

12  This is wholly insufficient to state a plausible sham litigation claim.  *See Radiancy*,

13  2014 WL 4772340, at *15 ("Patents are presumptively valid and Viatek pleads no

14  facts to support its sham litigation claim other than its subjective belief that Radiancy

15  is deliberately pursuing a strategy to push Viatek out of the market."); *see also Tyco*

16  *Healthcare Grp. LP v. Mut. Pharm. Co.*, 762 F.3d 1338, 1345 (Fed. Cir. 2014)

17  (finding that because of the presumption of patent validity and the high burden of

18  proof, "it will be a rare case in which a patentee's assertion of its patent in the face of

19  a claim of invalidity will be so unreasonable as to support a claim [of] … sham

20  litigation").

21         To the extent Plaintiffs' sham litigation claim is premised on the purported

22  failure to disclose the *ZoomLot* reference or the purported CAPS sales to the PTO,

23  the allegations taken as true fail to demonstrate that the underlying patent litigation

24  was objectively baseless.   Any sham litigation claim premised on purported

25  inequitable conduct before the PTO requires a showing of an intent to deceive the

26  PTO, the same showing required under *Walker Process*.  *See Therasense,* 649 F.3d at

27  1290.  If the supposed inequitable conduct here stems from the nondisclosure of the

28  *ZoomLot* reference or the purported CAPS sales, the Complaint fails to adequately

17

DEFENDANT'S MOTION TO DISMISS

1   allege that Credit Acceptance had an intent to deceive the PTO by purportedly

2   misrepresenting or withholding those references.   Nor do Plaintiffs' allegations

3   establish the "but-for" materiality of the supposedly withheld references, as required

4   for a showing of inequitable conduct.  *Id*. at 1291; *see also* Sections I.B.1.a-b, *supra*.

5        Moreover, to the extent Plaintiffs' allegations of objective baselessness are

6   premised on Credit Acceptance's knowing enforcement of a patent that is invalid

7   (Compl. ¶ 67), and the supposed invalidity is purportedly attributable to prior art

8   (*ZoomLot*) or the on-sale bar (alleged CAPS sales), again the Complaint's allegations

9   are deficient.   Plaintiffs have not adequately alleged that the *ZoomLot* reference is

10  invalidating prior art, nor that the purported CAPS sales meet the requirements of the

11  on-sale bar. (*See* Sections I.B.1.a-b, *supra*).   Without plausible allegations of patent

12  invalidity, Plaintiffs cannot satisfy their obligation of alleging that no reasonable

13  litigant in Credit Acceptance's position could have expected to succeed in pressing a

14  presumptively valid patent against alleged infringers.   After all, for a sham litigation

15  claim the question is not whether the antitrust defendant would have *won* the

16  underlying litigation, but rather whether it had an objectively reasonable basis to

17  bring the suit.  *PRE*, 508 U.S. at 60 n.5, 65.

18  **II.   Plaintiffs Have Failed To Plead A Violation Of The UCL**

19       The Complaint asserts that Credit Acceptance has violated all three prongs of

20  the UCL.  (Compl. ¶ 75.)  Plaintiffs' conclusory, tag-along UCL allegations fall short

21  of Plaintiffs' pleading burden and should be dismissed with the antitrust claims.[8]

22       Unlawful.   A UCL claim alleging the violation of other laws rises and falls

23  with the alleged antecedent causes of action.  *Vargas v. JP Morgan Chase Bank*,

24  *N.A.*, 30 F. Supp. 3d 945, 952-53 (C.D. Cal. 2014) ("If unable to state a claim for the

25

26  [8] A UCL cause of action that is "grounded in fraud" must be pled with particularity
    under Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

27  Here, Plaintiffs' UCL claim is grounded in fraud.  (Compl. ¶ 75 (alleging "deceptive
    business practices," "a false patent designation," "false advertising," and "deceptive

28  statements regarding the patented nature of CAPS").  Rule 9(b) therefore applies.

1  underlying offense, the plaintiff similarly cannot state a claim under UCL for
2  unlawful practices."); *see also Renick v. Dun & Bradstreet Receivable Mgmt. Servs.*,
3  290 F.3d 1055, 1058 (9th Cir. 2002) (affirming dismissal of UCL claim "because the
4  state claim hinges on [plaintiff]'s rejected federal claim").  Because each antecedent
5  antitrust cause of action fails, the UCL claim for unlawful business practices must be
6  dismissed with them.[9]

7      Unfair.  Plaintiffs' allegations of unfair business conduct also rise and fall with
8  the underlying antitrust claims.  "When a plaintiff who claims to have suffered injury
9  from a direct competitor's 'unfair' act or practice invokes section 17200, the word
10  'unfair' in that section means conduct that threatens an incipient violation of an
11  antitrust law, or violates the policy or spirit of one of those laws because its effects
12  are comparable to or the same as a violation of the law, or otherwise significantly
13  threatens or harms competition."   *Cel-Tech Comm'cns., Inc. v. L.A. Cellular Tel.*
14  *Co.*, 20 Cal. 4th 163, 187 (1999).  Here, the allegations of threatened antitrust harms
15  each fail and Plaintiffs have not alleged with specificity any harm to competition in
16  the relevant markets.  (*Supra* Section I.A.)  As a result, the claim for unfair business
17  practices fails with the antitrust claims.

18      Fraudulent.  Plaintiffs must allege with particularity that Credit Acceptance
19  engaged in a fraudulent business practice and "that members of the public are likely
20  to be deceived" thereby.  *Rubenstein v. Neiman Marcus Grp. LLC*, No. CV 14–
21  07155 SJO (JPRx), 2015 WL 1841254, at *4 (C.D. Cal. Mar. 2, 2015).  As detailed
22  above, Plaintiffs' conclusory allegations of misrepresentations lack the necessary
23  "who, what, when, where, and how, of the misconduct charged," and do not set forth
24  "what is false or misleading about a statement, and why it is false."   *Id.*   The

25

26  [9] Plaintiffs' allegations include a single glancing reference to California's False
27  Advertising Law, Cal. Bus. & Prof. Code § 17500 (Compl. ¶ 75), but they do not
   even try to allege the elements of such a claim, let alone with particularity, and thus
28  fail to state a claim for unlawful business practices based on false advertising.

1    allegations under the fraudulent prong of the UCL therefore also fail along with the

2    fraud-based antitrust claims on which they are based.

3    **III.    The Court Should Deny Leave To Amend**

4         Leave to amend can and should be denied when "Plaintiffs have had ample

5    opportunity to properly plead a case and have failed to do so." *Salameh*, 726 F.3d at

6    1133.    Further amendment may also be denied if the "court determines that

7    allegation of other facts consistent with the challenged pleading could not possibly

8    cure the deficiency." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th

9    Cir. 2008).   As noted above, the Complaint represents Plaintiffs' second attempt to

10   state antitrust claims against Credit Acceptance.   After Credit Acceptance moved to

11   voluntarily dismiss the underlying patent litigation, Plaintiffs belatedly moved for

12   leave to amend their answer and counterclaims to add causes of action for attempted

13   monopolization, *Walker Process* fraud, sham litigation, and unfair competition,

14   citing the *Zoomlot* reference and the on-sale bar.   (ECF No. 104, Case No. 13-cv-

15   01523.)   Credit Acceptance argued that the amendment would be futile because,

16   *inter alia*, the claims could not withstand a motion to dismiss.   (ECF No. 106 at 11-

17   18, Case No. 13-cv-01523.)   Despite being on notice of the pleading deficiencies

18   plaguing their proposed allegations, Plaintiffs' Complaint still fails to state a claim

19   upon which relief can be granted.   In view of the extensive discovery from the first

20   case, if Plaintiffs could have stated a claim, they would have by now.   Plaintiffs

21   should not be permitted to plead an antitrust case by trial and error. *See Salameh*,

22   726 F.3d at 1133 ("A plaintiff may not in substance say 'trust me,' and thereby gain

23   a license for further amendment when prior opportunity to amend had been given.").

24                                    **CONCLUSION**

25        For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with

26   prejudice.

27

28

DEFENDANT'S MOTION TO DISMISS

DATED:  October 23, 2015

Respectfully Submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  _____/s/  Kevin J. Minnick_____
                    Kevin J. Minnick
             Attorneys for Defendant
     CREDIT ACCEPTANCE CORPORATION