1  JOHN D. VAN LOBEN SELS (SBN: 201354)
2  jvanlobensels@fishiplaw.com
3  Fish and Tsang, LLP
   333 Twin Dolphin Drive, Suite 220
4  Redwood City, CA 94065
   Telephone:   (650) 517-9800
5  Facsimile:    (650) 517-9898

6
7  Attorney for Plaintiff
   WESTLAKE SERVICES, LLC D/B/A
8  WESTLAKE FINANCIAL SERVICES;
   NOWCOM CORPORATION;
9

10               **UNITED STATES DISTRICT COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

12

13  WESTLAKE SERVICES, LLC          Case No. 15-cv-07490-SJO-MRWx
14  D/B/A WESTLAKE FINANCIAL
    SERVICES; and NOWCOM           **PLAINTIFFS' OPPOSITION TO**
15  CORPORATION;                    **DEFENDANT'S MOTION TO**
                                    **DISMISS**
16          Plaintiff,
                                    **Date:**       November 23, 2015
17              v.                  **Time:**       10:00 a.m.
                                    **Ctrm:**       1
18  CREDIT ACCEPTANCE               **Judge:**      Hon. S. James Otero
    CORPORATION; and DOES 1
19  through 10, inclusive,
20
21          Defendant.
22
23
24
25
26
27
28

_____
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.     INTRODUCTION ...............................................................................1

II.    ARGUMENT AND AUTHORITIES ...............................................2

       A.    The Rule 8 Pleading Standard Governs Plaintiffs' Complaint ......3

       B.    Plaintiffs State A Claim Under The Sherman Act ........................5

             1.    Plaintiffs Properly Allege The Relevant Product Market ......6

             2.    Plaintiffs Properly Allege The Geographic Market ...............8

             3.    Plaintiffs Properly Allege Market Power.............................9

       C.    Plaintiffs Properly State A *Walker Process* Claim .................11

             1.    Plaintiffs Adequately Allege Enforcement .........................12

             2.    Plaintiffs Plead CAC's Fraudulent Misrepresentations
                   To The PTO With The Requisite Specificity ......................13

       D.    Plaintiffs Have Stated A Sham Litigation Claim .......................15

       E.    Plaintiffs State A Claim Under The UCL ..................................17

       F.    In The Alternative, Plaintiffs Should Have Leave To Amend.....17

III.   CONCLUSION................................................................................20

i

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Abagninin v. AMVAC Chemical Corp.*,

   545 F. 3d. 733 (9th Cir. 2008)................................................................18

*Alaska Airlines, Inc. v. United Airlines, Inc.*,

   948 F.2d 536 (9th Cir. 1991)..................................................................5

*Am. Sales Co., Inc. v. AstraZeneca AB*,

   No. 10 CIV. 6062 PKC, 2011 WL 1465786 (S.D.N.Y. Apr. 14, 2011)..........8

*Analogix Semiconductor, Inc. v. Silicon Image, Inc.*,

   No. C 08-2917 JF PVT, 2008 WL 8096149 (N.D. Cal. Oct. 28, 2008).........19

*Ashcroft v. Iqbal*,

   556 U.S. 662 (2009). ..........................................................................3, 4

*Avid Identification Sys. v. Crystal Import Corp.*,

   60 F. 3d 967 (Fed. Cir. 2010). ..............................................................15

*Balistreri v. Pacifica Police Dep't*,

   901 F.2d 696 (9th Cir. 1990)..................................................................3

*Bell Atl. Corp. v. Twombly*,

   550 U.S. 544 (2007) ............................................................................3, 4

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,

   182 F.3d 1096 (9th Cir. 1999)................................................................19

*Brown Shoe Co. v. United States*,

   370 U.S. 294 (1962) ............................................................................6, 8

*Cargill Inc. v. Budine*,

   No. CV-F-07-349 LJOSMS, 2007 WL 2506451 (E.D. Cal. Aug. 30, 2007)...........6, 19

*Colonial Med. Group, Inc. v. Catholic Health Care W.*,

   444 Fed. Appx. 937 (9th Cir. 2011) .......................................................8, 18

*Competitive Techs. v. Fujitsu Ltd.*,
286 F.Supp.2d 1118 (N.D. Cal. 2003)............................................................13

*Copperweld Corp. v. Independence Tube Corp.*,
467 U.S. 752 (1984) ...........................................................................................9

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987)............................................................................17

*Delano Farms Co. v. California Table Grape Commn.*,
655 F.3d 1337 (Fed. Cir. 2011) ........................................................................18

*Dippin' Dots, Inc. v. Mosey*,
476 F.3d 1337 (Fed. Cir. 2007) ........................................................................11

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).............................................................................................4

*Erickson v. Pardus*,
551 U.S. 89 (2007) ..............................................................................................4

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)........................................................................13

*FTC v. CCC Holdings Inc.*
605 F. Supp. 2d 26 (D.C. 2009) .....................................................................8, 9

*FTC v. Indiana Fed'n of Dentists*,
476 U.S. 447 (1986) ..........................................................................................10

*Golden Gate Pharm. Services, Inc. v. Pfizer, Inc.*,
433 Fed. Appx. 598 (9th Cir. 2011) ...............................................................8, 19

*Grid Sys. Corp. v. Texas Instruments Inc.*,
771 F. Supp. 1033 (N.D. Cal. 1991)................................................................13

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
896 F.2d 1542 (9th Cir. 1990).............................................................................3

TABLE OF AUTHORITIES

*Hydril Co. v. Grant Prideco LP,*
  474 F.3d 1344 (Fed. Cir. 2007) ............................................................. 12

*Hydril; see also U.S. Rubber Recycling, Inc. v. Encore Intern., Inc.,*
  No. CV 09-09516, 2011 WL 311014 (C.D. Cal. Jan. 7, 2011) ................... 12

*In re Gupta Corp. Sec. Litig.,*
  900 F. Supp. 1217 (N.D. Cal. 1994) ....................................................... 13

*In re Netflix Antitrust Litigation,*
  506 F. Supp. 2d 308 (N.D. Cal. 2007) .................................................... 14

*Jackson v. Carey,*
  353 F.3d 750 (9th Cir. 2003). ................................................................ 17

*Kendall v. Visa U.S.A., Inc.,*
  518 F.3d 1042 (9th Cir. 2008). ................................................................ 4

*Lopez v. Smith,*
  203 F.3d 1122 (9th Cir. 2000). ............................................................... 17

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,*
  468 F. Supp. 154 (C.D. Cal. 1979) ......................................................... 18

*Maguca v. Aurora Loan Services*
  No. 09-1086 JVS, 2009 WL 3467750 (C.D. Cal. 2009) ............................ 19

*Malaney v. UAL Corp.,*
  434 Fed. Appx. 620 (9th Cir. 2011) .......................................................... 8

*Martinez v. Newport Beach City,*
  125 F. 3d 777 (9th Cir. 1997). ............................................................... 17

*McCabe Hamilton & Renny, Co., Ltd. v. Matson Terminals, Inc.,*
  No. CIV.08-00080JMS/BMK, 2008 WL 2437739 (D. Haw. June 17, 2008) .............. 19

*Medimmune, Inc. v. Genentech, Inc.,*
  427 F.3d 958 (Fed. Cir. 2005) ............................................................... 13

TABLE OF AUTHORITIES

*Nero AG v. MPEG LA, LLC*
   No. 2:10-cv-03672-MRP-RZ, 2010 WL 4366448 (C.D. Cal. Sep. 14, 2010) ..............20
*Newcal Industries, Inc. v. Ikon Off. Solution*,
   513 F.3d 1038 (9th Cir. 2008) .................................................................................6, 7, 9
*Noerr-Pennington* and *California Motor Transp. Co. v. Trucking Unlimited*,
   404 U.S. 508 (1972) ......................................................................................................11
*Nomadix, Inc. v. Hospitality Core Servs., LLC*,
   No. CV 14-08256 DDP, 2015 WL 3948804 (C.D. Cal. June 29, 2015)................. 13, 14
*Novitas, Inc. v. Genlyte Group*,
   No. CV 91-3857, 1995 WL 1790205 (C.D. Cal. March 9, 1995)................................15
*Origami Owl LLC v. Mayo*,
   No. CV-15-00110-PHX-DGC, 2015 WL 4747101 (D. Ariz. Aug. 7, 2015)................10
*Otiz v. St. Peter's Community Hosp.*,
   861 F.2d 1440 (9th Cir. 1988) ......................................................................................6
*Porter v. Jones*,
   319 F.3d 483 (9th Cir. 2003) ........................................................................................3
*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.*,
   508 U.S. 49 (1993) ......................................................................................................16
*Radiancy, Inc. v. Viatek Consumer Products Group, Inc.*,
   13-CV-3767 NSR, 2014 WL 4772340 (S.D.N.Y. Mar. 28, 2014) ................................8
*Rebel Oil Co., v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995)................................................................................6, 8, 10
*Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*
   32 F.3d 963 (9th Cir. 2008) ........................................................................................19
*Salameh v. Tarsadia Hotel*,
   726 F. 3d 1124 (2013) ..................................................................................................18

v

*Seirus Innovative Accessories, Inc. v. Cabela's, Inc.*,

   No. 09-CV-102 H WMC, 2010 WL 6675046, (S.D. Cal. Apr. 20, 2010) ....................18

*SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*

   88 F.3d 780 (9th Cir. 1996) ...........................................................................19

*Spectrum Sports, Inc. v. McQuillan*,

   506 U.S. 447 (1993) .........................................................................................8

*Sunbelt Television, Inc. v. Jones Intercable, Inc*

   795 F. Supp. 333 (C.D. Cal. 1992)...........................................................17, 18

*Surface Supplied, Inc. v. Kirby Morgan Dive Sys., Inc.*,

   No. C-13-0575 MMC, 2013 WL 5496961 (N.D. Cal. Oct. 13, 2013)...........18

*Tanaka v. U. of S. California*; and *Maguca v. Aurora Loan Services*

   252 F.3d 1059 (9th Cir. 2001) ......................................................................19

*Todd v. Exxon Corp.*,

   275 F.3d 191 (2d Cir. 2001) ...........................................................................7

*TransWeb, LLC v. 3M Innovative Properties Co.*,

   16 F. Supp. 3d 385 (D.N.J. 2014)................................................................15

*U.S. Rubber Recycling, Inc. v. Encore Intern., Inc.*,

   No. CV 09-09516, 2011 WL 311014, (C.D. Cal. Jan. 7, 2011)...................12

*United States v. Grinnell Corp.*,

   384 U.S. 563 (1966). ........................................................................................5

*United States v. Philadelphia Nat'l Bank*,

   374 U.S. 321 (1963). ........................................................................................8

*Vess v. Ciba–Geigy Corp.*,

   317 F.3d 1097 (9th Cir. 2003). .....................................................................13

*Vesta Corp. v. Amdocs Management Ltd.*,

   No. 3:14-cv-1142-HZ, 2015 WL 5178073 (D. Or. Sept. 3, 2015).................9

TABLE OF AUTHORITIES

*W. Parcel Exp. v. United Parcel Serv. of Am., Inc.,*
  190 F.3d 974 (9th Cir.1999) ...................................................................10

*Walker Process Equipment Inc., v. Food Machine & Chemical Corp.,*
  382 U.S. 172 (1965) ............................................................11, 17, 18

*Westlands Water Dist. v. Firebaugh Canal,*
  10 F.3d 667 (9th Cir. 1993) ....................................................................3

*Wool v. Tandem Computers, Inc.,*
  818 F.2d 1433 (9th Cir. 1987) ...............................................................13

## **STATUTES**

15 U.S.C. § 2 ..........................................................................................5

35 U.S.C. § 102(b). ................................................................................15

35 U.S.C. § 154(a)(1)-(2) .........................................................................5

37 C.F.R. § 1.56(a) ................................................................................14

37 C.F.R. § 1.56(c)(2) ............................................................................15

37 C.F.R. § 1.56(c)(3) ............................................................................15

Sherman Act § 2.............................................................................9, 11, 12

## **RULES**

FED. R. CIV. P. 11 ....................................................................................1

FED. R. CIV. P. 12(b)(6)..........................................................................2, 3

FED. R. CIV. P. 8(a)(2).............................................................................3

FED. R. CIV. P. 9(b) ...........................................................................13, 14

FED. R. CIV. P.15(a) ..............................................................................17

# I.    INTRODUCTION

Defendant CAC's motion to dismiss fails because Plaintiffs' complaint properly states their claims under applicable Ninth Circuit law and the Federal Rules of Civil Procedure. CAC's criticisms stem from its stated belief that Plaintiffs claims are not supported by evidence, but that is simply not the test, and for that reason the motion fails.

CAC characterizes Plaintiffs' complaint as an effort "to prolong litigation by pursuing a separate, meritless antitrust lawsuit against [CAC]." This statement is so divorced from the facts and circumstances of this case that it does not reflect even a cursory investigation of the allegations against CAC. As Plaintiffs' complaint makes plain, CAC, the named inventor for the '807 Patent (Mr. Brock), and their counsel lied to the Patent Office in order to secure a patent to which they had no right. Then CAC took that unlawfully acquired patent and worked antitrust injury against Plaintiffs and other market participants through CAC's years-long assertion of frivolous infringement claims in this Court – claims which among other things systematically violated Rule 11 of the Federal Rules of Civil Procedure. As Plaintiffs' complaint demonstrates, CAC's unlawful conduct also included the persistent presentation of legal positions and claims related to the '807 Patent long after controlling Supreme Court and Federal Circuit precedent should have led CAC to abandon the '807 Patent and all claims related to it. CAC's misconduct is the subject of Plaintiffs' complaint, and redress for the harm CAC caused Plaintiffs through that misconduct is reason for the complaint; not a desire to prolong a legal fight CAC brought without cause in its effort to eliminate Plaintiffs as competitors.

Next, CAC talks about the "voluntary dismissal" of the '807 Patent claims in this Court as if it were some sort of magnanimous gesture for which Plaintiffs are simply too foolish to respond with gratitude. In fact, there was nothing "voluntary" about the CAC dismissal. Rather, CAC knew to a moral certainty that the remaining '807 Patent claims – the ones which survived invalidation from Westlake's first Covered Business Method ("CBM-1") review in the Patent Trial and Appeals Board ("PTAB") – are doomed in the

currently pending second CBM (CBM-2). CAC also knew that its ill-gotten royalty stream extracted from market participants such as Drivetime will evaporate when the PTAB kills the remaining '807 Patent claims. So CAC dismissed its infringement claims in this Court solely in an act of desperation, in hopes it could bring a motion in the PTAB seeking termination of CBM-2 based on Westlake's supposed lack of standing. Just as Plaintiffs predicted, within days of this Court's order granting the dismissal, CAC made exactly that request to the PTAB. The PTAB, however, did not even allow CAC to *file* such a motion, because Westlake demonstrated that CBM standing is determined at the time the CBM petition is filed. As a result, CAC's dismissal of its infringement claims must be seen for what it truly was: CAC's bad faith attempt to preserve its fraudulently-acquired patent and to continue working antitrust injury in the market.

Moreover, CAC's motion is dishonest in an important respect as well. The motion argues that the Court – to the extent it is inclined to grant any relief – should dismiss the complaint without leave to amend, purportedly because Plaintiffs' Original Complaint is "actually Plaintiffs' second attempt to state antitrust and unfair competition claims against [CAC]." Yet CAC knows it is nothing of the kind. Neither this Court, nor any other, ever passed on any aspect of the pleading sufficiency of Plaintiffs' claims. Moreover, CAC's suggestion that discovery taken in the prior infringement case in defense of CAC's frivolous complaint militates against granting leave to amend is wholly unsupported by any fact or rule of law.

For all the reasons set forth below, CAC's motion should be denied in all respects.

## II.   ARGUMENT AND AUTHORITIES

Though CAC styles its motion under Rule 12(b)(6), many of its supporting arguments improperly sound in summary judgment. For instance, CAC criticizes Plaintiffs' allegations of the antitrust market as "unsupported". Mot. at 6. CAC goes on to complain that Plaintiffs "do not establish [CAC's] supposed market power (or a dangerous probability thereof) in such a market." *Id*. Further, CAC criticizes Plaintiffs for

not offering facts "to demonstrate how or why these alleged markets are in fact viable antitrust product markets." *Id*. CAC also argues "Plaintiffs fail to support a purported market for 'subprime auto loans'". *Id*. at 7. These are all evidentiary criticisms that simply have no place in deciding a motion to dismiss testing the adequacy of Plaintiffs' allegations. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (generally, courts may not consider material outside the complaint when ruling on a motion to dismiss).

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2) – a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## A.   The Rule 8 Pleading Standard Governs Plaintiffs' Complaint

A complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. FED R. CIV. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED R. CIV. P. 8(a)(2). "Ordinary pleading rules are not

meant to impose a great burden upon a plaintiff." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam) (quoting *Twombly*, 550 U.S. 544).

In *Twombly*, the Supreme Court established that dismissal for failure to state a claim upon which relief may be granted does not require appearance beyond a doubt that plaintiff can prove no set of facts in support of a claim that would entitle him to relief. 550 U.S. at 562-63. Instead, a complaint must be plausible on its face and not rest upon legal conclusions. *Id*. at 564-65, 570. *Twombly* was an antitrust case and the Supreme Court recognized that proceeding to antitrust discovery can be expensive, thus the Court "must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id*. at 558. Indeed, a plaintiff must allege enough facts to make misconduct more plausible than an "obvious alternative explanation." *Id*. at 567. The Ninth Circuit, too, has explained that "because discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case," a complaint must have enough factual allegations to raise their claim above speculation. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

In *Iqbal*, the Court reemphasized that a pleading does not suffice if it tenders naked assertions devoid of further factual enhancement; the claims must be plausible. 556 U.S. 662. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Determining whether a complaint states a plausible claim for relief is a context-specific task. *Id*. at 1950. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id*. (citations and quotation marks omitted).

//

4

**B.    Plaintiffs State A Claim Under The Sherman Act**

To state a claim under Section 2, Plaintiffs must allege facts that: (1) CAC possesses monopoly power in the relevant market and (2) "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *U.S. v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). "As traditionally interpreted, the Sherman Act punishes any individual or entity that uses 'predatory' means to attain a monopoly, or to perpetuate a monopoly after the competitive superiority that originally gave rise to the monopoly has faded." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 547 (9th Cir. 1991). The holder of a patent enjoys a lawful monopoly to prevent others from "making, using, offering for sale, or selling" the patented invention during the term of the patent. 35 U.S.C. § 154(a)(1)-(2). Plaintiffs' complaint readily meets these requirements. Indeed, as Plaintiffs allege, the legitimacy of CAC's initial monopoly derived from the '807 Patent is at issue. Complaint at ¶ 20-27; 38-50. Furthermore, Plaintiffs contend that CAC is using predatory means to extend its patent monopoly in the relevant technology markets despite the discovery of facts demonstrating inequitable conduct before the USPTO. Complaint at ¶ 29.

Section 2 of the Sherman Antitrust Act provides that "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony." 15 U.S.C. § 2. A claim of monopoly has two elements (i) monopoly power; and (ii) unlawful acts. *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966).

A plaintiff alleging attempted monopoly under Section 2 must demonstrate four elements: (i) specific intent to control prices or destroy competition; (ii) predatory or anticompetitive conduct directed at accomplishing that purpose; (iii) a dangerous probability of achieving "monopoly power"; and (iv) causal antitrust injury. *Rebel Oil*

*Co., v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995). In its motion, CAC takes issue with Plaintiffs' allegations of relevant market, geographic market, and market power. As demonstrated below, Plaintiffs properly allege a relevant product and geographic market as well as CAC's monopoly power.

**1. Plaintiffs Properly Allege The Relevant Product Market**

A "relevant market" is determined by a product market and a geographic market. *See, e.g., Brown Shoe Co. v. United States*, 370 U.S. 294, 336 (1962). When considering the sufficiency of allegations related to the relevant market and power in the market, "[t]here is no requirement that these elements of the antitrust claim be pled with specificity," and an antitrust complaint will survive Rule 12(b)(6) scrutiny "unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect." *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008). The Ninth Circuit has noted that "defining the relevant market is a factual inquiry ordinarily reserved for the jury." *Otiz v. St. Peter's Community Hosp.*, 861 F.2d 1440, 1446 (9th Cir. 1988). For this reason, district courts have held that "[q]uestions pertaining to proper market definitions are best answered after the benefit of discovery." *Cargill Inc. v. Budine*, No. CV-F-07-349-LJO-SMS, 2007 WL 2506451, *8 (E.D. Cal. Aug. 30, 2007) (holding that arguments pertaining to proper market definitions were premature at motion to dismiss stage and that the antitrust plaintiff had properly alleged a geographic and product market).

The first component of a relevant market is the product market. The product market is not defined by consumers, but by products or producers. *Newcal*, 513 F.3d at 1045 (citing *Brown Shoe*, 370 U.S. at 325). A viable product market encompasses both the product at issue and all economic substitutes for the product: "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe*, 370 U.S. at 325. While the general market contemplated must include all economic

substitutes, "it is legally permissible to premise antitrust allegations on a submarket." *Newcal*, 513 F.3d at 1045. To establish a product submarket the antitrust plaintiff "must be able to show (but need not necessarily establish in the complaint) that the alleged submarket is economically distinct from the general product market." *Id*.

Here, Plaintiffs properly allege one or more relevant markets. These markets include the following product markets, in the conjunctive or in the alternative: "a product market for e-commerce software that facilitates subprime auto loans; (b) a product market for e-commerce software that facilitates auto loans." Complaint at ¶ 32. Plaintiffs allege that it "specializes in the acquisition and servicing of sub-prime automotive loans." *Id.* at ¶ 1. CAC attacks Plaintiffs' attempts to define a relevant product market as failing to address the rules of reasonable interchangeability and cross-elasticity. Mot. at 6-7. CAC's claims that Westlake's product market is improperly defined because it does not clearly exclude online banking software nor account for a market for auto loans generally lacks merit. Mot. at 7. More to the point, CAC's critiques of Plaintiffs' relevant product market fail at this motion to dismiss stage because they are factual critiques that do not show "that the alleged market suffers a fatal legal defect." *Newcal*, 513 F.3d at 1045. "Since the validity of the 'relevant market' is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial." *Newcal*, 513 F.3d at 1045. And this is not the type of case where dismissal on the pleadings is appropriate, as such cases "frequently involve" either "(1) failed attempts to limit a product market to a single brand, franchise, or institution, or comparable entity that competes with potential substitutes or (2) a failure even to attempt a plausible explanation as to why a market should be limited in a particular way." *Todd v. Exxon Corp*., 275 F.3d 191, 199-200 (2d Cir. 2001). Such is not the case here.

Furthermore, many of the cases on which CAC relies are inapposite because they address antitrust allegations on motions for summary judgment, rather than motions to

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

dismiss. *See, e.g.*, *Rebel Oil Co.*, 51 F.3d 1421 (motion for summary judgment); *see also Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993) (appeal from entry of judgment and jury verdict); *Malaney v. UAL Corp.*, 434 Fed. Appx. 620 (9th Cir. 2011) (motion for preliminary injunction). Other cases on which CAC relies are unpublished and non-precedential. *See, e.g., Golden Gate Pharm. Services, Inc. v. Pfizer, Inc.*, 433 Fed. Appx. 598 (9th Cir. 2011); *see also Malaney v. UAL Corp.*, 434 Fed. Appx. 620 (9th Cir. 2011) (on a motion for preliminary injunction; dealt with Clayton Act rather than Sherman Act); see also *Colonial Med. Group, Inc. v. Catholic Health Care W.*, 444 Fed. Appx. 937 (9th Cir. 2011). Finally, CAC relies on cases from other jurisdictions that lack precedential authority. *See, e.g., Am. Sales Co., Inc. v. AstraZeneca AB*, No. 10 CIV. 6062 PKC, 2011 WL 1465786 (S.D.N.Y. Apr. 14, 2011); *see also Radiancy, Inc. v. Viatek Consumer Products Group, Inc.*, 13-CV-3767 NSR, 2014 WL 4772340 (S.D.N.Y. Mar. 28, 2014), as amended (Apr. 1, 2014).

Unlike those cases, and under controlling Ninth Circuit law, at this stage Plaintiffs' need only allege a "plausible" product market. They have done so.

## 2.  Plaintiffs Properly Allege The Geographic Market

A geographic market is limited not only by the area in which the seller operates, but also by the area "to which the purchaser can practicably turn for supplies." *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 359 (1963). The "area of effective competition in the known line of commerce must be charted by careful selection of the market area in which the seller operates, and to which the purchaser can practicably turn for supplies." *Id.* at 359 (citation omitted). "The criteria to be used in determining the appropriate geographic market are essentially similar to those used to determine the relevant product market." *Brown Shoe,* 370 U.S. at 336. CAC argues that the relevant geographic market is international, but this contention lacks any merit. Mot. at 8. The geographic market discussion from *FTC v. CCC Holdings Inc*. is instructive. 605 F. Supp. 2d 26 (D.C. 2009). *CCC Holdings Inc*. was an action to preliminarily enjoin a

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

pending merger of two sellers of partial loss estimating and total loss valuation software used in connection with automobile insurance repair claims. The *CCC Holdings* court noted that "although software products can be designed, manufactured and sold almost anywhere, the databases for Estimatics and TLV sold in the United States must contain data that apply to vehicles driven in the U.S., wherever manufactured." *Id.* at 44. Here, the United States market is appropriately alleged – the software in question operates to facilitate auto loans. The credit databases involved are for purchasers of automobiles in the United States. There is no support for CAC's argument that customers wishing to purchase e-commerce software that facilitates auto loans could turn to foreign software suppliers. Mot. at 8. CAC does not proffer a single example of a subprime auto loan software solution designed for use domestically or abroad that would be reasonably interchangeable with its program. At this stage in the proceeding, Plaintiffs' allegations of a geographic market limited to the United States is sufficient. *See, e.g., Vesta Corp. v. Amdocs Management Ltd.*, No. 3:14-cv-1142-HZ, 2015 WL 5178073, *10 (D. Or. Sept. 3, 2015) (holding that "defining the relevant market is a fact-intensive inquiry" and noting that "while Defendant may be correct that, in this case, the proper geographic market is a global market, at this stage of the proceeding the Court finds that Plaintiff's allegations of a geographic market limited to the United States are sufficient.").

### 3.  Plaintiffs Properly Allege Market Power

Under Section 2 of the Sherman Act, the conduct of a single firm or actor "is unlawful only when it threatens actual monopolization." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767 (1984). CAC claims that Plaintiffs failed to allege that CAC has "market power" within the relevant market as required for an antitrust claim, but that argument is not tied to the allegations in Plaintiffs' complaint. *See Newcal Industries, Inc. v. Ikon Off. Solution*, 513 F.3d 1038 (9th Cir. 2008) (reversing and remanding a trial court's dismissal, holding that lessors alleged a legally cognizable relevant market in which competitors had market power). Market power may be

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

demonstrated through either of two types of proof. One type of proof is direct evidence of the injurious exercise of market power, such as restricted output and supracompetitive prices. *See FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447 (1986). An antitrust plaintiff may also demonstrate a defendant's market power by: (1) defining the relevant market, (2) showing that the defendant owns a dominant share of that market, and (3) showing that there are significant barriers to entry and that existing competitors lack the capacity to increase their output in the short run. *W. Parcel Exp. v. United Parcel Serv. of Am., Inc.,* 190 F.3d 974, 975 (9th Cir.1999) (quoting *Rebel Oil,* 51 F.3d at 1434).

Here, Plaintiffs plausibly allege that CAC has market power. First, Plaintiffs properly define the relevant market in the conjunctive or the alternative: (a) product market for e-commerce software that facilitates sub-prime auto loans; (b) a product market for e-commerce software that facilitates auto loans.[1] Complaint at ¶ 32. Second, Plaintiffs plausibly allege that CAC has a dominant share of that market. Complaint at ¶ 30, 36. Allegations of exact market share are simply not required. *See, e.g., Origami Owl LLC v. Mayo*, No. CV-15-00110-PHX-DGC, 2015 WL 4747101 (D. Ariz. Aug. 7, 2015) (construing allegations in favor of antitrust plaintiff and inferring that antitrust defendant dominated the market based on dominant share allegations. Finally, Plaintiffs allege that there are significant barriers to entry in this market in the form of CAC's misuse of intellectual property to bully its competitors. Complaint at ¶ 37 ("[b]y its conduct of enforcing (and continuing to enforce) the fraudulently procured '807 Patent, CAC attempted to, and did, monopolize the Relevant Market."). Moreover, Plaintiffs set

---

[1] CAC argues that this definition is inconsistent with a previous allegation regarding the "rapidly expanding" market for sub-prime auto loans, relying on *Rebel Oil*. Mot. at 10. However, *Rebel Oil* is not relevant in this context – Plaintiffs do not allege that *competitors* were rapidly expanding. Instead, the Complaint states that "CAC attempted to, and did, monopolize a rapidly expanding market for e-commerce software that facilitates subprime auto loans." Compl. ¶ 30. In point of fact, CAC's anticompetitive efforts could, and did, position it as the rapid expander.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

forth specific factual allegations that raise a reasonable inference that CAC has market power. Complaint at ¶ 35-37.

### C.   Plaintiffs Properly State A *Walker Process* Claim

Conduct prohibited under antitrust law includes bringing suit to enforce a patent with the knowledge that the patent is invalid or not infringed, and the litigation is conducted for anti-competitive purposes. In such cases, the antitrust immunity of *Noerr-Pennington* and *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) does not apply. CAC claims Plaintiffs failed to allege CAC engaged in exclusionary conduct for Section 2 purposes, because – according to CAC – all it did was enforce a patent that was presumed valid. Mot. at 11. With respect, that is not a fair reading of Plaintiffs' Complaint nor the law. The Complaint plainly alleges that CAC secured the '807 Patent through deliberate fraud. Complaint at ¶¶ 9, 38-43. Moreover, the Complaint alleges that notwithstanding the presumption of validity accorded all issued patents, CAC continued to enforce the '807 Patent in bad faith long after CAC knew, or through the reasonable exercise of care should have known, that the claims of the '807 Patent were all directed to non-patentable subject matter. *Id.* at 29. Indeed, CAC continues to enforce the '807 Patent on licensees and others in the market to this day.

In *Walker Process Equipment, Inc. v. Food Machine & Chemical Corp.*, the Supreme Court held "that the enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present." 382 U.S. 172, 174 (1965). As a consequence, a monopolization claim against a patentee for the enforcement of a fraudulently obtained patent is commonly referred to as a *Walker Process* claim. *See, e.g., Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1347 (Fed. Cir. 2007). A meritorious *Walker Process* claim strips the patentee of its exemption from antitrust laws and subjects the patentee to treble damages. *See Walker Process*, 382 U.S. at 176–77. CAC also mischaracterizes *Walker Process* itself: in that case, the Supreme Court held only that the enforcement of patent procured

by fraud on the Patent office could state a claim under § 2 of the Sherman Act. 382 U.S. at 173. The Supreme Court was clear that a Walker Process claim arises under antitrust law, not under patent law or the Declaratory Judgment Act. *Id.* at 176.

### 1. Plaintiffs Adequately Allege Enforcement

Plaintiffs sufficiently plead a *Walker Process* claim. In *Hydril Co. v. Grant Prideco LP*, the plaintiff alleged that the defendant had monopolized two product markets by enforcing a patent that had been obtained by fraud from the PTO. 474 F.3d 1344, 1345 (Fed. Cir. 2007). The district court dismissed the *Walker Process* claim "for failure to state a valid claim for relief" because the plaintiff "ha[d] failed to allege the minimum level of enforcement necessary." *Id.* at 1348. The Federal Circuit reversed the district court's decision and held that "a valid *Walker Process* claim may be based upon enforcement activity directed against the plaintiff's customers." *Id.* at 1350. The Court of Appeals found plaintiff's allegation, that the defendants "wrongfully threaten[ed] to enforce the [patent] against other market participants, including connections manufacturers, drill pipe distributors and end-users," *id.* at 1346, sufficient to state a claim. Here, Plaintiffs allege that CAC has enforced its fraudulently procured patent against "Westlake, Nowcom, and other competitors[.]" Complaint at ¶ 10. Plaintiffs further detail these wrongful enforcement efforts, including the infringement action against Westlake (Case No. 13-cv-01523) and the infringement action against Drivetime Automotive Group. Complaint at ¶ 12. Plaintiffs also allege that "CAC continued to threaten Westlake, Nowcom, their competitors and customers from offering to sell, selling or purchasing competitive software products and competing in the market for those products." *Id.* at ¶ 29. This is sufficient to state a *Walker Process* claim. *See Hydril*; *see also U.S. Rubber Recycling, Inc. v. Encore Intern., Inc.*, No. CV 09-09516, 2011 WL 311014, *10-11 (C.D. Cal. Jan. 7, 2011) (finding that Plaintiff had sufficiently pled *Walker Process* claim under controlling Federal Circuit precedent where it made essentially the same allegation as the plaintiff in *Hydril*).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## 2. Plaintiffs Plead CAC's Fraudulent Misrepresentations To The PTO With The Requisite Specificity

"Like all fraud-based claims, *Walker Process* allegations are subject to the pleading requirements of FED. R. CIV. P. 9(b)." *Medimmune, Inc. v. Genentech, Inc.*, 427 F.3d 958, 967 (Fed. Cir. 2005). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." FED. R. CIV. P. 9(b); *see also Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003). Plaintiffs must identify with particularity the reference or group of references that, but for their omission from CAC's patent applications, the PTO would not have granted the applications. *See, e.g., Grid Sys. Corp. v. Texas Instruments Inc.*, 771 F. Supp. 1033, 1039 (N.D. Cal. 1991) (for *Walker Process* claims, a party must allege that "but for the fraud the affected patents would not have issued"). A party need not plead the intent element of its Walker Process claim with particularity. Instead, "it is the 'circumstances' constituting the fraud that must be alleged with specificity." *Competitive Techs. v. Fujitsu Ltd.*, 286 F.Supp.2d 1118, 1149 (N.D. Cal. 2003). Allegations requiring an inference of scienter satisfy Rule (b) as long as the facts provide a basis for making such an inference and the inference is a reasonable one. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n. 4, 5 (Fed. Cir. 2009). As with knowledge, intent may be pled generally, and the pleading may rely on inferences. It is well-established that "[t]he requirements of Rule 9(b) may be 'relaxed as to matters peculiarly within the opposing party's knowledge,' if the plaintiffs cannot be expected to have personal knowledge of the facts prior to discovery." *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1228 (N.D. Cal. 1994) (quoting *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987)). Intent is almost always "peculiarly within the opposing party's knowledge" and "it is appropriate to allow some leeway to a pleading party." *Nomadix, Inc. v. Hospitality Core Servs., LLC*, No. CV 14-08256 DDP, 2015 WL 3948804, *6 (C.D. Cal. June 29, 2015).

13

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Furthermore, Plaintiffs' allegations are sufficient even under the heightened pleading standard of Federal Rule of Civil Procedure 9(b). First, Plaintiffs sufficiently allege the "who" of the inequitable conduct allegations by identifying Mr. Jeffrey Brock (the named inventor) and counsel for CAC as the specific individuals who are alleged to have engaged in the inequitable conduct. Plaintiffs sufficiently allege materiality, knowledge, and intent. Plaintiffs adequately allege both that there were prior sales and prior art that were intentionally withheld from the PTO in order to procure the '807 Patent. Specifically, Plaintiffs allege that Mr. Brock, CAC, their counsel, and each of them intentionally failed to disclose to the Patent Office material prior CAPS® sales of which they were aware. Complaint at ¶ 43. Plaintiffs also allege that prior to and during the prosecution of the '807 Patent application, CAC was aware of Zoomlot due to the nature of the copyright infringement suit and furthermore, because the companies were competitors in the field of sub-prime automobile lending. Complaint at ¶ 46. These allegations are sufficient. *See, e.g., In re Netflix Antitrust Litigation*, 506 F. Supp. 2d 308, 316-17 (N.D. Cal. 2007) (customer pleaded with sufficient particularity that but for fraud on the part of Netflix, patents would not have issued to Netflix, where customer identified references to prior art that operator allegedly withheld from the PTO in prosecuting its patents, and customer identified parallels between prior art and Netflix's applications that indicated that prior art references were material); *see also Nomadix,* 2015 WL 3948804 (counterclaimant sufficiently pleaded identity, knowledge, intent and materiality).

It is indisputable that Mr. Brock and his patent counsel had a duty to disclose the prior sales and prior art reference. Rule 56 of the PTO specifies that a patent applicant has "a duty to disclose to the [PTO] all information known to that individual to be material to patentability as defined in this section." 37 C.F.R. § 1.56(a). Materiality is broadly defined under the rule: "[I]nformation is material to patentability when it ... establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or it refutes, or is inconsistent with, a position the applicant

takes in ... [a]sserting an argument of patentability." *Id.* § 1.56(b)(1), (b)(2)(ii). A patent may not issue if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b).

Under 37 CFR 1.56(c)(2), the duty of candor also applies to any of CAC's outside counsel that were responsible for drafting and prosecuting the patent in question. In addition, 37 CFR 1.56(c)(3) has been applied to employees of a patent holder-company. *See, e.g., TransWeb, LLC v. 3M Innovative Properties Co*., 16 F. Supp. 3d 385, 398 (D.N.J. 2014) (holding that 3M's inventor and in-house patent counsel both owed a duty of candor and were liable for inequitable conduct for failing to notify the Patent Office of a prior art product). The duty also extends to any and all other individuals who are involved in the substantive preparation or prosecution. *Novitas, Inc. v. Genlyte Group*, No. CV 91-3857, 1995 WL 1790205 (C.D. Cal. March 9, 1995) (finding that the company president owed a duty of candor to the PTO where he communicated with the patent attorney and the inventor and was in a position of knowledge about the patent).

Here, Brock was "substantially" involved in the filing and prosecution of the '807 Patent. The Federal Circuit has explained that to be "substantively involved" means "that the involvement relates to the content of the application or decisions related thereto, and that the involvement is not wholly administrative or secretarial in nature." *Avid Identification Sys. v. Crystal Import Corp*., 60 F. 3d 967 (Fed. Cir. 2010). In *Avid*, the Federal Circuit held that *Avid*'s founder and president was substantively involved in the preparation and prosecution of the patent because he communicated with the inventor and patent attorney about the patent and was in a position to make decisions about the patent. Such is the case here.

### D.   Plaintiffs Have Stated A Sham Litigation Claim

Litigation is a sham, and therefore not immune under the antitrust laws, if it satisfies a two-part test: (1) the lawsuit must be objectively baseless in the sense that no

reasonable litigant could realistically expect success on the merits, and (2) the baseless lawsuit conceals an attempt to interfere *directly* with the business relationships of a competitor, through the use of the governmental *process* – as opposed to the *outcome* of that process – as an anticompetitive weapon. *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.,* 508 U.S. 49, 60–61 (1993) ("*PRE*") (internal quotation marks and citations omitted). Under that test, the intent of the parties in pursuing litigation is irrelevant unless the litigation is objectively unreasonable. *Id.* at 62. Objective reasonableness is equivalent in this context to the existence of probable cause to sue, and "[t]he existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation." *Id.* "Probable cause ... requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication." *Id.* at 62–63 (internal citation and quotation marks omitted).

Here, Plaintiffs have alleged that CAC knew that the '807 Patent was unenforceable due to its fraudulent procurement. Complaint at ¶ 38-50. Any reasonable litigant in CAC's position, knowing that the patents were unenforceable, would not have pursued the litigation. However, the Complaint also alleges that CAC continued its attempt to enforce the '807 Patent despite knowing that it would not have issued but for its fraudulent concealment. Complaint at ¶ 29. The objective prong of the *PRE* test requires an inquiry into the reasonableness of the belief that the litigation will be successful on the merits. *PRE*, 508 U.S. at 60, 62–63. By contrast, the subjective prong of the test does not inquire into that belief, but looks rather at whether CAC intended to use the litigation process to harm competitors. *Id.* at 60–61. Plaintiffs' allegations concerning the objective prong necessarily include the information about inequitable conduct that was available to CAC when they decided to pursue the lawsuits. Complaint at ¶ 29. Those allegations relate to the objective reasonableness of pursuing those lawsuits and not solely to CAC's subjective motivation. Because the Complaint adequately alleges sham litigation, the motion to dismiss should be denied as to the sham litigation claims.

### E.   Plaintiffs State A Claim Under The UCL

CAC's sole argument in support of its motion to dismiss Westlake's claim for unfair competition under California Business and Professions Code is that it fails as a consequence of the alleged insufficiency of Westlake's antitrust claims. Mot. at 18. But, as demonstrated further, above, Plaintiffs adequately allege a relevant product and geographic market as well as CAC's market power in service of its antitrust claims. *See* Section C, above. Furthermore, because Plaintiffs allege their *Walker Process* claim with the requisite specificity, its UCL claim meets the higher pleading standard under Rule 9. *See* Section D, above. Plaintiffs sufficiently allege a claim under the UCL.

### F.   In The Alternative, Plaintiffs Should Have Leave To Amend

In the event the Court finds merit with any of CAC's criticisms of Plaintiffs' complaint, the Court should grant leave to amend. Federal Rule of Civil Procedure 15 (a) provides that leave to amend shall be freely given when justice requires. FED. R. CIV. P. 15(a). Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality." *DCD Programs*, *Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Dismissal without leave to amend is appropriate ***only*** when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

After a responsive pleading has been filed, "leave to amend should be granted unless amendment would cause undue prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Martinez v. Newport Beach City*, 125 F. 3d 777, 785 (9th Cir. 1997). The facts of this case are similar to *Sunbelt Television, Inc. v. Jones Intercable, Inc.*, where the Complaint also alleged monopolization and the Plaintiff was granted leave to amend:

> As such, the complaint fails to state a Sherman Act violation under the essential facility theory. However, ***it appears that this deficiency can be remedied***—at least at the pleading stage—and therefore plaintiff is granted leave to amend for this purpose.

795 F. Supp. 333, 337 (C.D. Cal. 1992) (emphasis added); *see also Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 468 F. Supp. 154, 159 (C.D. Cal. 1979) (Plaintiff was given leave to amend to "adequately plead the existence of threatened injury and causation in fact" in complaint for violation of Sherman act).

The facts in this case are distinguishable from *Abagninin v. AMVAC Chemical Corp.*, 545 F. 3d. 733 (9th Cir. 2008), where the court had already previously granted leave to amend. *Salameh v. Tarsadia Hotel,* 726 F. 3d 1124 (2013) is also inapplicable because in *Salameh* the court found that the complaint could not be cured by additional factual allegations because Plaintiffs were provided with "specific instructions on how to amend the complaint, and Plaintiffs did not comply." *Id*. at 1133.

Also, notably, nearly every case which CAC cites granting the motion to dismiss of an antitrust defendant, the court granted leave to amend. *Walker Process Equip., Inc., v. Food Mach. and Chem. Corp.*, 382 U.S. 172, 177 (1965) (motion to dismiss granted with prejudice by district court, affirmed by court of appeals, reversed and remanded by Supreme Court); *Delano Farms Co. v. California Table Grape Commn.*, 655 F.3d 1337 (Fed. Cir. 2011) (lower court granted motion to dismiss with leave to amend the allegations regarding relevant market at 623 F. Supp. 2d 1144, 1178 (E.D. Cal. 2009)); *Colonial Med. Grp., Inc. v. Catholic Health Care W.*, 444 F. App'x 937, 938 (9th Cir. 2011) (lower court granted motion to dismiss with leave to amend the allegations regarding product market at No. C-09-2192, 2010 WL 2108123, *5 (N.D. Cal. May 25, 2010)); *Seirus Innovative Accessories, Inc. v. Cabela's, Inc*., No. 09-CV-102 H WMC, 2010 WL 6675046, *3 (S.D. Cal. Apr. 20, 2010) (granting motion to dismiss with leave to amend the allegations regarding the relevant product market); *Surface Supplied, Inc. v. Kirby Morgan Dive Sys., Inc.*, No. C-13-0575 MMC, 2013 WL 5496961, at *6-7 (N.D. Cal. Oct. 13, 2013) (granting leave to amend counterclaim for attempted monopolization,

monopolization, and causal antitrust injury to plead sufficient factual allegations to "raise a right to relief above the speculative level"); *McCabe Hamilton & Renny, Co., Ltd. v. Matson Terminals, Inc.*, No. CIV.08-00080JMS/BMK, 2008 WL 2437739 (D. Haw. June 17, 2008) (granting leave to amend federal antitrust claims for monopolization and attempted monopolization); *Cargill Inc. v. Budine*, No. CV-F-07-349 LJOSMS, 2007 WL 2506451 (E.D. Cal. Aug. 30, 2007) (same); *Analogix Semiconductor, Inc. v. Silicon Image, Inc.*, No. C 08-2917 JF PVT, 2008 WL 8096149 (N.D. Cal. Oct. 28, 2008) (same). In the only exceptions, *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*; *Golden Gate Pharm. Services, Inc. v. Pfizer, Inc.*; *Tanaka v. U. of S. California*; and *Maguca v. Aurora Loan Services*, the plaintiffs had already had at least one opportunity amend (unlike here) and could not cure the factual defects with its complaint another time. 88 F.3d 780 (9th Cir. 1996); 433 Fed. Appx. 598 (9th Cir. 2011); 252 F.3d 1059 (9th Cir. 2001); No. 09-1086 JVS, 2009 WL 3467750 (C.D. Cal. 2009)[2]. In the only case CAC cites where leave to amend an initial complaint was denied by the district court, that aspect of the decision was reversed on appeal. *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096 (9th Cir. 1999). *Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC* is inapposite because the plaintiff waived its right to amend its complaint where the district court was silent on amendment and it waited until its reply brief on appeal to request leave. 532 F.3d 963, 976-77 (9th Cir. 2008). *Maguca v. Aurora Loan Services* is also inapposite because it does not deal with an antitrust claim and was denied without leave to amend where the plaintiff "conceded dismissal of all claims against [defendant] with the exception of the UCL claim." 2009 WL 3467750, *1 n. 1.

---

[2] Not only did *Maguca v. Aurora Loan Services* involve a motion to dismiss a First Amended Complaint, but the court there found that the complaint in Maguca was "self-contradictory because the [First Amended Complaint] admits that Aurora and Chase are exempt from the statutes." *Maguca v. Aurora Loan Services*, Case No. 09-1086 JVS, 2009 WL 3467750, at *2 (C.D. Cal. Oct. 28, 2009). There is no such admission in Plaintiffs' complaint, and CAC cites none.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Finally, CAC's argument that Westlake has had "ample opportunity to properly plead a case" lacks credibility. The defendant in *Nero AG v. MPEG LA, LLC* made a similar argument, claiming that the plaintiff had had more than one opportunity to amend its allegations because they were first brought in the form of counterclaims and then amended counterclaims in an earlier suit. No. 2:10-cv-03672-MRP-RZ, 2010 WL 4366448, *8 (C.D. Cal. Sep. 14, 2010). The defendant claimed that the complaint represented the plaintiff's third attempt at stating a claim upon which relief could be granted. The court disagreed, holding that "[t]he Court will grant leave to amend because this Court has not yet given [plaintiff] an opportunity to cure the defects in its pleading and because, in fact, **no court has previously reviewed or opined on its sufficiency.**" *Id.* (emphasis added).

Such is the case here. In its order granting CAC's motion to dismiss its patent claims, it was plain the Court did rule or even comment on the merits of the proposed antitrust counterclaims. Indeed, the Court expressly stated, "because there is no longer an actual case or controversy, the Court lacks subject matter jurisdiction to adjudicate the non-infringement and invalidity counterclaims." ECF No. 110-1 at 5. As a result, CAC's suggestion the Complaint is not an initial pleading cannot have been made in good faith. Motion at 20.   In fact, the Court specifically authorized Plaintiff to file a separate complaint, "[t]o the extent Defendants wish to bring antitrust claims or other new claims, such claims could be brought in a newly filed suit." ECF No. 110-1 at 4.

Because this is the initial complaint, there were no prior amendments nor were there other attempts to cure any supposed deficiencies. CAC has not claimed it would suffer any prejudice if the Court grants leave to amend, nor could it do so. As a result, leave should be granted.

## III.   CONCLUSION

For the forgoing reasons, CAC's motion to dismiss Westlake's Complaint should be denied. In the alternative, Westlake should be granted leave to amend its claims.

**Dated:**                        **Respectfully submitted,**


By:  _____*/s/ John D. van Loben Sels*_____
          John D. van Loben Sels

*Counsel for Westlake Services, LLC d/b/a
Westlake Financial Services and Nowcom
Corporation*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was
served on all counsel of record via the Court's CM/ECF system on November 2, 2015.

*/s/ John van Loben Sels*

John van Loben Sels