P. ANTHONY SAMMI (pro hac vice)
Anthony.Sammi@skadden.com
JAMES Y. PAK (SBN 304563)
james.pak@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

STEVEN C. SUNSHINE (pro hac vice)
steven.sunshine@skadden.com
JULIA K. YORK (pro hac vice)
julia.york@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760

Attorneys for Defendant
CREDIT ACCEPTANCE CORPORATION

(*additional counsel listed on next page*)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| WESTLAKE SERVICES, LLC D/B/A WESTLAKE FINANCIAL SERVICES and NOWCOM CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>CREDIT ACCEPTANCE CORPORATION,<br><br>Defendant. | CASE NO.: 15-cv-07490-SJO-MRWx<br><br>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS<br><br>Date: November 23, 2015<br>Time: 10:00 a.m.<br>Courtroom: 1<br>Judge: Hon. S. James Otero |

**ADDITIONAL COUNSEL**

KEVIN J. MINNICK (SBN 269620)
kevin.minnick@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:    (213) 687-5600

**PRELIMINARY STATEMENT**

In their Opposition brief (ECF No. 20), Plaintiffs Westlake Services, LLC, and Nowcom Corporation (together, "Plaintiffs") perpetuate their criticisms of Defendant Credit Acceptance Corporation's conduct in enforcing its '807 Patent. Though this Court rejected Plaintiffs' arguments that the underlying patent litigation was an "exceptional case" warranting attorneys' fees (*see* ECF No. 121, Case No. 13-cv-01523), Plaintiffs persist in attempting to impugn Defendant's patent enforcement as an antitrust violation. Defendant's opening brief (ECF No. 15, hereinafter "MTD") explained why Plaintiffs' Complaint (ECF No. 1) fails to state a Section 2 Sherman Act or California Unfair Competition Law ("UCL") claim. For all its rhetoric, the Opposition does not seriously engage with Defendant's arguments, instead merely rehashing the Complaint's "unadorned, the-defendant-unlawfully-harmed-me" accusations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And though Plaintiffs recognize the need for "enough factual allegations to raise their claim above speculation" (Opp. 4), their Opposition cannot overcome the Complaint's failure to include more than "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action" that simply "will not do." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**ARGUMENT**

As explained in the MTD, Plaintiffs' Complaint must be dismissed, as it fails adequately to allege (i) the requisite market power in a proper relevant antitrust market (MTD 4-10); (ii) anticompetitive conduct (*id*. 10-18); or (iii) a UCL violation (*id*. 18-19).

**Relevant Product Market**. Plaintiffs' own case law confirms that "[p]lausibly alleging the size and characteristics of the relevant market is a prerequisite to claiming that a company has sufficient market power to build a monopoly[.]" *Origami Owl LLC v. Mayo*, No. CV-15-00110-PHX-DGC, 2015 WL 4747101, at *2 (D. Ariz. Aug. 7, 2015) (citing *Walker Process Equip. Inc. v. Food Mach. & Chem. Corp*, 382 U.S. 172 (1965) and *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008)). The MTD explained that Plaintiffs allege no facts that would plausibly establish the relevant

1

product markets' boundaries, and that the vague, undefined, and conclusory market allegations appear to encompass seemingly disparate types of software products, demonstrating their implausibility and deficiency as a matter of law. (MTD 6-8); *see also Newcal*, 513 F.3d at 1045 (a "facially unsustainable" market warrants dismissal). Plaintiffs make no attempt to distinguish on the merits Defendant's Rule 12(b)(6) cases dismissing antitrust complaints for failure to adequately allege a relevant market,[1] instead apparently now making the contorted claim that the relevant software markets are defined by Westlake's business. (Opp. 7 (citing Compl. ¶ 1).)  Courts consistently reject such efforts to gerrymander product markets that are divorced from the principles of cross-elasticity and reasonable interchangeability. *See, e.g., Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063-64 (9th Cir. 2001); *Analogix Semiconductor, Inc. v. Silicon Image, Inc.*, No. C 08-2917 JF (PVT), 2008 WL 8096149, at *6 (N.D. Cal. Oct. 28, 2008) (rejecting markets that "seem[ed] to depend mostly on where [one party] enjoys some level of success"). Nor does the '807 Patent automatically delineate the product market (*cf.* Opp. 5); the question is whether close substitutes for the patented product exist in a properly-defined market, and here Plaintiffs' Complaint is utterly deficient. *See Abbott Labs. v. Brennan*, 952 F.2d 1346, 1355 (Fed. Cir. 1991) (a patentee "has no market power . . . if there are close substitutes for the patented product.") (citation omitted).

**Relevant Geographic Market**.  Defendant's MTD noted the absence of any facts supporting Plaintiffs' bald assertion of a U.S. market. (MTD 8-9.)  Plaintiffs cannot augment their Complaint by importing facts from unrelated cases or by arguing new facts in their Opposition. (*Cf.* Opp. 8); *see Tessenderlo Kerley, Inc. v. Or-Cal, Inc.*, No. C 11-04100 WHA, 2012 WL 1094324, at *4 (N.D. Cal. Mar. 29, 2012) ("a party cannot . . . supplement its pleadings by way of its motion papers"). Nor do Plaintiffs' cited Rule

---

[1] Plaintiffs cite *Cargill* (Opp. 6), but *Cargill*'s market allegations were far more detailed. *See Cargill, Inc. v. Budine*, No. CV-F-07-349-LJO-SMS, 2007 WL 2506451, at *1 (E.D. Cal. Aug. 30, 2007) (explaining what the relevant product was, how it was derived and used, and why customers preferred the relevant product over other alternatives). And though Plaintiffs generally reference "submarket[s]" (Opp. 6-7), none are pled here.

12(b)(6) cases offer any support here.[2]

**Market Power**.  Plaintiffs argue that the Complaint "plausibly" alleges that Credit Acceptance has a "dominant share" of the purported market(s) and sets forth "specific factual allegations" raising a reasonable inference of market power.  (Opp. 10-11 (citing Compl. ¶¶ 30, 35-37).)  This argument fails on several grounds.  *First*, the '807 Patent is not presumed to confer market power for antitrust purposes.  *See Rick-Mik Enters. v. Equilon Enters.*, 532 F.3d 963, 973 (9th Cir. 2008) (conclusory allegation that defendant's IP rights conferred market power, "unaccompanied by supporting facts, [was] insufficient").  *Second*, Paragraphs 35 and 37 do not address market power.  *Third*, Paragraph 30 alleges a "rapidly expanding market," a fatal defect that also undermines opposition arguments claiming the existence of entry barriers.  (MTD 10; Opp. 10 (emphasis added).)  The Opposition attempts to replead this allegation to characterize only Credit Acceptance as the "rapid expander" (Opp. 10 n.1), but this *post-hoc* effort to rationalize the Complaint's allegations makes no sense and in any event injects new factual allegations.  Plaintiffs thus cannot evade Ninth Circuit precedent explaining that an expanding market signals the opposite of market power.  (*See* MTD 10.)  *Fourth*, Paragraph 36 baldly asserts that CAC "maintains the predominant share of and market power in the Relevant Market."  (MTD 9.)  Not only does this allegation fail to specify which of the alleged markets is meant, it is also a legal conclusion that requires dismissal.  (*Id*. 9-10.)  Plaintiffs do not even attempt to distinguish the case law cited in the MTD, and their own cases support Defendant's argument.  *See Origami Owl*, 2015 WL 4747101, at *4 n.2.

***Walker Process* Fraud**.  The MTD demonstrated Plaintiffs' failure to plausibly allege that Credit Acceptance engaged in *Walker Process* fraud.  (MTD 11-17.)  Plaintiffs

---

[2] *Cf*., *e.g.*, *Origami Owl*, 2015 WL 4747101, at *2 (geographic market apparently not disputed); *Vesta Corp. v. Amdocs Mgmt. Ltd.*, __ F. Supp. 3d __, 2015 WL 5178073, at *9 (D. Or. Sept. 3, 2015) (complaint included multiple paragraphs alleging why customers could not turn to foreign suppliers; distinguishing cases where "the alleged relevant market was so unsupported by facts as to be deficient on its face").

3
DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

do not dispute that *Walker Process* requires a heightened pleading standard and that they must allege the "who, what, when, where, and how" of the alleged fraud.  Instead, Plaintiffs argue two facts not in dispute: that Credit Acceptance attempted to enforce the '807 Patent (Opp. 12) and that inventors and patent counsel have a duty to disclose to the USPTO "all information known to that individual to be material to patentability." (*Id*. 14.)  Those points neither cure the deficient Complaint nor respond to the MTD.  Nor does Plaintiffs' rehash of the barebones allegations make them any more substantial.

Specifically, Plaintiffs argue that they have identified the "who" of the alleged fraud by naming Mr. Brock and unidentified counsel.  But it is not enough to list individuals involved in patent prosecution and then conclude, *ipso facto*, that those individuals engaged in fraud.  Rule 9(b) at least requires that Plaintiffs allege facts to permit the reasonable inference that those individuals had <u>knowledge</u> of the references and knew that the references were <u>material</u>.  On those points:

*First*, knowledge of the *ZoomLot* reference cannot plausibly be inferred from the Complaint's allegations.  Merely reciting the same allegations in opposition does nothing to cure the Complaint's deficiencies.  For example, it is implausible for Credit Acceptance—let alone the individuals named in the Complaint—to have knowledge of the *ZoomLot* reference merely because Credit Acceptance settled litigation with a third party five years before the *ZoomLot* reference came into existence.  (*See* MTD 12-13.) Nor can knowledge be inferred by alleging that Credit Acceptance and the third party were competitors.  (*Id.*)  Plaintiffs fail to credibly address this argument.

*Second*, Plaintiffs' argument that materiality is established merely because Mr. Brock and patent counsel owed a duty to disclose to the PTO misses the point.  The duty to disclose requires disclosure of a reference only if it is <u>known</u> to be <u>material</u>.  The mere fact that a reference is, ultimately, found to be material is not enough. (*See* MPEP § 2001.04 ("The fact that information was known years ago does not mean that it was recognized that the information is material to the present application.").)  Such a showing of materiality requires Plaintiffs to at least identify both the specific limitations in each

4

claim and the portions of the reference where the material information is found. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1329 (Fed. Cir. 2009). Plaintiffs make no effort to connect the CAPS system as it existed prior to December 30, 2000 (if at all), or the *ZoomLot* reference, to the specific claim elements in the '807 Patent.[3]

**Sham Litigation**.  After having to guess which "facts" in the Complaint underlie Plaintiffs' sham litigation claim, it appears that Plaintiffs are now arguing that the claim is based upon the allegation that "the '807 Patent was unenforceable due to its fraudulent procurement." (Opp. 16.)  Because Plaintiffs base the sham litigation claim on the same fraud that is insufficiently alleged for the *Walker Process* claim, both must fail.[4]

**UCL**.  Plaintiffs offer no argument for their UCL theory beyond the unavailing arguments offered in support of their other allegations.  (Opp. 17.)  Because the antitrust claims fail, the UCL claim should be dismissed with them.

**Leave to Amend**.  The MTD showed that the Complaint is Plaintiffs' second attempt to state these claims and that it was filed with notice of its deficiencies, which were raised in the underlying patent case after significant discovery.  (MTD 20.)  Thus, "Plaintiffs have had ample opportunity to properly plead a case and have failed to do so," warranting denial of leave to amend.  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation omitted).  *Nero* does not support a different result, as the plaintiff had not taken discovery in the prior case.  *Cf. Nero AG v. MPEG LA, L.L.C.*, No. 10-cv-3672-MRP-RZ, 2010 WL 4366448, at *8 (C.D. Cal. Sept. 14, 2010).  Leave to amend should be denied.

For these reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

---

[3] Plaintiffs cite *Netflix*, where the pleading was sufficient in that it identified "parallels between prior art and Netflix's applications that indicated that prior art references were material."  (Opp. 14.)  *Netflix* only highlights the deficiencies in Plaintiffs' own Complaint: there has been no attempt to identify any parallels between the alleged prior art (*i.e.*, *ZoomLot* and the alleged CAPS sales) and the specific limitations in each claim.

[4] Both *Walker Process* and sham litigation claims require the other elements of a Section 2 claim to be adequately pled; failure to do so requires dismissal.  (MTD 5 n.3, 11 n.6.)

5
DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

1 | DATED: November 9, 2015

Respectfully Submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: ____*/s/ Kevin J. Minnick*____
Kevin J. Minnick
Attorneys for Defendant
CREDIT ACCEPTANCE CORPORATION