UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

| | |
|---|---|
| **CASE NO.:** CV 15-07490 SJO (MRWx) | **DATE:** December 7, 2015 |
| **TITLE:** Westlake Services, LLC et al. v. Credit Acceptance Corporation | |

========================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Victor Paul Cruz | Not Present |
| Courtroom Clerk | Court Reporter |

**COUNSEL PRESENT FOR PLAINTIFFS:**         **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                                       Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** [Docket. No. 15]

This matter is before the Court on Defendant Credit Acceptance Corporation's ("CAC" or "Defendant") Motion to Dismiss ("Motion"), filed on October 23, 2015. Plaintiffs Westlake Services, LLC d/b/a Westlake Financial Services ("Westlake") and Nowcom Corporation ("Nowcom") (together, "Plaintiff") opposed the Motion ("Opposition") on November 2, 2015, and Defendant replied ("Reply") on November 9, 2015. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for November 23, 2015. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS** Defendant's Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

The Court is familiar with both the background of the instant action and the litigants, having presided over a patent infringement action filed by CAC against Plaintiffs in 2013 (the "Westlake action"). *See generally Credit Acceptance Corp. v. Westlake Services, LLC et al.*, No. 13-cv-01523 SJO (C.D. Cal.).[1] In that case, Westlake filed two Covered Business Method ("CBM") petitions at the U.S. Patent Trials and Appeals Board ("PTAB") seeking to have U.S. Patent No. 6,950,807 (the "'807 Patent"), the patent asserted by CAC in the Westlake Action, invalidated. *See Westlake Services, LLC v. Credit Acceptance Corp.*, CBM2014-00176, 2015 WL 576798 (Patent Tr. & App. Bd. Feb. 9, 2015). The Court granted Westlake's motion to stay the Westlake action pending the PTAB's determination regarding the validity of the '807 Patent, and maintained the stay until CAC filed a motion to dismiss the Westlake action with prejudice ("Motion to Dismiss"). (*See* Order Granting Moving Defs.' Mot. to Stay Case Pending CBM Pet. Review, No. 13-cv-01523, ECF No. 67; Notice of Mot. and Mot. to Dismiss Case with Prejudice, No. 13-cv-

---

[1] Citations to docket entries in *Credit Acceptance Corp. v. Westlake Services, LLC et al.*, No. 13-cv-01523 SJO (C.D. Cal.), of which the Court takes judicial notice pursuant to Federal Rules of Evidence 201(b) and 201(c)(1), are hereinafter cited as "([Document title], No. 13-cv-01523, ECF No. [X].)".

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 15-07490 SJO (MRWx)          DATE: December 7, 2015

01523, ECF No. 99.)  The Court granted CAC's Motion to Dismiss on August 24, 2015—denying Westlake and Nowcom's motion for leave to file a second amended answer and counterclaims for lack of subject-matter jurisdiction—and denied Westlake's motion for attorneys' fees and costs ("Fees Motion"), determining the case to not be "exceptional" within the meaning of 35 U.S.C. section 285.  (*See* Order Granting Pl.'s Mot. to Voluntarily Dismiss with Prejudice and Denying Defs.' Mot. for Leave to File Second Am. Answer and Countercls., No. 13-cv-01523, ECF No. 109; Order Denying Defs.' Mot. for Recovery of Attorneys' Fees, Costs, and Expenses, No. 13-cv-01523, ECF No. 121.)

Subsequent to the Court's dismissal of the Westlake action but prior to the Court's denial of Westlake's Fees Motion, Westlake and Nowcom filed a separate action against CAC on September 24, 2015 asserting the following four causes of action: (1) violation of Section 2 of the Sherman Act; (2) monopolization and attempted monopolization through the maintenance of a "sham litigation" in violation of Section 2 of the Sherman Act; (3) *Walker Process*; and (4) Unfair Competition under Cal. Bus. & Prof. Code section 17200 *et seq.* (*See generally* Compl., ECF No. 1.)  In particular, Plaintiffs allege that CAC obtained the '807 Patent by fraud on the United States Patent and Trademark Office ("USPTO") and by fraudulent concealment of prior sales and prior art.  (Compl. ¶ 9.)  Plaintiffs allege that "[t]hrough its enforcement of the fraudulently procured patent against Westlake, Nowcom, and other competitors, CAC hindered and delayed Westlake and Nowcom and their fellow competitors from competing in the market for sub-prime auto loans."  (Compl. ¶ 10.)  Plaintiffs allege that two of these wrongful enforcement efforts include the Westlake action and a patent infringement action against Drivetime Automotive Group in the United States District Court for the Central District of California initiated March 4, 2013 (the "Drivetime action").  (Compl. ¶¶ 11-12.)

Plaintiffs allege the following facts in the Complaint.  CAC represents that it is the owner by assignment of the '807 Patent. (Compl. ¶ 4.)  The application leading to the '807 Patent was filed on December 31, 2001, and the '807 Patent issued on September 27, 2005.  (Compl. ¶ 38.)  Jeffrey Brock is the named inventor of the '807 Patent, and signed an inventor declaration indicating he was aware of his duty to disclose prior sales of the claimed invention. (Compl. ¶ 39, Ex. H.)  Mr. Brock has been employed by CAC since 1995 and currently holds the position of Vice President of Sales Operations.  (Compl. ¶ 40, Ex. I.)

On October 11, 2013, Westlake filed its first CBM petition at the PTAB seeking review of the'807 Patent ("CBM-1"). (Compl. ¶ 13.)  On March 31, 2014, the PTAB instituted review of claims 1-9, 13, and 33-42, but declined to institute review of claims 10-12 and 14-33.  (Compl. ¶ 13.)  On March 24, 2015, the PTAB issued its Final Written Decision in CBM-1 finding claims 1-9, 13, and 33-42 of the '807 Patent to be invalid because they claim unpatentable subject matter outside the scope of 35 U.S.C. section 101 ("Section 101").  (Compl. ¶ 13.)  CAC did not seek rehearing of the Final Written Decision and did not appeal the final decision to the federal circuit.  (Compl. ¶ 13.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  <u>CV 15-07490 SJO (MRWx)</u>          DATE:  <u>December 7, 2015</u>

Westlake filed a second CBM petition ("CBM-2") seeking review of the remaining claims of the '807 Patent on August 15, 2014. (Compl. ¶ 14.) CAC filed its Preliminary Response in CBM-2 on November 20, 2014, raising an estoppel argument and seeking to terminate the proceedings. (Compl. ¶ 14.) The PTAB rejected CAC's arguments for discretionary termination under 35 U.S.C. section 325(d), but concluded that CAC's argument regarding 35 U.S.C. section 325(e) was not yet ripe. (Compl. ¶ 15.) The PTAB ultimately instituted review of claims 10-12 and 14-33 on Section 101 grounds, stating that "[i]n light of [the] recent guidance from the Supreme Court and the Federal Circuit, we are persuaded that Petitioner's evidence, if not rebutted, would demonstrate that it is more likely than not that claims 10-12 and 14-33 are directed to non-statutory subject matter." (Compl. ¶ 16.) CAC did not request rehearing on the institution decision, and on May 14, 2015 the PTAB denied CAC's request to terminate the CBM-2 proceedings, finding that estoppel did not apply to claims 10-12 and 14-33. (Compl. ¶ 17.) A hearing before the PTAB took place on CBM-2 on September 10, 2015, and a Final Written Decision from the PTAB is due no later than February 6, 2016. (Compl. ¶ 18.)

None of CAC, its counsel, Mr. Brock, or "anyone else at CAC" disclosed to the USPTO during prosecution of the '807 Patent sales and offers for sale CAC made on its patented invention, the Credit Approval Processing System ("CAPS®"), as early as August 2000, notwithstanding that the filing date of the application leading to the '807 Patent is December 31, 2001. (Compl. ¶¶ 19-20, Ex. J.) This failure to disclose was "intentional." (Compl. ¶ 43.) CAC admitted that CAPS® is the embodiment of the '807 Patent by way of the Complaint it filed in the Westlake action. (Compl. ¶ 21 [quoting Compl., *Credit Acceptance Corp. v. Westlake Services, LLC et al.*, No. 13-cv-01523 SJO ¶ 16 (C.D. Cal. Mar. 4, 2013), ECF No. 1].) CAC has been advertising that CAPS® is "patented," and the only patent currently assigned to CAC is the '807 Patent. (Compl. ¶ 28.)

CAC failed to disclose material prior art to the USPTO during prosecution of the '807 Patent, including third-party public use of a computing software product by ZoomLot, a company which was acquired by CAC's competitor National Auto Credit Inc. ("NAC") in 2000. (Compl. ¶ 23, Ex. C, Ex. D.) Prior to the issuance of the '807 Patent, CAC filed a copyright infringement suit against NAC asserting that CAC held valid copyrights over its financing program materials. (Compl. ¶ 24, Ex. E.) In 1995, CAC and NAC "resolved the case with NAC acknowledging that CAC has valid copyrights over its financing program materials." (Compl. ¶ 24, Ex. E.) NAC published details regarding ZoomLot via the Internet as early as 2000. (Compl. ¶ 24, Ex. C.) "CAC was aware of Zoomlot due to the nature of the copyright infringement suit and furthermore, because the companies were competitors in the field of sub-prime automobile lending." (Compl. ¶ 46.)

Plaintiffs allege that CAPS® sales information "would have been material to the patentability of the claims of the '807 Patent," that Zoomlot is "material [prior art] to at least claims 14, 17, 18, and 19 of the '807 Patent," and that Mr. Brock, CAC, and their counsel were under an affirmative obligation to disclose these materials to the USPTO during prosecution. (Compl. ¶¶ 20, 25-26.) Plaintiffs further allege had CAPS® sales information and Zoomlot been disclosed to the USPTO, various claims of the '807 Patent would not have issued. (Compl. ¶¶ 22, 27.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  <u>CV 15-07490 SJO (MRWx)</u>         DATE:  <u>December 7, 2015</u>

II.     DISCUSSION

In the Motion, Defendant argues the Complaint should be dismissed with prejudice because Plaintiffs:  (1) fail to adequately allege a proper product or geographic market; (2) fail to allege market power; (3) fail to plead *Walker Process* fraud or sham litigation; and (4) fail to plead a violation of the UCL.  (*See generally* Mot., ECF No. 15.)  Plaintiff responds that the Complaint contains sufficient allegations with respect to each of the above elements and causes of action to survive a motion to dismiss.  (*See generally* Opp'n, ECF No. 20.)

A.      Legal Standard for Motion to Dismiss

Federal Rule of Civil Procedure 12 ("Rule 12"), which provides for dismissal of a plaintiff's cause of action for "failure to state a claim on which relief can be granted," *see* Fed. R. Civ. P. 12(b)(6), must be read in conjunction with Federal Rule of Civil Procedure 8(a) ("Rule 8").  *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Rule 8 requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although the pleader is not required to plead "detailed factual allegations" under Rule 8, this standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Pleadings that contain nothing more than legal conclusions or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Id.* (citation and quotation marks omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9") provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  This heightened standard applies because allegations of fraud "must be specific enough to give a defendant notice" of its allegedly fraudulent conduct so that the defendant "may defend against the charge."  *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1092 (N.D. Cal. 2014) (citing *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)).  As a general matter, allegations sounding in fraud, including allegations of fraudulent conduct used to support claims under the UCL, "must satisfy the particularity requirement of Rule 9(b)."  *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103-04 (9th Cir. 2003)).  "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Mui Ho v. Toyota Motor Corp.,* 931 F. Supp. 2d 987, 992 (N.D. Cal. 2013) (quoting *Cafasso, United States ex rel v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)) (internal quotation marks omitted) (formatting in

original).  "Where a fraudulent omission is at issue, the requirements of Rule 9(b) are relaxed, but not eliminated."  *UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, No. 14-3466, 2015 WL 4606077, at *8 (N.D. Cal. June 22, 2015).

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court may only consider the complaint, documents incorporated by reference in the complaint, and matters of judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  A court may deny leave to amend where amendment would be futile or if the claim is legally insufficient.  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

      B.     Sherman Act Claims

"In order to state a claim for monopolization under Section 2 of the Sherman Act, a plaintiff must prove: (1) Possession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury."  *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (quoting *Pac. Express, Inc. v. United Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir.), *cert. denied*, 506 U.S. 1034 (1992)).  "The following elements are required to establish an attempt to monopolize claim:  '(1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury.'"  *Id.*

      1.     Market Definition

"In order to state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a 'relevant market.'  That is, the plaintiff must allege both that a 'relevant market' exists and that the defendant has power within that market."  *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008).  A "relevant market" is determined by a product market and a geographic market.  *See, e.g.*, *Brown Shoe Co. v. United States*, 370 U.S. 294, 336 (1962).  The Ninth Circuit has explained that the term "relevant market"

> encompasses notions of geography as well as product use, quality, and description. The geographic market extends to the area of effective competition . . . where buyers can turn for alternative sources of supply.  The product market includes the pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand.

*Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001) (quoting *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1140, 1146 (9th Cir. 1988)).  In an attempt to monopolize claim under Section 2, the "purpose of defining the relevant market . . . is to determine whether [the defendant] has sufficient market power to pose a threat of *monopoly*."  *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1447 n.6 (9th Cir. 1995) (emphasis in original).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 15-07490 SJO (MRWx)</u>     DATE: <u>December 7, 2015</u>

Here, Defendant does not meaningfully dispute the sufficiency of Plaintiffs' allegations regarding causal antitrust injury, relegating its discussion of this element to a footnote. (*See* Mot. 4 n. 2.) Defendant does, however, challenge the adequacy of Plaintiffs' allegations that CAC possessed sufficient market power in a properly-defined, relevant market to maintain a Section 2 claim. (Mot. 6-10.) Defendant also argues that Plaintiffs have failed to adequately allege any wrongful conduct on the part of CAC. (Mot. 10-18.) The Court addresses each of these required elements in turn.

      a.    <u>Product Market</u>

"The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Newcal*, 513 F.3d at 1045 (quoting *Brown Shoe*, 370 U.S. at 325). Although "[t]here is no requirement that these elements of the antitrust claim be pled with specificity . . . a complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable." *Newcal*, 513 F.3d at 1044-45 (internal citations omitted). "The failure to allege a product market consisting of reasonably interchangeable goods renders the SAC 'facially unsustainable' and appropriate for dismissal." *Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*, 433 Fed. App'x 598, 599 (9th Cir. 2011) (citing *Newcal*, 513 F.3d at 1045). Where, as here, a plaintiff premises its antitrust allegations on a "submarket," the plaintiff "must be able to show (but need not necessarily establish in the complaint) that the alleged submarket is economically distinct from the general product market." *Newcal*, 513 F.3d at 1045.

Plaintiffs allege that the "relevant market" is (1) a "product market for e-commerce software that facilitates subprime auto loans"; and/or (2) a "product market for e-commerce software that facilitates auto loans." (Compl. ¶ 32.) Plaintiff Westlake further alleges that it "specializes in the acquisition and servicing of sub-prime automotive retail loans." (Compl. ¶ 1.)

Defendant takes issue with the breadth, and consequently the legal sufficiency, of these alleged product market definitions. Specifically, Defendant argues that the Complaint does not include facts sufficient to delineate the scope of "e-commerce software," nor does it indicate what is meant by e-commerce software that "facilitates" auto loans, whether subprime or otherwise. (Mot. 7.)

The Court agrees with Defendant and finds that the Complaint fails to sufficiently allege the existence of a market for e-commerce software that facilitates auto loans, whether or not such loans are subprime. The Complaint contains no allegations regarding whether the software products in this market are reasonably interchangeable or whether there is cross-elasticity of demand for these software products. Moreover, the Court agrees with Defendant's argument that both market definitions by their terms include products that cannot plausibly be considered substitutes for the products offered or sold by Plaintiffs, including software used to compare auto finance packages or direct users to sources of automobile financing. (Opp'n 7.) Indeed, the deficiencies plaguing the Complaint in this case are nearly identical to those warranting dismissal in *Seirus Innovative Accessories, Inc. v. Cabela's, Inc.* In *Seirus*, the district court found plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   CV 15-07490 SJO (MRWx)          DATE:  December 7, 2015

had failed to sufficiently allege a product market where (1) the complaint contained no allegations regarding whether the goods in the purported market for "cold-weather face, neck and head protection" goods "enjoy reasonable interchangeability of use and cross-elasticity of demand;" and (2) the market as defined in the complaint "could include wool hats, scarves, helmets, lotions, and a variety of other products that are not economic substitutes for the products at issue in this case." No. 09-CV-102-H, 2010 WL 6675046, at *3 (S.D. Cal. Apr. 20, 2010); *see also Am. Sales Co. v. AstraZeneca AB*, No. 10 Civ. 6062 (PKC), 2011 WL 1465786, *3 (S.D.N.Y. Apr. 14, 2011) ("limited, vague and conclusory" relevant market allegations "left [court] to speculate" whether relevant product market could be defined more broadly or more narrowly).  For these reasons, the Court concludes that Plaintiffs have failed to identify a relevant product market, and **GRANTS** Defendant's Motion on this basis.

   b.   Geographic Market

"Antitrust law requires allegation of both a product market and a geographic market."  *Newcal*, 513 F.3d at 1045 n.4.  Plaintiffs allege the relevant geographic market to be the United States. (Compl. ¶ 33.)   Defendant argues such an allegation absent any other factual allegations is insufficient, as it does not indicate "why U.S. customers wishing to purchase e-commerce software that facilitates auto loans could not turn to foreign software suppliers if prices for such e-commerce software within the U.S. were to increase."  (Mot. 8.)

The Court agrees, finding that Plaintiffs fail to allege that the United States is an "area of effective competition" for consumers seeking e-commerce software that facilitates (subprime or not subprime) auto loans.  *See Tanaka*, 252 F.3d at 1063 (approving the dismissal of plaintiff's complaint where plaintiff alleged that the relevant geographic market is Los Angeles and the product market is UCLA women's soccer program, but where the complaint "fails to allege that Los Angeles is an 'area of effective competition' for student-athletes competing for positions in women's intercollegiate soccer programs); *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999) (holding that plaintiffs' complaint identifying Big Bear Valley as the relevant market fails as a matter of law where plaintiffs did not allege that "Big Bear Valley is the area of effective competition in which buyers of these products can find alternative sources of supply").  Although Plaintiffs argue in their Opposition that "[t]here is no support for CAC's argument that customers wishing to purchase e-commerce software that facilitates auto loans could turn to foreign software suppliers," (Opp'n 9), such an argument overlooks that it is Plaintiffs' burden to allege that the geographic market is properly limited to the United States.  Moreover, Plaintiffs' citation to cases appearing to support the propriety of alleging the United States as a geographic market for e-commerce software products does not persuade, as a plaintiff cannot amend her pleading by importing facts from her opposition or other papers.  *See Tessenderlo Kerley, Inc. v. Or-Cal, Inc.*, No. C 11-04100-WHA, 2012 WL 1094324, at *4 (N.D. Cal. Mar. 29, 2012) ("[A] party cannot, however, supplement its pleadings by way of its motion papers."). Plaintiffs' Complaint fail to adequately allege that the geographic market for e-commerce software

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 15-07490 SJO (MRWx)</u>              DATE: <u>December 7, 2015</u>

that facilitates auto loans is limited to the United States, and the Court **GRANTS** Defendant's Motion on this basis.

    2.    <u>Market Power</u>

"A failure to allege power in the relevant market is a sufficient ground to dismiss an antitrust complaint." *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 972 (9th Cir. 2008). Market power can be proven with either direct or circumstantial evidence. *Rebel Oil*, 51 F.3d at 1434. "One type of proof is direct evidence of the injurious exercise of market power," which requires that a plaintiff "put[] forth evidence of restricted output and supracompetitive prices . . ." *Id.* Where, as here, a plaintiff seeks to prove market power through circumstantial evidence pertaining to the structure of the market, the plaintiff must "(1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *Id.* (citing *Ryko Mfg. Co. v. Eden Serv.*, 823 F.2d 1215, 1232 (8th Cir. 1987), *cert. denied*, 484 U.S. 1026 (1988)).

Plaintiffs have failed to allege sufficient facts to support an inference that CAC has market power in either of Plaintiffs' two purportedly relevant markets. First, although the Complaint alleges that "CAC maintains the predominant market share of and market power in the Relevant Market," it fails to allege any facts in support of this conclusory allegation. (Compl. ¶ 36.) Moreover, the allegation that "CAC attempted to, and did, monopolize a rapidly expanding market for e-commerce software that facilitates subprime auto loans," (Compl. ¶ 30), not only is an unsupported legal conclusion, but also cuts **against** an inference that CAC held monopoly power in the alleged market for such e-commerce software products, for "expansion by competitors would suggest that the defendant during the expansion lacked the market power to control marketwide output in the first place." *Rebel Oil*, 51 F.3d at 1442; *see also Maguca v. Aurora Loan Servs.*, No. SACV 09-1086-JVS, 2009 WL 3467750, at *2 (C.D. Cal. Oct. 28, 2009) (holding that "self-contradictory" allegations are an "admission sufficient to dismiss this cause of action"). Plaintiffs' suggestion in a footnote that CAC, rather than its competitors, was the "rapid expander" is belied by Plaintiffs' allegation that the **market** for e-commerce software products was rapidly expanding. (Opp'n 10 n.1.)

Given the availability of other sources of financing for automobile purchases—including banks, automotive companies, and financial companies—the allegations in the Complaint are insufficient to plausibly show that CAC held sufficient market power to state a claim for relief under Section 2 of the Sherman Act. *Iqbal*, 556 U.S. at 679 (the plausibility analysis is "context-specific" and "requires the reviewing court to draw on its judicial expertise and common sense"). Although Plaintiffs are correct that "allegations of exact market share are simply not required," (Opp'n 10), the law requires that a Complaint contain sufficient "factual specificity . . . 'to raise a right to relief above the speculative level.'" *Rick-Mik*, 532 F.3d at 973 (quoting *Twombly*, 127 S. Ct. at 1965). The Court accordingly **GRANTS** Defendant's Motion on this basis.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 15-07490 SJO (MRWx)</u>     DATE: <u>December 7, 2015</u>

### 3. Exclusionary Conduct

Two separate doctrines provide hurdles that a plaintiff must clear when challenging the enforcement of an issued patent on antitrust grounds. First, issued patents are presumed valid pursuant to 35 U.S.C. section 282(a), and "the law recognizes a presumption that the assertion of a duly granted patent is made in good faith." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998). Second, the filing of a lawsuit is generally protected by the First Amendment and immunized from antitrust liability under the *Noerr* doctrine. See *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); see also *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993) (hereinafter, "*PRE*"). Thus, enforcement of patents through litigation can constitute exclusionary conduct for Section 2 purposes only where (1) the patentee seeks to enforce a patent obtained through fraud on the USPTO (so-called "*Walker Process* fraud"); or (2) the antitrust plaintiff is able to demonstrate that the patent infringement suit comes within *PRE*'s narrow "sham" litigation exception to *Noerr* immunity. *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965). Here, Plaintiffs claim both *Walker Process* fraud and sham litigation as bases for holding CAC liable under Section 2.

### a. *Walker Process* Fraud

A claim of *Walker Process* fraud requires that a plaintiff allege facts sufficient to establish, with particularity, the following elements: (1) a false representation or deliberate omission of fact material to patentability; (2) made with the intent to deceive the patent examiner; (3) on which the examiner justifiably relied in granting the patent; and (4) but for which misrepresentation or deliberate omission the patent would not have been granted. *C.R. Bard*, 157 F.3d at 1364. Rule 9(b)'s "heightened pleading standard" for fraud requires "identification of the specific who, what, when, where, and how of the material representation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). Plaintiffs' *Walker Process* fraud claim is premised on the purported withholding of material information—the "Zoomlot" reference and CAPS® sales information—from the patent examiner during prosecution of the application leading to the '807 Patent. (*See generally* Compl. ¶¶ 19-27.)

### I. Zoomlot

With respect to the Zoomlot reference, Plaintiffs have failed to allege sufficient facts from which the Court can infer that CAC had knowledge of the Zoomlot reference during prosecution of the application leading to the '807 Patent. The Complaint alleges two bases under which CAC can be inferred to have known about Zoomlot: (1) a 1995 copyright infringement action against National Auto Credit ("NAC"); and (2) the fact that CAC and NAC were competitors. With respect to the first basis, the Complaint alleges that "[i]n 1995 CAC and [NAC] resolved [a copyright infringement suit] with NAC acknowledging that CAC has valid copyrights over its financing program materials." (Compl. ¶ 24.) The Complaint further alleges that "CAC's Competitor

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: **CV 15-07490 SJO (MRWx)**     DATE: **December 7, 2015**

National Auto Credit ["NAC"] acquired ZoomLot in 2000" and "published details regarding ZoomLot via the Internet as early as 2000." (Compl. ¶¶ 23-24.) The Complaint thus alleges that "[p]rior to and during the prosecution of the '807 Patent application, CAC was aware of Zoomlot due to the nature of the copyright infringement suit and furthermore, because the companies were competitors in the field of sub-prime automobile lending." (Compl. ¶ 46.)

What the Complaint fails to allege, however, is whether the Zoomlot reference was at issue in the 1995 copyright litigation or how or why CAC would have learned about the Zoomlot reference as a result of its dealings with NAC. It is implausible to infer that CAC learned of the Zoomlot reference as a result of the 1995 copyright infringement suit against NAC because NAC did not acquire Zoomlot until 2000. It would be equally unreasonable to infer that CAC had **actual** knowledge of the Zoomlot reference merely because Plaintiffs allege that CAC and NAC "were competitors." (Compl. ¶ 46.) Were this the rule, then every patent applicant would be subject to a *Walker Process* claim for failing to disclose each and every material prior art reference published by a competitor.

Furthermore, the Complaint contains no allegations regarding a "specific individual associated with the filing or prosecution of the application . . . who both knew of the material information and deliberately withheld or misrepresented it." *Exergen*, 575 F.3d at 1329. Although the Complaint alleges that Mr. Brock and CAC's counsel "withheld references to Zoomlot," (Compl. ¶¶ 25, 48), the Complaint neither alleges that either Mr. Brock or a specific lawyer at CAC knew of and deliberately chose not to disclose the Zoomlot reference, or contains factual allegations from which the Court can reasonably infer that Mr. Brock or a specific lawyer knew of the reference and deliberately chose not to disclose it to the USPTO.

The Complaint also fails to adequately allege whether CAC, Mr. Brock, or their lawyers had a specific intent to deceive the PTO. Plaintiffs merely allege that CAC "withheld references to Zoomlot or provided affirmative misstatements about Zoomlot with specific intent to deceive the USPTO," (Compl. ¶ 48), but such threadbare recitals of specific intent are insufficient to satisfy Rule 8 and Rule 9(b). *See BlackBerry Ltd. v. Typo Prods. LLC*, No. 14-cv-00023-WHO, 2014 WL 1867009, at *3 (N.D. Cal. May 8, 2014) ("Here, Typo has pleaded that '[t]he single most reasonable inference that can be drawn from the evidence is that Griffin, Holmes, Lazaridis, Little, Major and/or Kelly's failure to disclose the Spell Mate 30 and/or Smith Corona Spell Right 200 to the PTO was done with the specific intent to deceive the PTO.' But Typo has not pleaded any facts from which I can reasonably make this inference. All that Typo has alleged is that a material reference which was widely available was not disclosed to the PTO. That is not sufficient to plead inequitable conduct."). A patentee's failure to cite a reference to the USPTO is insufficient to support a *Walker Process* fraud claim, for intent cannot be inferred from the mere fact of nondisclosure, even if the reference purportedly withheld or misrepresented was material. *C.R. Bard*, 157 F.3d 1365 ("Deceptive intent is not inferred simply because information was in existence that was not presented to the examiner; and indeed, it is notable that in the usual course of patent

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  CV 15-07490 SJO (MRWx)           DATE:  December 7, 2015

prosecution many choices are made, recognizing the complexity of inventions, the virtually unlimited sources of information, and the burdens of patent examination.").

Finally, the Complaint fails to allege with particularity what misrepresentation or omission was made to the USPTO.  The Complaint alleges that "CAC, Mr. Brock and their counsel withheld references to Zoomlot or provided affirmative misstatements about Zoomlot with specific intent to deceive the USPTO," (Compl. ¶ 48), but an allegation of fraud cannot survive absent the identification of specific affirmative misstatement(s) and the communication or document that contains the purported misstatement(s).  *See, e.g.*, *Super Chefs, Inc. v. Second Bite Foods, Inc.*, No. CV 15-00525 SJO (FFMx), 2015 U.S. Dist. LEXIS 113468, at *9 (C.D. Cal. Aug. 25, 2015).  With respect to the single Zoomlot reference identified by Plaintiffs, the Complaint fails to identify "where in th[at] reference the material information is found – *i.e.*, the 'what' and 'where' of the material omissions."

Plaintiffs have failed to allege with particularity how or why patentee's "failure" to submit the Zoomlot reference to the PTO satisfies the requirements of Rule 9(b), and the Court accordingly **GRANTS** Defendant's Motion on this basis.

ii.     CAPS® "Sales" Information

Plaintiffs' second theory of *Walker Process* fraud rests upon allegations that "CAC, Mr. Brock and their counsel intentionally failed to disclose to the Patent Office material prior CAPS® sales of which they were aware."  (Compl. ¶ 43.)  The Complaint alleges that "[p]ublically available evidence reveals that CAPS® was offered for sale as early as August 2000," more than a year before the filing date of the application leading to the '807 Patent, and that the sales information would thus trigger the on-sale bar of 35 U.S.C. section 102.  (Compl. ¶ 19.)

A review of the documents purporting to show such sales, however, reveals that CAC "began testing [CAPS®] in August of 2000 and began a gradual rollout in December," but does not demonstrate that CAPS was **sold** by CAC more than one year prior to the filing date of the application leading to the '807 Patent.  (Compl., Ex. B at 4.)  Even if CAC had sold CAPS® prior to December 30, 2000—the critical date of the on-sale bar—the Complaint nevertheless fails to allege facts sufficient to support both (1) that the product was the subject of a "commercial offer for sale"; or (2) that the invention was "ready for patenting."  *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 65-66 (1998).  Indeed, Plaintiffs make no effort to connect the CAPS® system as it existed on or before December 30, 2000 to the elements of the '807 Patent's claims.

Moreover, the Complaint fails adequately allege that CAC, Mr. Brock, or anyone else had a specific intent to deceive the USPTO.  Here, Plaintiffs allege only that Mr. Brock "had an affirmative obligation to disclose" the sales and that CAC, Mr. Brock, and their counsel "intentionally failed to disclose" them.  (Compl. ¶¶ 20, 43.)  As with the Zoomlot allegations, such a conclusory allegation of specific intent does not satisfy the requirements of Rule 9(b).  *See*

*BlackBerry*, 2014 WL 1867009, at *3. Even if the Complaint had alleged materiality, deceptive intent cannot be inferred from the materiality of information alone, or from the fact of nondisclosure. *C.R. Bard*, 157 F.3d at 1365.

Plaintiffs have failed to allege with particularity how or why patentee's "failure" to submit CAPS® sales information to the PTO is material or demonstrates deceptive intent, and the Court accordingly **GRANTS** Defendant's Motion on this basis.

        b.    <u>Sham Litigation</u>

A litigation can be considered a "sham" litigation exempt from *Noerr* immunity if (1) the lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits;" and (2) the lawsuit "conceals an attempt to interfere directly with the business relationship of a competitor . . . through the use [of] the governmental **process**—as opposed to the **outcome** of that process—as an anticompetitive weapon." *PRE*, 508 U.S. at 60-61 (emphasis in original) (internal quotation marks and citations omitted).

To the extent Plaintiffs' sham litigation claim is premised on the alleged failure to disclose the Zoomlot reference and CAPS sales data to the USPTO, the allegations taken as true fail to demonstrate that the underlying patent litigation was objectively baseless. A sham litigation claim premised on alleged inequitable conduct before the USPTO requires a showing of "specific intent to deceive the PTO," which is the same showing required under *Walker Process*. *Therasense*, 649 F.3d at 1290 ("In other words, the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it."). For the same reasons discussed above, the Complaint fails to adequately allege how or why the purported omission or misrepresentation of the Zoomlot reference and CAPS sales data during prosecution of the application leading to the '807 Patent can lead to the inference that either the objective or subjective prong of the sham litigation test has been met. The Court accordingly **GRANTS** Defendant's Motion on this basis.

        C.    <u>UCL Claims</u>

The parties do not dispute that Plaintiffs' claims that Defendant violated the "unlawful" and "unfair" prongs of the UCL rise and fall with their Section 2 claims. (*See* Mot. 18-19; Opp'n 17.) The Court agrees, and for the same reasons discussed above, **GRANTS** Defendant's Motion as to these prongs. *See Vargas v. JP Morgan Chase Bank, N.A.*, 30 F. Supp. 3d 945, 952-53 (C.D. Cal. 2014) ("If unable to state a claim for the underlying offense, the plaintiff similarly cannot state a claim under UCL for unlawful practices."); *Cal-Tech Comm'cns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999) ("When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 15-07490 SJO (MRWx)</u>　　DATE: <u>December 7, 2015</u>

otherwise significantly threatens or harms competition."). With respect to the "fraudulent" prong, Plaintiffs must allege with particularity that CAC engaged in a fraudulent business practice and "that members of the public are likely to be deceived" as a result of this practice. *Rubenstein v. Neiman Marcus Grp. LLC*, No. CV 14-07155 SJO, 2015 WL 1841254, at *4 (C.D. Cal. Mar. 2, 2015). As discussed above, Plaintiffs' conclusory allegations of misrepresentations and omissions lack the necessary "who, what, when, where, and how, of the misconduct charged," and do not set forth "what is false or misleading about a statement [or omission], and why it is false." *Id.* The Court accordingly **GRANTS** Defendant's Motion as to this prong.

　　D.　　<u>Leave to Amend</u>

The parties devote much of their argument to whether leave to amend should be granted should the Court dismiss the Complaint. Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be "freely give[n] when justice so requires," but further amendment may be denied if the "court determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Fed. R. Civ. P. 15(a)(2); *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

Defendant argues leave to amend should not be granted because "the Complaint represents Plaintiffs' second attempt to state antitrust claims against Credit Acceptance," and that "[d]espite being on notice of the pleading deficiencies plaguing their proposed allegations, Plaintiffs' Complaint still fails to state a claim upon which relief can be granted." (Mot. 20.) Plaintiffs respond that in almost every case cited by Defendant leave to amend was granted, and moreover that this Court "did not rule or even comment on the merits of the proposed antitrust counterclaims." (Opp'n 20.)

The Court agrees with Plaintiffs, and finds that the interests of justice require granting leave to amend in this instance. In denying Westlake and Nowcom's motion for leave to file a second amended answer and counterclaims in the Westlake action, the Court did not rule on the sufficiency of the proposed antitrust counterclaims, but instead denied leave for lack of subject-matter jurisdiction. (*See* Order Granting Pl.'s Mot. to Voluntarily Dismiss with Prejudice and Denying Defs.' Mot. for Leave to File Second Am. Answer and Countercls., No. 13-cv-01523, ECF No. 109.) As the Complaint represents the first pleading in this action, Plaintiffs have not evidenced an inability to cure the deficiencies noted above. Moreover, the Court does not find that amendment would be futile, as all of the deficiencies could, at least in theory, be cured by amending the Complaint to include additional factual allegations to satisfy Rule 8 and Rule 9(b), where required. The Court notes, however, that a number of claims rest on threadbare recitals of legal elements and are not supported by any factual allegations. The Court cautions Plaintiffs that should they choose to amend their Complaint and should the First Amended Complaint be similarly devoid of factual allegations sufficient to support their causes of action, sanctions may issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  <u>CV 15-07490 SJO (MRWx)</u>          DATE:  <u>December 7, 2015</u>

III.    <u>RULING</u>

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss.  The Complaint is accordingly **DISMISSED WITHOUT PREJUDICE**.  Plaintiffs may file a First Amended Complaint within fourteen (14) days of the issuance of this Order.  Defendant will have ten (10) days thereafter to respond.

IT IS SO ORDERED.