1  Ekwan E. Rhow - State Bar No. 174604
    erhow@birdmarella.com
2  Timothy B. Yoo - State Bar No. 254332
    tyoo@birdmarella.com
3  Julian C. Burns - State Bar No. 298617
    jburns@birdmarella.com
4  Ray S. Seilie - State Bar No. 277747
    rseilie@birdmarella.com
5  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
  DROOKS, LINCENBERG & RHOW, P.C.
6  1875 Century Park East, 23rd Floor
  Los Angeles, California 90067-2561
7  Telephone: (310) 201-2100
  Facsimile: (310) 201-2110
8
  Attorneys for Plaintiff
9  WESTLAKE SERVICES, LLC d/b/a
  WESTLAKE FINANCIAL SERVICES
10

11              **UNITED STATES DISTRICT COURT**

12        **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

13  WESTLAKE SERVICES, LLC d/b/a      Case No. 2:15-cv-07490 SJO (MRWx)
  WESTLAKE FINANCIAL SERVICES,
14                               **SUPPLEMENTAL MEMORANDUM**
                                  **PURSUANT TO LOCAL RULE 37-2.3**
15            Plaintiffs,            **IN SUPPORT OF WESTLAKE'S**
                                  **MOTION TO COMPEL**
16          vs.                    **PRODUCTION OF DOCUMENTS**
  CREDIT ACCEPTANCE              **AND THINGS**
17  CORPORATION,
18            Defendant.           Assigned to Hon. Michael R. Wilner
19                               Discovery Cutoff: March 31, 2017
                              Pretrial Conference: August 28, 2017
20                               Trial: September 11, 2017
21
22
23
24
25
26
27
28

3377611.1

1        CAC commercially exploited and publicly used its claimed invention, CAPS, more

2  than a year before it even thought to apply for a patent on it.  By that time, in late

3  November 2001, nearly three-quarters of all its deals were being originated through CAPS,

4  and it therefore had an irresistible incentive to get patent protection on it so that it could

5  exclude others from practicing the embodied methods.  But since public use and prior sales

6  of an invention more than a year before filing a patent application on it is a bar to

7  patentability, CAC knew it had a big problem.  What happened next—i.e., that CAC

8  purposely withheld that material information from the Patent Office to obtain the '807

9  Patent—can be reasonably inferred from the record.  The following facts are unrefuted:

10       • In or around December 4, 2001, CAC's executives, including Keith

11          McCluskey, conferred with CAC's in-house counsel and others about the

12          "less than one-year requirement for patent protection."  (Dkt. 102-2, Exh. L.)

13       • CAC applied for a patent on CAPS on December 31, 2001.

14       • At the time it applied for the '807 Patent, CAC knew that  prior sales and

15          public use of an invention more than a year before applying for a patent on it

16          could prevent it from getting a patent.  (Dkt. 102 at 22.)

17       • CAC had a duty to disclose information material to patentability to the Patent

18          Office.  37 C.F.R. § 1.56.

19       • Neither Credit Acceptance nor its agents disclosed its pre-December 31,

20          2000 activities relating to CAPS to the Patent Office.  (Dkt. 102 at 22; Yoo

21          Decl., Exh. A ["Zura Tr."] at 23:4-23; 31:20 – 34:20.)

22        CAC's outside lawyer that prosecuted the '807 Patent Application from October

23  2004 until it issued in September 2005 testified at deposition that: (i) he was not familiar

24  with CAPS (*id.* at 31:20-22); (ii) information implicating the patentability of a claimed

25  invention, whether material or not, should be disclosed to the Patent Office (*id.* at 38:1 –

26  40:9); and (iii) the sale or public use of an invention more than one year before the

27  application date for a patent would be material to the patentability of that invention (*id.* at

28  40:11 – 41:5).  Based on the foregoing, there are only three plausible scenarios for CAC's

1  allegedly privileged communications around the prosecution of the '807 Patent, in

2  decreasing likelihood:

3          (1)     CAC never told its patent-prosecution counsel about its pre-December 31,

4  2000 activities relating to CAPS;[1]

5          (2)     CAC told its patent-prosecution counsel about its pre-December 31, 2000

6  activities relating to CAPS, was advised that it should disclose that information to the

7  Patent Office, but nevertheless instructed its counsel to withhold the information; or

8          (3)     CAC told its patent-prosecution counsel about its pre-December 31, 2000

9  activities relating to CAPS and was advised that it did not have to disclose that information

10  to the Patent Office.

11          The first two scenarios amount to fraud sufficient to pierce the privilege under the

12  crime-fraud exception, since CAC knew it had a duty to disclose all information material

13  to patentability to the Patent Office and submitted two declarations attesting it would do

14  that.  The third scenario, which is a possible defense to Westlake's allegations if true, is

15  unlikely, as CAC has staunchly refused to say whether it intends to rely on an advice-of-

16  counsel defense in this action.  CAC now belatedly contends that it prosecuted the '807

17  Patent in good faith, which impliedly waives its privilege assertions, and provides this

18  Court with a separate basis for compelling production.

19          Accordingly, Westlake requests *in camera* review of entries 9-25 in CAC's

20  privilege log to determine if the crime-fraud exception to the attorney-client privilege

21  applies.  If the Court finds that the exception does apply, Westlake further requests an

22  order requiring CAC to produce all documents falling within the exception, and allowing

23  Westlake to conduct related follow-on discovery.  Alternatively, Westlake requests that the

24  Court find that CAC has waived its assertions of privilege assertions and thereupon order

25  immediate production of documents relating to the prosecution of the '807 Patent.

26

27  [1]   At his deposition, CAC's 30(b)(6) witness would not confirm that CAC had ever
28  disclosed that information to its patent-prosecution counsel.  (Dkt. 102 at 22.)

## LEGAL STANDARD

To show that the crime-fraud exception applies, Westlake must make a *prima facie* showing through independent and clear evidence[2] of deceptive intent together with a clear showing of reliance. *See Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1358-59 (Fed. Cir. 2011). But a "party seeking to overcome the attorney-client privilege need not conclusively prove fraud, or necessarily submit direct evidence in order to make the required *prima facie* showing." *Spalding Sports*, 203 F.3d at 808. And since there is "virtually no way in which the exception can be proved, save by compelling disclosure of the contents of the communication," the Supreme Court has authorized district courts to first conduct *in camera* inspections of challenged documents to determine if the crime-fraud exception applies. *United States v. Zolin*, 491 U.S. 554, 566 (1989).

The threshold showing required to trigger *in-camera* review is a "showing of a factual basis adequate to support a good faith belief by a reasonable person . . . that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id.* at 572 (internal citations and quotations omitted). Importantly, (i) "a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege," (ii) a small "volume of materials" weighs in favor of *in camera* review, and (iii) courts should consider in their analyses "the relative importance to the case of the alleged privileged information." *Id.*

## ARGUMENT

**A.      The evidence is sufficient to warrant *in camera* review.**

Whether it thought the information was disqualifying or not, CAC should have

---

[2]   "Such independent and clear evidence must establish a *prima facie* case of fraud, which is 'generally held not to exist' unless the accusing party can show: '(1) a representation of material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequence that it is held to the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation.'" *Unigene*, 655 F.3d at 1359 (quoting *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000)).

1  disclosed its pre-December 31, 2000 CAPS-related activities to the Patent Office, as those

2  activities undoubtedly implicated the patentability of CAPS, and were therefore material.

3  For instance, an invention is not eligible for patent protection if it was (1) in public use

4  while (2) ready for patenting more than one year prior to the date of the patent application.

5  35 U.S.C. § 102(b); *see Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998).  The test for

6  "public use" is whether the purported use (i) was accessible to the public or (ii) was a

7  commercial exploitation of the invention.  *See Invitrogen Corp. v. Biocrest Manufacturing*

8  *L.P.*, 424 F.3d 1374, 1376 (Fed. Cir. 2005).  An invention is "ready for patenting" when it

9  has been reduced to practice or if there are enabling disclosures.  Even a prototype, if it is

10  reduced to practice and works for its intended purpose, can be considered "ready for

11  patenting" for purposes of a 102(b) statutory bar.  *See, e.g.*, *Atlanta Attachment v. Leggett*

12  *& Platt*, 516 F.3d 1361 (Fed. Cir. 2008).  As explained in Westlake's motion to compel,

13  CAPS was both ready for patenting and commercially exploited by CAC as of August

14  2000 and well before the critical date.  (Dkt. 102 at 21.)  Westlake has likewise adduced a

15  trove of evidence reflecting CAC's intent to deceive the Patent Office.  (*Id.* at 20-22.)

16        Moreover, the Patent Office relied on CAC's material omissions: (1) the file history

17  of the '807 Patent reflects that no information pertaining to an on-sale/public-use bar was

18  ever presented to the Patent Office (Zura Tr. at 34:6 – 35:11); (2) the Patent Examiner did

19  not ever cite prior sales or public uses of the invention in its list of references considered

20  (*id.* at 21:11 – 23:3); and (3) the '807 Patent issued, even though CAC's pre-December 31,

21  2000 activities relating to CAPS would have otherwise prevented a patent from issuing on

22  CAPS.  That CAC had an internal discussion concerning the "less than one-year

23  requirement for patent protection" in December 2001 and yet did not disclose its

24  disqualifying prior use of CAPS impels the conclusion that something untoward happened

25  during the prosecution of the '807 Patent, and especially during and relating to allegedly

26  privileged communications with counsel.  Hence, Westlake has a reasonable good faith

27  belief, based on its adduced evidence, that a review of the communications around the

28  prosecution of the patent will reveal the fraudulent nature of CAC's conduct.

3377611.1

4

**B.**      **CAC has nevertheless impliedly waived its claims of attorney-client privilege.**

This Court has a separate basis to require CAC to immediately produce its allegedly privileged documents: on March 9, 2017, CAC served supplemental responses to Westlake's Interrogatory No. 5 that impliedly waive the attorney-client privilege over documents relating to the prosecution of the '807 Patent.  In its Responses, CAC asserted as an affirmative defense that it prosecuted the '807 Patent in good faith.  (Yoo Decl. ¶ 5.)

CAC is therefore not merely denying that its conduct was undertaken in bad faith, but is instead affirmatively contending that it acted in good faith in seeking a patent and prosecuting the '807 Patent.  CAC also does not (and cannot) dispute that it received legal advice concerning its application for the '807 Patent.  CAC has therefore waived the privilege as to documents and information relating to its subjective state of mind.  *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992) ("Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived.").  In nearly identical circumstances, courts have found that defendants waive privilege by asserting good faith as a defense.  Those purporting to obtain a patent in good faith cannot simultaneously deny their counterparty the right to discovery into their subjective state of mind.  *See, e.g., Pall Corp. v. Cuno Inc.*, 268 F.R.D. 167, 169 (E.D.N.Y. 2010) (finding waiver where, in response to allegations of inequitable conduct, plaintiff asserted good faith defense); *Echometer Co. v. Lufkin Indus., Inc.*, No. 7:00-CV-0101-R, 2002 WL 87323, at *2 (N.D. Tex. Jan. 16, 2002) (same).  Where a party "uses an assertion of fact to influence the decisionmaker"—e.g., an allegation of good faith—"while denying its adversary access to privileged material potentially capable of rebutting the assertion, notions of fairness are implicated that impliedly waive" privilege.[3]  *See Pall Corp.*, 268 F.R.D. at 169 (citations omitted).

---

[3]   That CAC does not explicitly plead an affirmative defense based on advice of counsel is irrelevant.  *See Olvera v. County of Sacramento*, No. CIV. 10-550 WBS CKD, 2012 WL 273158 (E.D. Cal. Jan. 30, 2012); *In re G-I Holdings Inc.*, 218 F.R.D. 428, 432-33 (D.N.J. 2003).

1   DATED:  March 15, 2017      Respectfully Submitted,

2

               Bird, Marella, Boxer, Wolpert, Nessim,
3               Drooks, Lincenberg & Rhow, P.C.

4

5               By:      */s/ Timothy B. Yoo*

6                      Timothy B. Yoo
              Attorneys for Plaintiff WESTLAKE
7               SERVICES, LLC d/b/a WESTLAKE
              FINANCIAL SERVICES
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3377611.1                             6