1  Ekwan E. Rhow - State Bar No. 174604
      erhow@birdmarella.com
2  Timothy B. Yoo - State Bar No. 254332
      tyoo@birdmarella.com
3  Julian C. Burns - State Bar No. 298617
      jburns@birdmarella.com
4  Ray S. Seilie - State Bar No. 277747
      rseilie@birdmarella.com
5  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
   DROOKS, LINCENBERG & RHOW, P.C.
6  1875 Century Park East, 23rd Floor
   Los Angeles, California 90067-2561
7  Telephone: (310) 201-2100
   Facsimile: (310) 201-2110

8
   Attorneys for Plaintiff
9  WESTLAKE SERVICES, LLC d/b/a
   WESTLAKE FINANCIAL SERVICES

10

11              UNITED STATES DISTRICT COURT

12          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13

| 14 | WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES, | Case No. 2:15-cv-07490 SJO (MRWx) |
|---|---|---|
| 15 |  | **PLAINTIFF WESTLAKE SERVICES, LLC'S NOTICE OF MOTION AND MOTION FOR REVIEW OF MAGISTRATE ORDER REGARDING DISCOVERY MOTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 72(a) AND LOCAL RULE 72-2.1** |
| 16 | Plaintiffs, |  |
| 17 | vs. |  |
| 18 | CREDIT ACCEPTANCE CORPORATION, |  |
| 19 | Defendant. |  |
| 20 |  | Date:   May 15, 2017<br>Time:   10:00 a.m.<br>Crtrm.: 10C |
| 21 |  |  |
| 22 |  | Honorable S. James Otero |
| 23 |  | Complaint Filed: September 24, 2015 |

24

25       **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER**

26                                    **SEAL**

27

28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 10:00 a.m. on May 15, 2017, or as soon thereafter as Plaintiff Westlake Services, LLC ("Westlake") may be heard before the Honorable S. James Otero in Courtroom 10C of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72-2.1, Westlake will and hereby does object to and move for review of the Magistrate Order Regarding Discovery Motions issued March 29, 2017 that denied Westlake's motion to compel the production of documents from additional custodians.

Westlake's motion is supported by this Notice of Motion; the accompanying Memorandum of Points and Authorities; the concurrently-filed Declaration of Ray S. Seilie ("Seilie Decl."); the exhibits attached thereto; and such other evidence and arguments as may be presented at or before the hearing on this motion, and all other matters of which the Court may take judicial notice or which it deems appropriate to consider.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 3, 2017.

DATED: April 10, 2017

Ekwan E. Rhow
Timothy B. Yoo
Julian C. Burns
Ray S. Seilie
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: _____*/s/ Ray S. Seilie*_____
Ray S. Seilie
Attorneys for Plaintiff WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ................................................ 3

    A. Westlake alleges that CAC acted to defraud the USPTO in the FAC ............. 3

    B. Westlake diligently pursues discovery but initially agrees to reasonable scope limitations under the assumption that CAC was acting in good faith. .......................................................................................... 4

    C. Brock testifies that he was not involved in the conception of the '807 Patent and did not know who was. ................................................................. 4

    D. CAC refuses to produce any documents related to new facts discovered in January, and Westlake moves to compel. ................................ 6

    E. The Magistrate Order denies Westlake's motion to compel on the sole ground of relevance. .............................................................................. 6

III. ARGUMENT ........................................................................................................ 7

    A. Standard of Review ......................................................................................... 7

    B. The Magistrate Order's denial of Westlake's motion to compel documents from Simmet, Knoblauch, McCluskey, and Roberts was an abuse of discretion. ............................................................................................ 8

    C. In any event, the Court should grant Westlake's concurrently-filed motion for leave to file a Second Amended Complaint and grant Westlake's motion to compel on that basis. .................................................. 11

IV. CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of L.A., Harbor Div. v. Santa Monica Baykeeper*,
   254 F.3d 882 (9th Cir. 2001) ............................................................................... 11

*Cole v. U.S. Dist. Court for the Dist. of Idaho*,
   366 F.3d 813 (9th Cir. 2004) ............................................................................... 11

*Davis v. Chase Bank U.S.A., N.A.*,
   No. CV 06-04804, 2010 WL 1531410 (C.D. Cal. Apr. 14, 2010) ..................... 7

*Geophysical Sys. Corp. v. Raytheon Co., Inc.*,
   117 F.R.D. 646 (C.D. Cal. 1987) ..................................................................... 7, 8

*Hill v. SmithKline Beecham Corp.*,
   393 F.3d 1111 (10th Cir. 2004) ............................................................................ 7

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
   No. CV 14-3466, 2015 WL 12752881 (C.D. Cal. Aug. 27, 2015) ..................... 8

*United States v. Benenhaley*,
   240 F. App'x 581 (4th Cir. 2007) ........................................................................ 7

*United States v. Thompson*,
   221 F. App'x 622 (9th Cir. 2007) ...................................................................... 10

*United States v. Urie*,
   379 F. App'x 586 (9th Cir. 2010) ...................................................................... 10

**Other Authorities**

Federal Rule of Evidence 401 ................................................................................... 8

Federal Rule of Civil Procedure 26(b)(1) ................................................................. 8

Federal Rule of Civil Procedure 26(a)(1) ................................................................. 8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

As this Court has stated in its earlier rulings, this litigation involves, among other things, plausible allegations by Plaintiff Westlake Financial Services ("Westlake") that during defendant Credit Acceptance Corporation's ("CAC") prosecution of U.S. Patent No. 6,950,807 (the "'807 Patent"), CAC "made deliberate omissions of fact material to patentability to the examiner," and then "initiated and obtained an objectively baseless lawsuit because it knew the '807 Patent was fraudulently procured." (Dkt. No. 43 at 14). The discovery at issue in this motion and the underlying motion to compel relates to Westlake's efforts to obtain documents and information related to these allegations.

At the outset of discovery, Westlake limited the scope of its requests to what it believed was proportional to the needs of the case. These voluntary and tentative agreements to limit the scope of discovery included a preliminary agreement to require the production of documents form a limited subset of the custodians named in CAC's initial disclosures and interrogatory responses. ████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████

Immediately following Brock's deposition, Westlake asked CAC to produce

documents retrieved from four additional custodians based on six additional search parameters.  Not only was this request was made over *two months* before the scheduled close of fact discovery, it was promptly made a week after the mid-January deposition, which CAC had refused to schedule earlier without explanation even though Westlake had served a notice on November 1, 2016.  CAC then attempted to take advantage of its own dilatory conduct and refused to produce additional documents, asserting that Westlake's request was "eleventh-hour" and "untimely."  CAC did not dispute that the bulk of Westlake's supplemental request sought relevant material—it maintained relevance objections to only one of six Westlake's six requests.

After several meet and confer attempts proved unsuccessful, Westlake moved to compel production of documents.  Except in connection to one of Westlake's six supplemental requests, CAC did not argue in its opposition that Westlake's requests were irrelevant.  To the contrary, CAC appeared to rest primarily on an argument that Westlake *should have made the requests earlier*—a position hardly consistent with any assertion that the custodians and additional searches sought irrelevant information.  Nonetheless, on March 29, Magistrate Judge Wilner denied Westlake's motion to compel on the grounds that "the discovery that Westlake seeks from CAC officials . . . is not relevant to its claim as pled in the First Amended Complaint."  (Dkt. No. 134 at 1).

Westlake respectfully requests that the Court review and reverse that ruling.  The evidence Westlake seeks plainly falls within the "very broad" category of discoverable relevant evidence. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

[redacted]

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3 ▮▮▮▮▮ Finally, Westlake is entitled to supplemental productions from Brett Roberts because, although Westlake was generally aware of his position as CAC's president, it was not apprised of his direct role in developing CAPS until the evening before Brock's deposition, when CAC served a supplemental interrogatory response containing that fact. At bottom, documents relating to the development of CAPS are plainly relevant to the claims already alleged in the FAC.

In the alternative, if the Court agrees with the Magistrate's determination that Westlake can only obtain this discovery if it amends its complaint to specifically allege an inventorship fraud, the Court should grant Westlake's concurrently-filed motion for leave to amend and reverse the Magistrate Order *sua sponte*. In either case, Westlake respectfully requests that this Court compel CAC to produce documents from the custodial files of Simmet, Knoblauch, McCluskey, and Roberts.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Westlake alleges that CAC acted to defraud the USPTO in the FAC.

At no point has CAC meaningfully challenged the relevance of the documents requested in Westlake's motion to compel. Nor could it realistically do so. In the FAC, Westlake alleged that CAC, with Brock's cooperation, perpetrated a fraud on the United States Patent and Trademark Office ("USPTO") by concealing prior sales and public uses during the prosecution of the '807 Patent. Westlake's assumption at the time was that this fraud was chiefly perpetrated by Brock—the sole named inventor of the patent and therefore, purportedly, the sole person responsible for its conception—at the instruction of CAC. *See* FAC ¶ 62 (alleging that "CAC and Mr. Brock hatched a scheme to defraud the [USPTO] in order to obtain a patent on CAPS notwithstanding [prior] sales by concealing them"). The FAC further alleged that the responsibility for submitting this information lay on Brock's shoulders, since he was the one who affirmed "his continuing duty to disclose to the USPTO and its Examiners any information that was material to the patentability of

his claims." FAC ¶ 67. The FAC makes clear that, as of the time it was filed, Westlake's operating theory was that Brock, as the named inventor, was chiefly responsible for making disclosures to the USPTO and would likely be the primary source of discovery for Westlake's allegations concerning CAC's fraud on the USPTO. It has been true since the beginning of this case that CAC's conduct before the USPTO in the prosecution of the '807 Patent was highly relevant to Westlake's claims.

**B.   Westlake diligently pursues discovery but initially agrees to reasonable scope limitations under the assumption that CAC was acting in good faith.**

Westlake's assumption that Brock should be the primary witness and document custodian relating to the development of CAPS and the prosecution of the '807 Patent also relied on CAC's sworn statements. In response to Westlake's Interrogatory No. 3, which asked CAC to identify "all persons who participated in the prosecution of the '807 Patent," CAC listed only three witnesses: Brock, in-house counsel Charles Pearce, and outside counsel Jeffrey Canfield. (Dkt. 121 Ex. G). In response to another Interrogatory No. 14, which requested the names of "each person who was involved in the development of CAPS," CAC initially listed Brock and fifteen other employees and did *not* include Simmet, Knoblauch, McCluskey, or Roberts. CAC added Simmet to this response after meet-and-confer discussions, and added Roberts and Knoblauch on January 17, *the night before Brock's deposition*. (Dkt. 121 Exs. G, H). In short, before Brock's deposition, Westlake had no reason to believe that Simmet, Knoblauch, McCluskey, or Roberts would be a better source of documents and testimony concerning the development of CAPS and the prosecution of the '807 Patent than Brock himself.

**C.** 

1 ▋

2 ▋ (Dkt. 121 Ex. N [Brock Depo. Tr.] at 62:10-22). ▋

3 ▋

4 ▋ (*Id.* at 136:3-18).

5 ▋

6 ▋

7 ▋

8 ▋

9 ▋

10 ▋

11 ▋

12 ▋

13 ▋ And as

14 CAC's own privilege log—which it did not produce until January 6, 2017—reveals, the

15 earliest discussion with counsel on December 4, 2001 involved a discussion among Pearce,

16 McCluskey, Knoblauch, and Mike Horvath of "the less than one-year old requirement for

17 patent protection"; this discussion *did not involve Brock*. (Dkt. No. 102-1 Ex. L at 108).

18 In short, a combination of CAC's document productions, privilege log, supplemental

19 interrogatory responses, and Brock's 30(b)(6) deposition testimony gave Westlake ample

20 reason to seek documents from Simmet, Knoblauch, McCluskey, and Roberts. And while

21 CAC is correct that these individuals' *names* had not been unknown to Westlake, their

22 extensive role in the development of CAPS and the prosecution of the '807 Patent had

23 been concealed (likely by design) until January 2017.

---

[1] ▋ (Dkt No. 121 Ex. S at 101; Seilie Decl. Ex. A).

### D.   CAC refuses to produce any documents related to new facts discovered in January, and Westlake moves to compel.

Faced with the mid-discovery revelation that its high-level executives were intimately involved in events critically relevant to the claims in the FAC, CAC doubled down on its dilatory strategy and refused to supplement its productions to include documents from the four additional custodians Westlake requested. Without seriously challenging the relevance of these custodians, CAC instead retreated to a spurious claim that Westlake's request—made over two months before the close of fact discovery and a mere week after it had learned about the central role of those custodians—was somehow an "untimely" and "eleventh-hour" request.

After being unable to reach agreement regarding the production of additional documents, Westlake moved to compel. (*See* Dkt. No. 120). In its opposition, CAC largely did not contest the relevance of the requested custodians. Instead, (seemingly conceding those custodians' relevance), CAC argued that Westlake should have requested documents from those custodians earlier. CAC only argued that one subset of requested documents—those relating to a Request for Production regarding the "decision to name Jeffrey M. Brock as the inventor of the system/method embodied in the '807 Patent"—was irrelevant. (*See* Dkt. No. 120 at 42-44).

### E.   The Magistrate Order denies Westlake's motion to compel on the sole ground of relevance.

Understandably, the Magistrate Order did not acknowledge CAC's spurious arguments that Westlake's request for discovery from Simmet, Knoblauch, McCluskey, and Roberts—first raised *one week after* Westlake first learned about their role in the development of CAPS and prosecution of the patent—was somehow untimely. Instead, on March 29, 2017, the Magistrate Order denied Westlake's motion to compel in two sentences, concluding that "the discovery that Westlake seeks from CAC officials on the issue of identifying the 'inventor' is not relevant to its claim as pled in the First Amended Complaint." (Dkt. No. 134 at 1). During the hearing on Westlake's motion, the Magistrate indicated that if the Westlake amended its complaint to specifically allege

inventorship fraud, its ruling on the same motion would likely be different.

The parties met and conferred on April 3, 2017.  CAC stood on its continuing refusal to produce any additional documents in the custody of Knoblauch, Simmet, McCluskey, or Roberts.

## III.   ARGUMENT

### A.   Standard of Review

The Magistrate Order contained several rulings, and Westlake only objects to one: the denial of its motion to compel on the grounds that "the discovery that Westlake seeks . . . is not relevant to its claim as pled in the First Amended Complaint."  (Dkt. No. 134 at 1).  When a magistrate order "concern[s] issues of relevancy that are traditionally left to the discretion of the trial court . . . the Court must review the magistrate's order with an eye toward the broad standard of relevance in the discovery context."  *Geophysical Sys. Corp. v. Raytheon Co., Inc.*, 117 F.R.D. 646, 647 (C.D. Cal. 1987).  As a result, "the standard of review . . . is not the explicit statutory standard [of clear error], but the clearly implicit standard of abuse of discretion."  *Id.*; *see also Davis v. Chase Bank U.S.A., N.A.*, No. CV 06-04804, 2010 WL 1531410, at *4 (C.D. Cal. Apr. 14, 2010).

Although CAC raised a number of other arguments in support of its opposition to Westlake's motion to compel, the Magistrate Order did not address any of them.  CAC's arguments other than relevance were therefore implicitly denied, and need not be reconsidered at this stage.  *See, e.g.*, *United States v. Benenhaley*, 240 F. App'x 581, 582 n.* (4th Cir. 2007) ("By omitting [a] claim from its opinion, the district court implicitly rejected it."); *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1116 (10th Cir. 2004) ("[T]he district court's failure to address [a party's] arguments may properly be construed as an implicit denial of those arguments.").[2]

---

[2]   The Magistrate's statement at the hearing that Westlake would likely be able to obtain its requested discovery but for the omission of specific allegations concerning inventorship fraud in the operative complaint further confirms that CAC's scheduling-related arguments were implicitly denied.

**B.     The Magistrate Order's denial of Westlake's motion to compel documents from Simmet, Knoblauch, McCluskey, and Roberts was an abuse of discretion.**

Federal Rule of Civil Procedure 26(b)(1) (on which the Magistrate Judge Order based its ruling) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The definition of relevance is broad: "Evidence is relevant if: (a) it has *any tendency* to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). In the discovery context, "[t]he test of relevance is a very broad one." *Geophysical Sys. Corp.*, 117 F.R.D. at 647; *see also UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, No. CV 14-3466, 2015 WL 12752881, at *6 (C.D. Cal. Aug. 27, 2015) ("If the requested documents bear on, or could lead to evidence that bears on, any element of the defenses or counterclaims, then under Rule 26(a)(1) they are relevant."). Westlake's request for further discovery from Simmet, Knoblauch, McCluskey, and Roberts plainly fell within the broad category of documents relevant to the claims in the FAC.

Although it is true that the FAC did not specifically allege that CAC's designation of Brock as the sole inventor of the '807 Patent was fraudulent,[3] that should not have led the Magistrate to deny Westlake's motion to compel. Even setting aside the issue of inventorship, the requested discovery was plainly relevant to a number of other allegations in the FAC. Indeed, except in connection to Westlake's Request for Production No. 39, which concerns the decision to name Brock as inventor, CAC *has never argued that the additional custodians are irrelevant to this case*. To the contrary, much of CAC's briefing in the underlying motion to compel was devoted not to the fact that Westlake is seeking irrelevant information, but that *Westlake should have requested it earlier*, implicitly admitting that the custodians were not only relevant, but were so intrinsically connected to

---

[3]     Westlake's concurrently filed motion for leave to file a Second Amended Complaint seeks to remedy any issue regarding the completeness of the allegations in the complaint.

1  this case that Westlake should have requested their documents before CAC's 30(b)(6)
2  witness fully disclosed the centrality of their conduct to the issues already in this case.
3  (*See, e.g.*, Dkt. No. 120 at 23-42 (opposing motion to compel supplemental production on
4  grounds of delay, not irrelevance)).

5       In any event, each of the requested additional custodians is plainly relevant to
6  allegations already contained within the FAC, and Westlake's motion to compel should not
7  have been denied on relevance grounds.

8  ███████████████████████████████████████████████
9  ███████████████████████████████████████████████
10 ███████████████████████████████████████████████
11 ███████████████████████████████████████████████
12 ███████████████████████████████████████████████
13 ███████████████████████████████████████████████
14 ██████████████████████████████ The circumstances surrounding the
15 conception of CAPS are plainly relevant to the allegations in the FAC concerning CAPS's
16 development.

17      *Second*, documents concerning McCluskey are plainly relevant to the FAC's
18 allegation that "[t]he '807 Patent was the result of fraudulent conduct by individuals who
19 owed a duty of candor to the USPTO," FAC ¶ 102; and that "CAC initiated, prosecuted,
20 and maintained an objectively meritless patent infringement action against WESTLAKE in
21 bad faith with the knowledge that its '807 Patent was invalid and/or unenforceable," FAC
22 ¶ 103. ████████████████████████████████████
23 ███████████████████████████████████████████████
24 ████████████████████████ CAC's privilege log also shows that McCluskey's
25 initial discussions with CAC's counsel concerning the patentability of CAPS did not take
26 place until December 4, 2001, well over a year after CAC told its employees that it had
27 successfully "launched" CAPS after "exhaustive testing."
28      *Third*, documents from Roberts are likely to be relevant to all of the claims in the

FAC concerning the development and use of CAPS, including the allegations that "CAC made commercial, non-experimental-use offers for sale and sales of caps *more* than one year prior to the filing of the Application, which was directed at acquiring patent protection for the core components of CAPS," FAC ¶ 48; and that "more than one year prior to the filing date of the '807 Patent Application, CAPS fully disclosed the elements of at least independent Claim 1," FAC ¶ 61. Although Westlake was aware that Roberts was a co-president of CAC, it had no reason to recognize Roberts' role in the *development* of the '807 Patent until January 17 (the day before Brock's deposition), when CAC served an amended response to Interrogatory No. 14 stating for the first time that Roberts was the "project sponsor" for CAPS and was "involved with the testing of CAPS." (Dkt. No. 102-3 Ex. 8 at 98). CAC's belated disclosure of Roberts' involvement in CAPS's development of CAPS supports Westlake's request for relevant documents from his custodial files.

*Finally*, even if the Magistrate Order's finding that Westlake's supplemental document requests were directed only toward "the issue of identifying the 'inventor'" was correct, those requests would still be relevant to Westlake's claim—which this Court has already characterized as "plausible"—that "CAC and its representatives made deliberate omissions of fact material to patentability to the examiner." While it is true that CAC's apparent inventorship fraud could constitute a separate basis for *Walker Process* fraud, it also makes it more likely that CAC also defrauded the USPTO by intentionally failing to disclose prior sales and public uses of CAPS that would have triggered the on-sale bar. *See, e.g.*, *United States v. Urie*, 379 F. App'x 586, 587-88 (9th Cir. 2010) (evidence of other, unrelated frauds against a fraud defendant was properly admitted); *United States v. Thompson*, 221 F. App'x 622, 623 (9th Cir. 2007) (no abuse of discretion "in admitting evidence tending to show that [defendant] was engaged in fraudulent activities beyond the scope of the charged scheme"). The fact that CAC defrauded the USPTO about inventorship makes it "more probable" that CAC also defrauded the USPTO about prior sales and public uses, and that evidence should therefore be discoverable as potentially relevant to the existing claims in the FAC.

**C.     In any event, the Court should grant Westlake's concurrently-filed motion for leave to file a Second Amended Complaint and grant Westlake's motion to compel on that basis.**

As the Magistrate Judge made clear during the hearing on Westlake's motion to compel, the only reason Westlake's motion to compel was denied was that the FAC did not specifically allege inventorship as a separate basis for fraud by CAC on the USPTO, and went so far as to state that an amendment could cause him to reconsider, since the requested relief was being denied without prejudice.  Although Westlake continues to believe that the evidence at issue relates to the claims in the FAC, to the extent the Court believes that inventorship fraud needs to be explicitly alleged in order to warrant the additional discovery, it should grant the motion to amend and exercise its discretion to grant Westlake's motion to compel without remanding the issue back to the Magistrate.

The Court has authority to reconsider the Magistrate Order *sua sponte*.  *See Cole v. U.S. Dist. Court for the Dist. of Idaho*, 366 F.3d 813, 823 n.14 (9th Cir. 2004) (holding that "it is permissible" for district court to reconsider *sua sponte* a magistrate judge's order); *cf. City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888-89 (9th Cir. 2001) ("All rulings of a trial court are subject to revision at any time before the entry of judgment." (citation omitted)).

There is good cause to exercise that authority here.  The Magistrate Order denied Westlake's motion to compel solely on the grounds that the operative complaint did not specifically allege that CAC falsely designated Brock as the sole inventor of the '807 Patent.  At the hearing, the Magistrate advised Westlake that if the Court authorized the filing of an amended complaint that did contain that allegation, its ruling would have been different.  Westlake's request for documents remains unchanged: it seeks the documents from Simmet, Knoblauch, McCluskey, and Roberts, gathered with the searches Westlake identified in its January 26 letter.[4]  That request is either already relevant to the claims in

---

[4]   Westlake also intends to take the depositions of all four custodians if its request for documents is granted.  The parties initially agreed to take the already-noticed depositions

1  the FAC, or will be relevant when the Proposed Second Amended Complaint becomes the
2  operative complaint in this case.  The Court should order the production of documents
3  from CAC in either case.
4  **IV.     CONCLUSION**
5          For these reasons, Westlake respectfully requests that the Court grant its motion to
6  review and reverse the March 29, 2017 Magistrate Order and grant Westlake's motion to
7  compel the production of documents from the custodial files of Michael Knoblauch, David
8  Simmet, Keith McCluskey, and Brett Roberts.  Westlake also requests that the Court
9  reopen fact discovery not only to give CAC time to comply with these requests, but also to
10 permit Westlake to take the depositions of those four individuals after CAC produces their
11 documents.

12 DATED:  April 10, 2017           Ekwan E. Rhow
                                    Timothy B. Yoo
13                                  Julian C. Burns
14                                  Ray S. Seilie
                                    Bird, Marella, Boxer, Wolpert, Nessim,
15                                  Drooks, Lincenberg & Rhow, P.C.

16
17
                                    By:      */s/ Ray S. Seilie*
18                                             Ray S. Seilie
19                                  Attorneys for Plaintiff WESTLAKE
                                    SERVICES, LLC d/b/a WESTLAKE
20                                  FINANCIAL SERVICES

---

of those four individuals off-calendar pending the Court's ruling on this motion, with the understanding that the depositions would be rescheduled if Westlake prevailed.