Ekwan E. Rhow - State Bar No. 174604
   erhow@birdmarella.com
Timothy B. Yoo - State Bar No. 254332
   tyoo@birdmarella.com
Ray S. Seilie - State Bar No. 277747
   rseilie@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Plaintiff
WESTLAKE SERVICES, LLC d/b/a
WESTLAKE FINANCIAL SERVICES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES, | Case No. 2:15-cv-07490 SJO (MRWx) |
| Plaintiffs, | **PLAINTIFF WESTLAKE SERVICES, LLC'S L.R. 16-4 MEMORANDUM OF CONTENTIONS OF LAW AND FACT** |
| vs. | |
| CREDIT ACCEPTANCE CORPORATION, | Honorable S. James Otero |
| Defendant. | Complaint Filed: September 24, 2015 |

3442400.2

# **TABLE OF CONTENTS**

**Page**

I.  SUMMARY STATEMENT OF THE CLAIMS WESTLAKE HAS PLEADED ....................................................................................... 1

II. WESTLAKE'S ACTUAL MONOPOLIZATION CLAIM .......................... 1

    A.  Elements Required to Establish Westlake's Claim for Actual Monopolization .................................................................... 1

    B.  Westlake's Key Evidence in Support of its Claim for Actual Monopolization .................................................................... 2

        1.  Relevant Market ......................................................... 2

        2.  Monopoly Power ........................................................ 2

        3.  Willful Conduct/*Walker Process* Fraud/Sham Litigation ........... 3

        4.  Antitrust Injury ........................................................ 3

III. WESTLAKE'S ATTEMPTED MONOPOLIZATION CLAIM .................... 4

    A.  Elements Required to Establish Westlake's Claim for Attempted Monopolization ................................................. 4

    B.  Westlake's Key Evidence In Support of Attempted Monopolization Claim ........................................................ 4

IV. CAC'S AFFIRMATIVE DEFENSES ................................................ 5

    A.  Summary Statement of Affirmative Defenses ........................ 5

    B.  Elements of CAC's Affirmative Defenses ............................. 5

        1.  Statute of Limitations .................................................. 5

        2.  Laches ...................................................................... 5

        3.  Collateral Estoppel ..................................................... 5

        4.  Unclean Hands ........................................................... 6

    C.  Westlake's Key Evidence Against CAC's Affirmative Defenses ......... 6

        1.  Statute of Limitations .................................................. 6

        2.  Laches ...................................................................... 6

        3.  Collateral Estoppel ..................................................... 6

        4.  Unclean Hands ........................................................... 6

V.    ISSUES OF LAW THAT ARE GERMANE TO THE CASE .........................7

      A.    Burden of Proof on Experimental Use.......................................7

      B.    Interpretation of *Therasense* Decision .....................................7

VI.   WESTLAKE'S REQUEST FOR ATTORNEYS' FEES .................................8

VII.  ANTICIPATED EVIDENTIARY ISSUES ......................................................8

VIII. OTHER INFORMATION PURSUANT TO L.R. 16-4 ...................................8

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
5

*Cal. Computer Prods., Inc. v. Int'l Bus. Machines Corp.*,
   613 F.2d 727 (9th Cir. 1979) ................................................................. 1, 4

6
7

*Harrington Mfg. Co., Inc. v. Powell Mfg. Co.*,
   815 F.2d 1478 (Fed. Cir. 1986) ............................................................. 7

8
9

*Intellect Wireless, Inc. v. HTC Corp.*,
   732 F.3d 1339 (Fed. Cir. 2013) ............................................................. 8

10
11

*Invitrogen Corp. v. Biocrest Mfg. L.P.*,
   424 F.3d 1374 (Fed. Cir. 2005) ............................................................. 7

12
13

*Nobelpharma AB v. Implant Innovations*,
   141 F.3d 1059 (Fed. Cir. 1998) ............................................................. 2

14
15

*Pfaff v. Wells Electronics, Inc.*,
   525 U.S. 55 (1998) ................................................................................. 7

16
17

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.,
   Inc.*,
   508 U.S. 49 (1993) ................................................................................. 2

18
19

*Spectrum Sports, Inc. v. McQuillan*,
   506 U.S. 447 (1993) .............................................................................. 4, 5

20
21

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) ............................................................. 7, 8

22
23

*Tone Bros., Inc. v. Sysco Corp.*,
   28 F.3d 1192. (Fed. Cir. 1994) ............................................................. 7

24

**Statutes**

25

15 U.S.C. § 2 ............................................................................................. 1, 5

26

15 U.S.C. § 15b ......................................................................................... 5

27

35 U.S.C. § 102(b) .................................................................................... 3, 7

28

Clayton Act Section 4, 15 U.S.C. § 15 ..................................................... 8

iii

**Other Authorities**

L.R. 16-4 .................................................................................................. 1, 1, 8

U.S. Patent No. 6,950,807 ...................................................................... *passim*

Pursuant to Local Rule 16-4, Plaintiff Westlake Services, LLC ("Westlake") respectfully submits its Memorandum of Contentions of Law and Fact.  Depending on how this Court rules on the parties' respective summary judgment motions, which remain pending, Westlake reserves the right to amend or restate the below contentions.

## I.   SUMMARY STATEMENT OF THE CLAIMS WESTLAKE HAS PLEADED

Claim 1: Defendant Credit Acceptance Corporation ("CAC") has actually monopolized the market for indirect financing of used automobile sales through profit-sharing programs, in violation of 15 U.S.C. § 2.

Claim 2: CAC has unlawfully attempted to monopolize the market for indirect financing of used automobile sales through profit-sharing programs, in violation of 15 U.S.C. § 2.

## II.   WESTLAKE'S ACTUAL MONOPOLIZATION CLAIM

By fraudulently obtaining, marketing, and enforcing U.S. Patent No. 6,950,807 (the "'807 Patent"), CAC actually monopolized the market for indirect financing of used automobile sales through profit-sharing programs, in violation of 15 U.S.C. § 2. Westlake seeks an award of trebled actual damages, reasonable attorney fees, and injunctive relief.

### A.   Elements Required to Establish Westlake's Claim for Actual Monopolization

In support of its monopolization claim, Westlake must show that (1) CAC possesses monopoly power in the relevant market; (2) CAC willfully acquired and maintained that power; and (3) CAC's conduct caused Westlake to suffer antitrust injury. *Cal. Computer Prods., Inc. v. Int'l Bus. Machines Corp.*, 613 F.2d 727, 735 (9th Cir. 1979).

Because Westlake's antitrust claims are based on CAC's fraudulent acquisition of the '807 Patent, Westlake will show that CAC's conduct falls into the

1

*Walker Process* fraud exception to *Noerr-Pennington* immunity by showing that CAC (1) made a misrepresentation or omission with (2) an intent to deceive the patent examiner and (3) caused the PTO to grant an invalid patent. *Nobelpharma AB v. Implant Innovations*, 141 F.3d 1059, 1070 (Fed. Cir. 1998).

Westlake is also seeking damages for a sham litigation claim based on CAC's filing of the 2013 patent infringement litigation. That claim requires Westlake to show that the 2013 litigation was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" and that CAC had the subjective intent to monopolize. *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993).

**B.     Westlake's Key Evidence in Support of its Claim for Actual Monopolization**

  1. <u>Relevant Market</u>

Evidence including, but not limited to:

- Evidence that CAC developed its profit-sharing program to enable dealers to finance used car sales to consumers who could not otherwise obtain financing.
- Evidence that profit-sharing finances a distinct category of used car sales that are not financed through other types of financing.
- Evidence that dealers are unable to finance certain types of used car sales except through profit-sharing programs.
- Evidence that terms of competition are determined nationally, not at the local level.

  2. <u>Monopoly Power</u>

Evidence including, but not limited to:

- Evidence that CAC was able to increase the price required for dealers to participate in its profit-sharing program while maintaining profits.

- Evidence that CAC used the '807 Patent to threaten and exclude potential competitors.
- Evidence that CAC collected supracompetitive profits as a result of the '807 Patent.

3. Willful Conduct/*Walker Process* Fraud/Sham Litigation

Evidence including, but not limited to:

- Evidence that CAC deliberately concealed pre-2001 uses of its CAPS product from the U.S. Patent and Trademark Office ("PTO") in order to ensure that its application would not be denied under the on-sale/public use bar of 35 U.S.C. § 102(b).
- Evidence that CAC's pre-2001 uses of CAPS were not experimental and should therefore have been disclosed to the PTO.
- Evidence that CAC knew that it should have disclosed its pre-2001 uses of CAPS to the PTO.
- Evidence that the PTO would have denied the '807 Patent application if it had known about CAC's pre-2001 uses of CAPS.
- Evidence that CAC knew that other companies could not create profit-sharing programs competitive with its own without including features covered by the '807 Patent.
- Evidence that CAC knew the '807 Patent application had concealed material information from the PTO when CAC decided to file a patent infringement lawsuit against CAC.

4. Antitrust Injury

Evidence including, but not limited to:

- Evidence that Westlake did not design a profit-sharing program that infringed on the '807 Patent.
- Evidence that Westlake never implemented features that would

have resulted in a profit-sharing program that infringed on the '807 Patent, despite being aware that such features would have made their profit-sharing programs more viable or competitive.

- Evidence that features covered by the '807 Patent are essential to the development and maintenance of a financially viable profit-sharing program.

- Evidence that in a but-for world where CAC did not defraud the PTO, Westlake would have collected more profits.

- Evidence that CAC sued Westlake for allegedly infringing the fraudulently obtained '807 Patent, causing Westlake to suffer damages in the form of attorneys' fees.

## III.    WESTLAKE'S ATTEMPTED MONOPOLIZATION CLAIM

### A.    Elements Required to Establish Westlake's Claim for Attempted Monopolization

(1) CAC engaged in predatory or anticompetitive conduct;

(2) CAC had a specific intent to monopolize;

(3) CAC's conduct resulted in a dangerous probability of monopolization of a relevant market; and

(4) CAC's conduct caused Westlake to suffer antitrust injury.

*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 457 (1993); *Cal. Computer Prods.*, 613 F.2d at 736.

### B.    Westlake's Key Evidence In Support of Attempted Monopolization Claim

The evidence Westlake intends to present to support its actual monopolization claim is identical to the evidence it intends to present in support of its attempted monopolization claim. Both claims require Westlake to show that CAC willfully engaged in predatory or anticompetitive conduct—in this case, through the fraudulent acquisition and enforcement of the '807 Patent—and that its conduct

resulted in antitrust injury. The only difference between the two claims is that the actual monopolization claim requires proof that CAC actually possesses market power over the relevant market, whereas the attempted monopolization claim only requires proof that CAC's conduct threatens "a dangerous probability of actual monopolization." *Spectrum Sports*, 506 U.S. at 455.

## IV.   CAC'S AFFIRMATIVE DEFENSES

### A.   Summary Statement of Affirmative Defenses

In its Memorandum of Contentions of Law and Fact, CAC has confirmed that it is only pursuing four of its nineteen alleged affirmative defenses at trial:

First Affirmative Defense: CAC will argue that Westlake's claims under 15 U.S.C. § 2 are barred by the four-year statute of limitations in 15 U.S.C. § 15b.

Second Affirmative Defense: CAC will argue that the doctrine of laches bars Westlake's antitrust claims.

Third Affirmative Defense: CAC will argue that Westlake is collaterally estopped from arguing that CAC's patent infringement lawsuit against Westlake was a sham.

Fourth Affirmative Defense: CAC will argue that the Court should deny Westlake's request for relief in whole or in part under the unclean hands doctrine.

### B.   Elements of CAC's Affirmative Defenses

#### 1.   Statute of Limitations

CAC must show that the most recent occurrence of its anticompetitive conduct took place more than four years before the filing of Westlake's lawsuit.

#### 2.   Laches

CAC must show that Westlake unreasonably delayed initiation of its lawsuit, causing prejudice to CAC.

#### 3.   Collateral Estoppel

For each issue it seeks to estop, CAC must show that (1) there was a full and fair opportunity to litigate the issue in a previous action; (2) the issue was actually

1  litigated in that action; (3) the issue was lost as a result of a final judgment in that
2  action; and (4) Westlake was a party in the previous action.

3          4.      Unclean Hands

4  CAC must show that Westlake's conduct was "inequitable" and "relates to the
5  subject matter of its claims."

6  **C.      Westlake's Key Evidence Against CAC's Affirmative Defenses**

7          1.      Statute of Limitations

8  Evidence including, but not limited to:

9          •       Evidence that CAC took affirmative steps to maintain its patent.

10          •       Evidence that CAC concealed its fraudulent conduct before the
11                  PTO.

12          •       Evidence that CAC took continuing steps to maintain the market
13                  power conferred on it by the '807 Patent.

14          2.      Laches

15  Evidence including, but not limited to:

16          •       Evidence that Westlake was not aware of CAC's fraudulent
17                  conduct before the PTO until discovery during the 2013 patent
18                  infringement litigation.

19          •       Evidence that CAC took steps to conceal its fraud before the
20                  PTO.

21          3.      Collateral Estoppel

22  Evidence including, but not limited to:

23          •       Evidence that the issue of whether CAC concealed pre-2001 uses
24                  of CAPS before the PTO was never litigated in the 2013
25                  infringement litigation.

26          4.      Unclean Hands

27  Evidence including, but not limited to:

28          •       Evidence that Westlake avoided integrating collateral pools into

its profit-sharing product to avoid infringement lawsuits.

•   Evidence that CAC voluntarily dismissed its patent infringement claim against Westlake with prejudice.

## V.   ISSUES OF LAW THAT ARE GERMANE TO THE CASE

The outstanding issues of law relate to (1) the burden of proof as it relates to the experimental use defense; and (2) the legal standard for proving inequitable conduct during patent prosecution.

### A.   Burden of Proof on Experimental Use

While "the burden of proving invalidity always remains with the party asserting invalidity . . . once an alleged infringer has presented sufficient facts to establish a *prima facie* case of public use, it is incumbent on the patentee to come forward with *some* evidence that there is a genuine issue of material fact in dispute." *Harrington Mfg. Co., Inc. v. Powell Mfg. Co.*, 815 F.2d 1478, 1482 (Fed. Cir. 1986) (citations omitted); *see also Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1197 n.4. (Fed. Cir. 1994) ("Once the challenger has made out this *prima facie* case of public use, a burden of production is placed upon the patent owner; the patent owner must come forward with convincing evidence to counter the *prima facie* case) (emphasis in original). Westlake will introduce evidence that before the critical date of the '807 patent application, (1) CAC commercially exploited and publicly used CAPS and (2) CAPS was reduced to practice and thus ready for patenting. This evidence establishes Westlake's *prima facie* case that a Section 102(b) bar applies. *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 67 (1998); *Invitrogen Corp. v. Biocrest Mfg. L.P.*, 424 F.3d 1374, 1379 (Fed. Cir. 2005). The burden will therefore shift to CAC to present convincing evidence that the on-sale/public use bar does not apply, i.e., that an experimental-use negation applies instead.

### B.   Interpretation of *Therasense* Decision

CAC has argued that Westlake must establish that its omission of pre-2001 activities from the '807 Patent application was but-for material to the issuance of the

'807 Patent. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011). But *Therasense* clearly "recognizes an exception in cases of affirmative egregious misconduct." *Id.* at 1292; *see also Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339 (Fed. Cir. 2013). Westlake can therefore establish materiality by either demonstrating "but for" causation *or* demonstrating affirmative egregious misconduct by CAC.

## VI.   WESTLAKE'S REQUEST FOR ATTORNEYS' FEES

Westlake seeks treble the amount of attorneys' fees expended throughout this litigation, pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15.

## VII.   ANTICIPATED EVIDENTIARY ISSUES

Anticipated evidentiary issues include, but are not necessarily limited to: (1) CAC's reliance on what amounts to evidence of its "good faith" in withholding pre-2001 uses of CAPS while maintaining the attorney-client privilege, despite receiving attorney advice regarding exactly that issue; (2) CAC's reliance on an unqualified expert to rebut Westlake's claims about the materiality of CAC's undisclosed evidence to the PTO's decision-making process; and (3) standard evidentiary objections to designated deposition testimony and certain exhibits.

## VIII.   OTHER INFORMATION PURSUANT TO L.R. 16-4

- Bifurcation of Issues:  Westlake does not request any bifurcation of issues.

- Jury Trial:  Westlake's issues are triable to the jury as a matter of right. Westlake has requested jury trial in its initial complaint and its First Amended Complaint.

- Abandonment of Issues:  Westlake is not abandoning any pleaded claims. In its memorandum of contentions of fact and law, CAC has confirmed that it does not plan to pursue any affirmative defenses other than its First through Fourth defenses.

DATED:  October 30, 2017

Ekwan E. Rhow
Timothy B. Yoo
Ray S. Seilie
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By: _____/s/ Timothy B. Yoo_____
Timothy B. Yoo
Attorneys for Plaintiff WESTLAKE
SERVICES, LLC d/b/a WESTLAKE
FINANCIAL SERVICES