Ekwan E. Rhow - State Bar No. 174604
  erhow@birdmarella.com
Timothy B. Yoo - State Bar No. 254332
  tyoo@birdmarella.com
Ray S. Seilie - State Bar No. 277747
  rseilie@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Plaintiff
WESTLAKE SERVICES, LLC d/b/a
WESTLAKE FINANCIAL SERVICES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES; and NOWCOM CORPORATION,<br><br>Plaintiffs,<br><br>vs.<br><br>CREDIT ACCEPTANCE CORPORATION,<br><br>Defendant. | Case No. 2:15-cv-07490 SJO (MRWx)<br><br>**PLAINTIFF WESTLAKE SERVICES, LLC'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO PREVENT DEFENDANT CREDIT ACCEPTANCE CORPORATION FROM INTRODUCING ARGUMENT AND EVIDENCE RELATING TO ITS STATE OF MIND**<br><br>Date:    December 5, 2017<br>Time:    8:30 a.m.<br>Crtrm.:  10C<br><br>Honorable S. James Otero<br><br>Complaint Filed: September 24, 2015 |

3440341.3

WESTLAKE'S MOTION TO EXCLUDE "GOOD FAITH" EVIDENCE- MIL No. 1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on December 5, 2017, at 8:30 a.m., or as soon thereafter as counsel may be heard in the Courtroom of the Honorable S. James Otero, United States District Judge, Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012, Plaintiff Westlake Services, LLC will and hereby does move to prevent Defendant Credit Acceptance Corp. ("CAC") from affirmatively presenting arguments and evidence relating to its state of mind.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Timothy B. Yoo and exhibits appended thereto, the [Proposed] Order lodged herewith, the Court file, and any further evidence and argument as may be presented to the Court prior to or at the hearing on this Motion, or subsequent hereto as permitted by the Court.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on October 24, 2017.

DATED: October 31, 2017

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

By:    */s/ Ray S. Seilie*
           Ray S. Seilie
Attorneys for Plaintiff WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES

3440341.3

WESTLAKE'S MOTION TO EXCLUDE "GOOD FAITH" EVIDENCE- MIL No. 1

## I. INTRODUCTION

It is black-letter law that a party may not use the attorney-client privilege as both a sword and a shield. Yet that is exactly what Defendant Credit Acceptance Corporation ("CAC") is attempting to do here. Throughout discovery, CAC asserted the privilege defensively, preventing Westlake from pursuing complete discovery concerning its central allegation that CAC intended to defraud the U.S. Patent and Trademark Office ("PTO") when it omitted key information from its application for the '807 Patent. Yet CAC now has made clear that it intends to pursue affirmative arguments and present evidence concerning its state of mind regarding the '807 Patent application.

The Court should not permit CAC to do this. Since CAC made the strategic decision to shield a matter from discovery by invoking the privilege, it can no longer selectively introduce evidence related to that matter at trial. Here, CAC blocked all discovery on what it understood to be its legal obligations concerning its application for the '807 Patent. It cannot now defend itself by relying on arguments and evidence that suggest its understandings were innocent. That is especially critical here, where CAC's privilege log *confirms* that it received legal advice that informed its understanding about the validity of the '807 Patent—legal advice that remains concealed. The Court should not permit CAC to argue, present evidence, or otherwise suggest to the jury that it believed it was in full compliance with all of its obligations to the USPTO.

## II. BACKGROUND

The key facts at the heart of this motion are undisputed. The parties agree that the CAPS program embodied the '807 Patent and that, by the middle of 2000, several dealers were using CAPS to finance real transactions. (Doc. No. 225-3 at ¶¶ 209, 215). The parties do not dispute that CAC employees never discussed patenting CAPS until late 2001. (*Id.* at ¶ 221). The parties do not dispute that, in November 2001, CAC executives communicated with legal counsel "regarding the less than

one-year old requirement for patent protection." (Doc. No. 225-3 ¶ 222).[1] And the parties do not dispute that, in the '807 Patent application, CAC did not disclose its pre-2001 activities involving CAPS. (*Id.* at ¶¶ 230, 232).

But these undisputed facts raise a number of questions which, to date, remain unanswered because of CAC's assertion of privilege: What exactly did legal counsel tell CAC about whether it could seek a patent for CAPS, given its activities with that program more than one year before that conversation? What was CAC told about its obligation to disclose those programs to the USPTO as part of its application? Why did it decide not to reveal its pre-2001 uses of CAPS to the PTO? CAC has avoided answering these critical questions by insisting that it will not rely on any defenses that would require a defense of privilege and also successfully opposing Westlake's motion to compel production of those documents.

Despite its insistence that it would not pursue arguments that would require a privilege waiver, it is now clear that CAC still intends to make arguments and introduce affirmative evidence about its state of mind—a state of mind that was undisputedly influenced by attorney advice that has concealed. In its memorandum of contentions of law and fact, CAC has indicated its intent to argue that it should not be found liable for *Walker Process* fraud in part because "Credit Acceptance employees—who had no prior patent experience—verified when the experimental pilot test phase ended and when the invention was first sold or publicly used, and then worked diligently to make sure the patent application was filed within one year of the first sale, offer for sale, or public use." (Doc. No. 228 at 10).

This is a 180 degree turn from the position it took during discovery. CAC cannot be permitted to present evidence that its employees had an idea about "when

---

[1] CAC executives also received attorney advice concerning, inter alia, "when the 'Patent-System' was offered for sale, the development of the system, and the patent application process" and "acquiring a patent on Credit Acceptance's 'Guaranteed Credit Approval System (System).'" (Doc. No. 200-8 Ex. 53 at 1).

the invention was first sold or publicly used" and "worked diligently to make sure the patent application was filed within one year of the first sale, offer for sale, or public use," when it has, throughout discovery, deprived Westlake of the evidence it needed to determine exactly *what* CAC knew about when the "first sale, offer for sale, or public use" took place and *why* it believed the pre-2001 uses of CAPS were "experimental" and could be concealed from the PTO. Having refused to reveal what its lawyers told its executives while preparing the '807 Patent application, CAC should not be permitted to play innocent and suggest at trial that its employees *had no idea* that they should have disclosed pre-2001 uses of CAPS to the PTO. The Court should therefore issue an order prohibiting CAC from affirmatively presenting evidence or making arguments that amount to a "good faith" defense in substance.

### III.  ARGUMENT

#### A.  Because It Has Not Waived Privilege, CAC Should Not Be Permitted to Make Affirmative Arguments About Its State of Mind

Now that CAC has effectively prevented inquiry into what it understood about its obligations to the PTO, the Court should not permit CAC to take advantage of its exclusive control of its understanding by presenting only a partial picture of its subjective knowledge to the jury. While CAC has the right to deny Westlake's arguments about its subjective intent in connection with its *Walker Process* and sham litigation claims, CAC should not be permitted to introduce *affirmative* evidence of its subjective knowledge or otherwise affirmatively suggest that it believed it was complying with its disclosure obligations to the PTO.

"Fairness prevents a party from disclosing facts beneficial to its position while refusing to disclose, on the grounds of privilege, related facts adverse to its position." *General Electric Co. v. Hechst Celanese Corp.*, Civ. A. No. 87-458-JRR, 1990 WL 154218, at *5 (D. Del. May 8, 1990). In its most recent filings, CAC has made clear that it intends to do just that. Throughout discovery, CAC has refused to produce or permit witnesses to testify about attorney-client privileged

communications, claiming that it does not intend to pursue at trial any arguments that rely on privileged communications. But its conduct *after* discovery contradicts that assurance. Although CAC has now withdrawn its affirmative defenses that rely on its purported "good faith," it continues to pursue arguments and make affirmative statements about the company's state of mind at the time it applied for the '807 Patent and decided to sue Westlake for infringement of that patent. And the law is clear that a waiver results not merely when a party relies on a formal advice of counsel defense, but *whenever* a party "voluntarily injects into suit a question that turns on state of mind." *Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*, No. C 03 05669 JW (RS), 2007 WL 2069946, at *3 (N.D. Cal. July 13, 2007); *see also Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1418-20 (11th Cir. 1994) (affirming a district court's conclusion that "it would be inequitable to allow [defendant] to present evidence tending to show that it intended to comply with the law, while allowing it to cloak in privilege those documents tending to show it might have known its actions did not conform to the law"); *In re Broadcom Corp. Sec. Litig.*, Nos. SA CV 01275GLTMLGX, SACV02301GLTANX, 2005 WL 1403516, at *2 (C.D. Cal. Feb. 10, 2005) (defendants could not, without waiving privilege, "assert good faith based on an expectation [their] lawyers would tell them if anything illegal was happening" "[r]ather than simply deny[ing] scienter").

The rule that a party may not affirmatively introduce evidence relating to state of mind without waiving privilege has been applied in situations nearly identical to the one here: the defense of a patent's validity in response to arguments that material information was withheld from the PTO. For example, in *General Electric Co.*, the court considered nearly identical facts. In response to a patent infringement suit brought by GE, the defendant counterclaimed, alleging that the patent was invalid because GE had defrauded the PTO by concealing an earlier experiment relating to the patented product. 1990 WL 154218, at *3. In response, GE introduced testimony from two doctors involved in the patent application denying that either of them had

recalled the prior experiment at the time of the application and that, in any case, they would have considered the experiment irrelevant. *Id.* at *7. Neither doctor testified that they had relied on attorney advice. Nonetheless, the court ordered the disclosure of any attorney communications involving the doctors, citing the principle that "a party should not be permitted to testify about its state of mind at the time allegedly privileged communications occurred, without pointing to the nonprivileged evidence to substantiate its claim or allowing the opposition to discover the privileged communications themselves." *Id.* at *8.

Likewise, in *Genentech, Inc. v. Insmed Inc.*, 234 F.R.D. 667, 673 (N.D. Cal. 2006), the court held that a patent-holder had to waive its privilege in order to present evidence that the patent's inventor did not recall undisclosed prior art at the time of the patent application and that the prior art "concerned a different field." Again, even though the inventor did not expressly rely on the advice of counsel, the court found that his "testimony about his likely state of mind and the fact that he would have considered the subject prior art irrelevant provides something more than mere denial of intent" and required waiver. *Id.*

*General Electric* and *Genentech* plainly establish that in order to make affirmative arguments about its state of mind, CAC must waive privilege. Westlake has alleged that CAC defrauded the PTO by failing to disclose pre-2001 sales or uses of CAPS in its application for the '807 Patent. As it has made clear throughout discovery and in its various summary judgment filings, Westlake intends to prove that CAC's deceit was intentional by showing that (1) the pre-2001 sales or uses of CAPS were not disclosed to the PTO; (2) any reasonable attorney practicing before the PTO would have disclosed that information regardless of whether or not they believed it would have been fatal to the patent application; and (3) CAC's attorneys were aware of the on-sale bar and understood that prior sales dating more than a year before the patent application could result in the application's denial.

In response, CAC has not simply denied Westlake's allegations—for instance,

by offering evidence that it did, in fact, disclose the relevant facts to the PTO or that reasonable attorneys practicing before the PTO would have chosen to conceal those facts. Instead, CAC has argued that its employees sincerely believed that (1) the pre-2001 uses or sales of CAPS did not trigger the on-sale bar to patentability because they were experimental and (2) they did not need to disclose those uses or sales to the PTO because they considered those uses experimental. The problem with this defense is that it is *undisputed* that CAC consulted with its lawyers concerning the patentability of CAPS *several times* before filing its patent application. Since CAC has chosen to withhold that information, no account of CAC's state of mind as a company could possibly be complete without understanding exactly what CAC learned from its lawyers and how it elected to consider that advice.

If CAC wants to affirmatively paint a picture for the jury about its understanding of the law and its belief in the legality of its conduct before the PTO, it cannot do so without disclosing the contents of those communications. See *Belmont Textile Machinery Co. v. Superba, S.A.*, 48 F. Supp. 2d 521, 523 (W.D.N.C. 1999 (a party relying on attorney advice "must either (1) rely on such advice as a defense and thereby waive the attorney-client privilege as to the entire subject area or (2) relinquish the advice-of-counsel defense"). And because it has now deprived Westlake of the opportunity to review that information and question its witnesses about their understanding of their legal obligations, CAC's decision to maintain the privilege means that it should no longer be allowed to introduce evidence relating to its state of mind. *See, e.g.*, *Applera Corp. v. MJ Research Inc.*, 303 F. Supp. 2d 141, 143 (D. Conn. 2004) (precluding introduction of testimony that would have required an earlier privilege waiver); *Mobil Oil Corp. v. Amoco Chems. Corp.*, 779 F. Supp. 1429, 1485 n.43 (precluding introduction of attorney opinions based on party's "failure to clearly waive the privilege before the close of discovery").

/ / /

/ / /

## IV. CONCLUSION

For these reasons, the Court should enter an order prohibiting CAC from affirmatively arguing, suggesting, or presenting evidence regarding its state of mind in connection with the '807 Patent application or its decision to sue Westlake in 2013.[2]

DATED:  October 31, 2017

Ekwan E. Rhow
Timothy B. Yoo
Ray S. Seilie
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By:  */s/ Ray S. Seilie*
Ray S. Seilie
Attorneys for Plaintiff WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES

---

[2] In the alternative, the Court should reopen discovery and require CAC to produce all responsive documents it previously withheld as privileged. *See In re Broadcom Corp. Sec. Litig.*, 2005 WL 1403516, at *3 (C.D. Cal. Feb. 10, 2005) (denying motion in limine to exclude similar evidence but instead reopening discovery and ordering disclosure of materials previously withheld as privileged).