1 | JASON D. RUSSELL (CA SBN 169219)
DOUGLAS A. SMITH (CA SBN 290598)
2 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
3 | Los Angeles, California 90071
Telephone:  (213) 687-5000
4 | Facsimile:   (213) 687-5600
Email:       jason.russell@skadden.com
5 |              douglas.smith@skadden.com

6 | JONATHAN L. FRANK *admitted *pro hac vice*
JAMES A. KEYTE *admitted *pro hac vice*
7 | PATRICK G. RIDEOUT *admitted *pro hac vice*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
8 | 4 Times Square
New York, New York 10036
9 | Telephone:  (212) 735-3000
Facsimile:   (212) 735-2000
10 | Email:       jonathan.frank@skadden.com
               james.keyte@skadden.com
11 |              patrick.rideout@skadden.com

12 | Attorneys for Defendant
CREDIT ACCEPTANCE CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES,<br><br>Plaintiff,<br><br>v.<br><br>CREDIT ACCEPTANCE CORPORATION,<br><br>Defendant. | CASE NO.: 2:15-cv-07490 SJO (MRWx)<br><br>**(1) CREDIT ACCEPTANCE CORPORATION'S MOTION IN LIMINE TO EXCLUDE IAN ANDERSON'S TESTIMONY OF A "BUILD AROUND" OF THE '807 PATENT;**<br><br>*Filed Under Separate Cover*:<br><br>**(2) DECLARATION OF DOUGLAS A. SMITH; and**<br><br>**(3) [PROPOSED] ORDER.**<br><br>The Honorable Judge S. James Otero<br><br>Hearing Date:    Dec. 5, 2017<br>Hearing Time:    9:00 a.m.<br>Courtroom:       10C<br><br>Pretrial Conference: Nov. 20, 2017<br>Trial Date:          Dec. 5, 2017 |

CAC'S MIL TO EXCLUDE IAN ANDERSON'S TESTIMONY OF A "BUILD AROUND" OF THE '807 PATENT.

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 5 2017, at 9:00 a.m. PT, or as soon thereafter as the matter may be heard, before the Honorable S. James Otero in Courtroom 10C of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California 90012, Defendant Credit Acceptance Corporation ("CAC") will move the Court and hereby does move to preclude Plaintiff Westlake Financial Services ("Westlake") from offering any argument or testimony, whether written or oral, about Ian Anderson's "understanding" that Westlake built its profit-sharing program around the '807 Patent.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Douglas A. Smith and exhibits attached thereto, the [Proposed] Order lodged herewith, all pleadings and papers on file in this action, and any argument that may be presented to the Court at or prior to the hearing on this motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on October 24, 2017.

DATED: October 31, 2017

                               SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                               By:    */s/   Jason D. Russell*
                                                   Jason D. Russell
                             Attorney for Defendant Credit Acceptance Corporation

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ...................................................................................................1

BACKGROUND .....................................................................................................2

    A. Westlake Alleges That It "Built Around" the '807 Patent.............................2

    B. Westlake Identifies President Ian Anderson As Having Information About The "Build Around" ......................................2

    C. Anderson Is Unable To Provide Individual Or Corporate Deposition Testimony About The "Build Around" ......................3

    D. After the Deposition, Anderson Develops An "Understanding" About The "Build Around" .......................................4

    E. Westlake's Counsel Admits That Westlake Intends to Prove The "Build Around" With Hearsay.....................................5

    F. Westlake Still Intends To Prove The "Build Around" With Hearsay Testimony From Anderson .....................................6

ARGUMENT ...........................................................................................................7

    I. Anderson May Not Testify About The Purported "Build Around" ..............7

    II. Anderson Also May Not Testify About Westlake's "Continued Avoidance" .....................................................9

CONCLUSION ......................................................................................................10

ii

CAC'S MIL TO EXCLUDE IAN ANDERSON'S TESTIMONY OF A "BUILD AROUND" OF THE '807 PATENT.

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Cermetek, Inc. v. Butler Avpak, Inc.*,
573 F.2d 1370 (9th Cir. 1978) .................................................................................. 7

*EEOC v. CRST Van Expedited, Inc.*,
679 F.3d 657 (8th Cir. 2012) ..................................................................................... 9

*Greig v. Botros*,
No. 08-1181-EFM-KGG, 2012 WL 718914 (D. Kan. Mar. 12, 2012),
*aff'd*, 525 F. App'x 781 (10th Cir. 2013). ............................................................. 8, 9

*L.A. Times Communications v. Department of Army*,
442 F. Supp. 2d 880 (C.D. Cal. 2006) ...................................................................... 7

*Menshikova v. City of Chicago*,
No. 95 C 5528, 1997 WL 305314 (N.D. Ill. May 29, 1997) .................................... 8

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*,
No. CV 05-2200 MMM (MCx), 2008 WL 11334030
(C.D. Cal. Mar. 17, 2008) ..................................................................................... 1, 7

*Plaskolite, Inc. v. Zhejiang Taizhou Eagle Machinery Co.*,
No. 08-487, 2008 WL 5190049 (S.D. Ohio Dec. 9, 2008) .................................. 7, 8

*Robin v. City of Monrovia*,
No. CV 09-6235 PJW,
2010 WL 11506880 (C.D. Cal. Dec. 3, 2010) .......................................................... 8

*Thomas v. Atmos Energy Corp.*,
223 F. App'x 369 (5th Cir. 2007) .............................................................................. 7

*United States v. Bennett*,
363 F.3d 947 (9th Cir. 2004) .................................................................................... 8

*United States v. Robinson*, __ F. Supp. 3d __,
No. 16-98 (CKK), 2017 WL 2812852 (D.D.C. June 28, 2017) ...................... 1, 8, 10

**RULES**

Federal Rule of Civil Procedure 11 ......................................................................... 4

Federal Rule of Civil Procedure 26(a)(1) ................................................................ 2

Federal Rule of Civil Procedure 30(b)(6) ............................................................ 1, 3

Federal Rule of Civil Procedure 37(c)(1) ................................................................ 5

Federal Rule of Evidence 403 ............................................................................ 2, 10

Federal Rule of Evidence 602 ............................................................................. 1, 7

Federal Rule of Evidence 802 .................................................................................. 8

Federal Rule of Evidence 1002 ................................................................................ 8

**OTHER AUTHORITIES**

U.S. Patent No. 6,950,807 ....................................................................................... passim

Los Angeles Business Journal, http://labusinessjournal.com/news/2017/oct/04/2017-cfo-awards-finalist-paul-kerwin-westlake-fina/ ................................................................................................. 4

iv

CAC's MIL TO EXCLUDE IAN ANDERSON'S TESTIMONY OF A "BUILD AROUND" OF THE '807 PATENT.

# INTRODUCTION

Plaintiff Westlake seeks nearly a billion dollars in trebled lost profits damages purportedly associated with having intentionally created and operated its profit-sharing program to avoid infringing the claims in Credit Acceptance's '807 Patent. But Westlake does not have a single witness with personal knowledge nor any contemporaneous documents to support its "build around" claim. Rather, Westlake's representations to this Court suggest that Westlake intends to rely exclusively on hearsay testimony, likely that of its President, Ian Anderson. Anderson would (and could only) testify about his "understanding" that, *before he joined the company in 2005*, Westlake "created" its profit-sharing program without collateral pools to avoid the claims in the '807 Patent.[1] Anderson may also attempt to testify that Westlake operated its profit-sharing program for nearly a decade in avoidance of the '807 Patent based on Westlake's initial decision to avoid the Patent. The Court should exclude his testimony regarding the "build around."

*First*, Anderson was not at Westlake when the "build around" purportedly occurred. And when asked, as Westlake's 30(b)(6) witness, to disclose the basis of his "understanding" of the supposed build around—including when or how it was implemented—Anderson was unable to offer responsive testimony. Accordingly, Anderson's testimony should be excluded under Federal Rule of Evidence ("FRE") 602 for lack of personal knowledge. *See, e.g.*, *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 2008 WL 11334030, at *15 (C.D. Cal. Mar. 17, 2008).

*Second*, Anderson's testimony is inadmissible hearsay. Westlake's counsel stated in open court that it intends to prove "why the program [was] designed the way it [was]" based on Anderson's "understanding . . . from conversations [with out-of-court declarants] . . . in the past." Such improper testimony should be excluded. *See United States v. Robinson*, _ F. Supp. 3d _, 2017 WL 2812852, at *1 (D.D.C. June 28, 2017).

---

[1] Westlake has admitted that the '807 Patent did not patent the use of collateral pools, in and of themselves (ECF No. 204, at No. 158)—which is fatal to this damages theory.

*Third*, Anderson's testimony impermissibly attempts to circumvent the Magistrate's Order, consented to by Westlake and entered by this Court, imposing evidentiary sanctions on Westlake for belatedly disclosing a witness without substantial justification. Given Westlake's untimely disclosure of now-excluded former employee Brian Hopper, and Anderson's newly discovered knowledge about Westlake's development of its profit-sharing program and the purported "build around," any "understanding" Anderson has likely comes from a conversation he had with Hopper. Westlake's attempt to offer Anderson's (or anyone's) testimony on the issue reflects an improper attempt to inject Hopper's testimony into evidence through the back door.

*Fourth*, if Westlake attempts to offer Anderson's "understanding," not to prove the truth of the matter asserted (*i.e.*, that the "build around" occurred), but for the effect Anderson's "understanding" had on Westlake in subsequent years when it purportedly operated its profit-sharing program in avoidance of the patent, that does not render it admissible. The lack of foundation and hearsay problems remain. Furthermore, the testimony should be excluded under FRE 403 because of the danger that the jury will improperly accept the initial "build around" as true and consequently hold Credit Acceptance liable based on out-of-court statements by unknown individuals whom Credit Acceptance will be unable to cross-examine at trial.

## BACKGROUND

### A.   Westlake Alleges That It "Built Around" the '807 Patent

Credit Acceptance and Westlake provide indirect financing for used car sales. A "profit-sharing" program is one of many forms of indirect financing. Westlake's First Amended Complaint ("FAC") alleges that, when it "created" its profit-sharing program ProfitBuilder, it "deliberately chose to avoid the claims of the '807 Patent"—principally by not offering collateral pools. (FAC ¶ 38.)

### B.   Westlake Identifies President Ian Anderson As Having Information About The "Build Around"

In its Federal Rule of Civil Procedure ("FRCP") 26(a)(1) initial disclosures, Westlake identified Anderson as an individual likely to have discoverable information

about Westlake creating its profit-sharing program so as to avoid the claims in the '807 Patent. Specifically, Anderson was supposed to have discoverable information about "Westlake's development" of its profit-sharing program, "[m]atters pertaining to Westlake's attempted participation in the market for indirect auto financing through a profit sharing program," and "financial damages Westlake incurred" as a result of Credit Acceptance's '807 Patent. (Smith Decl. Ex. 2, at 2.)

Thereafter, Westlake designated Anderson as its FRCP 30(b)(6) corporate designee to testify on the following topics targeted at Westlake's allegation that it developed its profit-sharing program around the '807 Patent, including by not offering collateral pools:

- The development of any of YOUR indirect financing programs for used cars that include or have included a profit sharing component, including without limitation YOUR ProfitBuilder® program or Partner Program.

- The effect of the '807 PATENT on YOUR business, including the effect of the '807 PATENT, if any, on your development of DEALER CENTER® or any aspect of DEALER CENTER® and on YOUR ProfitBuilder® program, Partner Program, or other profit sharing program offered by YOU.

- The reason(s) why YOUR ProfitBuilder®, Partner Program, or any other profit sharing program YOU offered at any point from 2000 to the present lacked the feature of a collateral pool during the time it was offered by YOU.

(*Compare* Smith Decl. ECF No. 187-9, Ex. 103 *with* ECF No. 187-9, Ex. 111.)

### C. Anderson Is Unable To Provide Individual Or Corporate Deposition Testimony About The "Build Around"

Despite being purportedly knowledgeable and the corporate designee on the above topics, Anderson's deposition established that he lacks knowledge about whether and when Westlake created its profit-sharing program so as to avoid the '807 Patent.

Q. Well, tell me everything -- first, tell me when it was developed.

A. I -- I don't know the exact year it was developed but I'm assuming it was 2002.

Q. Did you actually go look and find out?

A. No. But I think it's 2002, two or three.

. . . .

Q. So I'm asking is it your testimony as a 30(b)(6) witness did a group of people at West – at Westlake Financial in 2002 or 2003 sit around and design ProfitBuilder and say we've got to design this around the application of the 807 patent? Is that your testimony?

3


    A. I don't know.

    Q. You don't know?

    A. I don't.

(Smith Decl. Ex. 3, at 117:1-6, 218:10-18.) Assuming Westlake had a FRCP 11 basis to allege a "build around" when it filed its FAC, Anderson's inability to provide corporate (let alone personal) testimony on the purported "build around" reflects that Westlake did not adequately investigate the basis of its allegations nor prepare Anderson to provide corporate testimony. Westlake apparently did not interview former employees. (Smith Decl. Ex. 1, at 29:18-30:11, 44:12-48:9, 54:7-56:16.) And Westlake did not look at documents from when Westlake created its profit-sharing program. (*See* ECF No. 106-1, at 4 ("Westlake's data from before 2007 is kept on inaccessible backup tapes").) Indeed, despite the "build around" being Westlake's central damages theory and notwithstanding its annual revenue over $1 billion,[2] Westlake refused to restore backup tapes containing contemporaneous documents (that undoubtedly would have reflected a "build around" if one actually took place) due to restoration costs of only $56,800. (ECF No. 118-2, at 3.)

### D. After the Deposition, Anderson Develops An "Understanding" About The "Build Around"

Despite having no knowledge during his deposition of any "build around," approximately one month later, Anderson verified an interrogatory answer, under the penalty of perjury, stating that Westlake's profit-sharing program "was neither designed to include nor ever featured a collateral pool." (ECF No. 187-9, Ex. 107 at No. 10.) Given his deposition testimony, Anderson could not have verified this answer from his personal knowledge. Rather, he must have relied on information from someone else.

That other person was seemingly revealed when Westlake amended its initial disclosures just ten business days before the already extended fact discovery period

---

[2] Los Angeles Business Journal, http://labusinessjournal.com/news/2017/oct/04/2017-cfo-awards-finalist-paul-kerwin-westlake-fina/

closed. (Smith Decl. Ex. 4.) In those disclosures, Westlake added Brian Hopper, a former direct report to Anderson, as a witness likely to have discoverable information about "Westlake's development" of its profit-sharing program, and "attempted participation in the market for indirect auto financing through a profit sharing program"—the same subject matters on which Anderson was supposed to testify. (*Id.* at 3.)

On the same day Westlake surfaced Hopper, Westlake volunteered to have Anderson sit again for deposition and provide corporate testimony "about the development of Westlake's indirect financing programs for used cars that include a profit sharing component, including ProfitBuilder, during the pre-2006 time period that pre-dates Mr. Anderson's employment at Westlake." (Smith Decl. Ex. 5.) In other words, Anderson could now provide testimony about the "build around" that just weeks earlier he had no knowledge of, either in his individual or corporate capacity.

### E. Westlake's Counsel Admits That Westlake Intends to Prove The "Build Around" With Hearsay

Given that Westlake disclosed Hopper with only ten business days remaining in the extended fact discovery period, Credit Acceptance moved for discovery sanctions under FRCP 37(c)(1) to exclude Hopper from testifying at trial. During the hearing on that motion, the Magistrate questioned Westlake's counsel about why Anderson was unprepared to provide corporate deposition testimony on a central allegation in Westlake's complaint. (Smith Decl. Ex. 1, at 29:18-30:11, 44:12-48:9, 54:7-56:16.) In the exchange that followed, Westlake's counsel admitted that Westlake intended to rely on hearsay evidence to prove the "build around."

> [THE COURT:] Who or how -- who do you call and how do you prove that Westlake suffered damages from, let's say, 2001 to 2005 as a result of whatever conduct CAC engaged in?
>
> [WESTLAKE'S COUNSEL:] Right. So our thought was that it would be based on hearsay testimony, based on testimony of our current witnesses, again, based on their understanding of what they knew from conversations that they had in the past.

(Smith Decl. Ex. 1, at 40:2-40:12.) The Magistrate then questioned admissibility.

> THE COURT: I'm sorry, you wanted to prove something through hearsay?

5
CAC'S MIL TO EXCLUDE IAN ANDERSON'S TESTIMONY OF A "BUILD AROUND" OF THE '807 PATENT

> [WESTLAKE'S COUNSEL:] Well, their understanding of that, that this is why the program is designed the way it is, this is why it continues to not incorporate features that would otherwise provide them the ability to compete effectively.
>
> THE COURT: You have employee A who's currently sitting at Westlake. You wanted to put employee A up on the witness stand to say, I believe we were damaged because I talked to employees B and C?
>
> MR. YOO: Well, that specifically as it relates to the pre-2005 period, that may be the case, Your Honor. . . .
>
> THE COURT: How does that come into evidence? How does that come into evidence?

(Smith Decl. Ex. 1, at 40:13-41:5.)

In the Order excluding Hopper as a witness, the Court found that Westlake intended to have Anderson provide hearsay testimony at trial.

> [Westlake] stated that "it had a good faith belief that Mr. Anderson was or could become familiar with the history of the development of [Westlake's profit-sharing program] throughout the program's duration," and could somehow testify competently about it. Westlake's lawyers offered no substantive basis for that "belief." Instead, they explain that Mr. Anderson's understanding of the company's damages "derived from conversations he had [ ] with [other Westlake] employees when they were still employed at Westlake." In other words: hearsay.

(ECF No. 177-1, at 4.)

### F. Westlake Still Intends To Prove The "Build Around" With Hearsay Testimony From Anderson

Notwithstanding the Magistrate's statements, Anderson thereafter provided a declaration in connection with summary judgment, stating:

- "When I arrived at Westlake in 2005, my understanding was that Westlake's [profit-sharing program] did not contain a collateral pool feature because it was designed so as to avoid the claims of Credit Acceptance Corporation's ("CAC") U.S. Patent No. 6,950,807 (the "'807 patent"), including claims directed at collateral pools."

- "During my time at Westlake, Westlake's profit sharing programs, including Profit Builder, have not contained a collateral pool feature because Westlake has wanted to avoid the claims of the '807 patent . . . ."

(ECF No. 200-2, at ¶¶ 3-4.) As discussed below, these statements lack foundation, are inadmissible hearsay, and impermissibly seek to circumvent the Court-ordered discovery sanctions excluding Hopper as a witness. Any such testimony should be excluded at trial.

# ARGUMENT

## I. Anderson May Not Testify About The Purported "Build Around"

Under FRE 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness had personal knowledge of the matter." When the source of a witness's "understanding" of an event is unknown, courts summarily exclude that testimony for lack of foundation. For example, in *Milton H. Greene Archives*, the court sustained a lack of foundation objection to statements prefaced with the phrase "[i]t is [my] understanding" where the declarant "proffer[ed] no facts suggesting that he has personal knowledge." 2008 WL 11334030, at *15.

By definition, Anderson's testimony would give a misleading impression of personal knowledge of the "build around" and reasons for it by providing his "understanding." Anderson did not join Westlake until at least a year *after* Westlake purportedly built its profit-sharing program in or before 2004. (*Compare* ECF No. 229-8, Table 5 (alleging lost profits as early as 2004 and that entire year), *with* ECF No. 200-2, at ¶ 3 ("When I arrived at Westlake in 2005 . . . .")). Because the basis for Anderson's personal knowledge is unknown, his "understanding" that Westlake built its profit-sharing program so as to avoid the '807 Patent should be excluded under FRE 602 for lack of foundation—as numerous courts have done in similar situations. *See Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978) ("facts alleged on 'understanding' like those based on 'belief' or on 'information and belief'" standing alone fail to show witness is competent to testify); *Milton H. Greene Archives*, 2008 WL 11334030, at *15; *L.A. Times Commc'ns v. Dep't of Army*, 442 F. Supp. 2d 880, 886 (C.D. Cal. 2006) ("Plaintiff's objections . . . are SUSTAINED [under Rule 602] because it is unclear how [declarant], in his role as General Counsel, acquired personal knowledge of the [company] procedures" in place before he was employed by the company.)[3]

---

[3] *See also Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 375 (5th Cir. 2007) (excluding testimony about witness's "understanding" where it was unknown if witness had personal knowledge); *Plaskolite, Inc. v. Zhejiang Taizhou Eagle Mach. Co.*, 2008

*(cont'd)*

Westlake may contend that Anderson's "understanding" is based on conversations with Brian Hopper or conversations with other out-of-court declarants, but this does not render his testimony admissible. Quite the opposite. The Court should exclude such testimony as inadmissible hearsay under FRE 802. Westlake's counsel has admitted that Anderson's "understanding" is based on out-of-court conversations, or in other words, on hearsay and possibly multiple layers of hearsay: "So our thought was that it would be based on hearsay testimony, based on testimony of our current witnesses, again, based on their understanding of what they knew from conversations that they had in the past." (Smith Decl. Ex. 1, 40:7-12.)[4] In these situations, courts routinely exclude such testimony. *Robinson*, 2017 WL 2812852, at *1 ("Assuming that the [witness's] understanding about Defendant's practice was based on statements made to them by non-testifying declarants (and not the Defendant himself), and that their testimony is offered for the truth of the matter asserted . . . the Court agrees that the government's proffered testimony would be inadmissible hearsay.").[5]

---

*(cont'd from previous page)*

WL 5190049, at *4 (S.D. Ohio Dec. 9, 2008) (witness's "'understanding' . . . [is] not based on personal knowledge, and constitute[s] inadmissible speculation.").

[4] To the extent Anderson's purported "understanding" is based on what he may have learned from statements in documents, it would still be inadmissible. Westlake did not produce any documents reflecting the decision to "build around" the '807 Patent, and in fact, refused to restore and produce documents from the purported "build around" period. *See supra* Part C. Accordingly, Anderson may not provide testimony about the contents of documents that Westlake did not produce, as such testimony would not only be inadmissible hearsay but also violate the best evidence rule (*i.e.*, FRE 1002). *See United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004) (FRE 1002 applies "when a witness seeks to testify about the contents of a writing . . . without producing the physical item itself — particularly when the witness was not privy to the events those contents describe"); *Robin v. City of Monrovia*, 2010 WL 11506880, at *2 (C.D. Cal. Dec. 3, 2010) (excluding testimony, reasoning "[i]f [the witness] gleaned his understanding . . . from documents, the documents would be the best evidence, assuming they are not hearsay, and generally speaking, they 'speak for themselves.'").

[5] *Accord Greig v. Botros*, 2012 WL 718914, at *5 (D. Kan. Mar. 12, 2012) ("Plaintiff's 'understanding' of the events was based on the statements relayed to her by [another]. Plaintiff's attempt to camouflage the 'statements' as 'general knowledge held by the Plaintiff' is not persuasive to the Court. . . . The evidence was properly excluded because it is a classic example of hearsay—in fact, it is at least double hearsay."); *Menshikova v. City of Chicago*, 1997 WL 305314, at *1 (N.D. Ill. May 29, 1997) ("[S]he will *not* be permitted to state her understanding . . . on hearsay grounds.").

Furthermore, if Anderson's knowledge of the supposed "build around" is based on a conversation with Hopper, Anderson's testimony would effectively circumvent this Court's ruling excluding Hopper by allowing Anderson to back door Hopper's testimony into this case. Westlake should not be permitted to avoid the evidentiary sanctions the Magistrate imposed, Westlake accepted, and this Court ordered. (ECF No. 182 at 3-4.) Anderson's testimony should be excluded for this reason alone. *See EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 691-92 (8th Cir. 2012) (affirming exclusion of evidence because it "would amount to an 'end-run' around its discovery sanction").

## II. Anderson Also May Not Testify About Westlake's "Continued Avoidance"

Anderson will likely seek to testify that, after he joined Westlake in 2005, Westlake continued to operate its profit-sharing program in avoidance of the claims in the '807 Patent because of the purported decision to avoid the patent initially. Specifically, Anderson will likely testify he had conversations with Westlake employees, developed an "understanding" from those conversations that Westlake had intentionally created its profit-sharing program to avoid infringing the '807 Patent, and that this understanding had an effect on him, as Westlake's President, that caused Westlake to continue operating its profit-sharing program for more than a decade in avoidance of the '807 Patent, including by not offering collateral pools. While Westlake may argue that Anderson's "understanding" is therefore not hearsay because it is being offered for the effect on him instead of for the truth of the matter asserted, Anderson's testimony should be excluded.

*First,* that Westlake may offer Anderson's "understanding" for a purpose other than the truth of the matter asserted does not cure the fatal problems identified above. Anderson's "understanding" testimony would remain inadmissible because it either lacks foundation (*i.e.*, the source of Anderson's understanding is unknown) or is based on hearsay (*i.e.*, from statements made by out-of-court declarants). To conclude otherwise would allow Westlake to improperly circumvent the evidentiary rules on hearsay and personal knowledge. *See Greig*, 2012 WL 718914, at *5.

*Second,* Anderson's "understanding" testimony should also be excluded under

FRE 403's balancing test. *Robinson* is instructive. There, the prosecution attempted to offer testimony about third-party witnesses' "understanding" about the defendant's drug prescription-writing practices. 2017 WL 2812852, at *1. The court agreed that if the witnesses' understandings were "based on statements made to them by non-testifying declarants" and their "testimony is offered for the truth of the matter asserted," the testimony would be inadmissible hearsay. *Id.* The court then addressed the argument that the prosecution "does not intend to elicit this testimony for the truth of the matter asserted, but instead merely to demonstrate the motivation" of the witnesses in going to see the defendant prescriber. *Id.* The court excluded that evidence under Rule 403. It reasoned that the evidence's "probative value would be substantially outweighed by the considerable risk that the jury would misuse this testimony for the truth of the matter asserted in the witnesses' statements . . . and find the Defendant guilty on the basis of out-of-court statements by individuals Defendant is unable to cross examine." *Id.* at *2.

The same is true here. Anderson's testimony about his "understanding" has little probative value, if any, because the source of his understanding is unknown. Because his "understanding" could in reality be a misunderstanding or wholly lacking in support, it carries little probative value on the issue of whether Westlake continued to operate its profit-sharing program around the '807 Patent. As for the danger of unfair prejudice, a jury may misuse Anderson's testimony by accepting as true the initial "build around" and thus hold Credit Acceptance liable based on out-of-court statements by unknown individuals whom Credit Acceptance will be unable to cross-examine at trial.

## CONCLUSION

For these reasons, the Court should exclude Anderson from testifying about his "understanding" that Westlake built its profit-sharing program around the '807 Patent.

DATED: October 31, 2017   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: */s/ Jason D. Russell*
Jason D. Russell
Attorneys for Defendant
Credit Acceptance Corporation